**Robert A. Shlachter**, OSB No. 911718
Email: rshlachter@stollberne.com
**Joshua L. Ross**, OSB No. 034387
Email: jross@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840


**Bruce G. Vanyo** (admitted *Pro Hac Vice*)
Email: bruce@kattenlaw.com
**Christina L. Costley** (admitted *Pro Hac Vice*)
Email: christina.costley@kattenlaw.com
**Yonaton M. Rosenzweig** (admitted *Pro Hac Vice*)
Email: yoni.rosenzweig@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East
Suite 2600
Los Angeles, CA 90067-3012
Telephone:     (310) 788-4400
Facsimile:     (310) 788-4471

**Attorneys for Defendants Amdocs Management Limited; Amdocs, Inc.,**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VESTA CORPORATION,** | Case No.: 3:14-cv-01142-HZ |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS** |
| **AMDOCS MANAGEMENT LIMITED;** | **PLAINTIFF'S COMPLAINT AND** |
| **AMDOCS, INC.,** | **MEMORANDUM IN SUPPORT OF** |
| Defendants. | **MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................iii

MOTION ...............................................................................................................................1

INTRODUCTION ..................................................................................................................2

FACTUAL BACKGROUND .................................................................................................4

I.     The Parties ...................................................................................................................5

     A.    Amdocs .............................................................................................................5

     B.    Vesta ................................................................................................................5

II.    Vesta and Amdocs Prepare Joint Pitch Material and Enter into Merger Discussions....................6

III.   Amdocs's Payment Solution ........................................................................................7

ARGUMENT .........................................................................................................................8

I.     LEGAL STANDARD ...................................................................................................9

II.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR BREACH OF

     CONTRACT (COUNT 1) ............................................................................................10

     A.    Vesta Fails to Plead a Plausible Basis for Inferring that Amdocs Breached

          the NDAs .........................................................................................................11

          1.    Vesta Fails to Plead Breach as to the "Risk Information"......................11

          2.    Vesta Fails to Plead Breach as to the "Solution Methods"....................13

     B.    Vesta Fails to Plead Damages ........................................................................15

III.   THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR TRADE SECRET

     MISAPPROPRIATION (COUNT II) ...........................................................................16

     A.    The Trade Secret Claim Should Be Dismissed Because It Is Wholly

          Derivative of the Breach of Contract Claim....................................................16

     B.    The Trade Secret Claim Should Be Dismissed As Vesta Has Failed to

          Allege a Claim for Trade Secret Misappropriation .........................................18

i

      1.    Vesta Fails to Clearly Identify any Trade Secret ................................... 18

      2.    Vesta Fails to Adequately Allege Misappropriation ............................. 21

      3.    Vesta Fails to Adequately Allege Secrecy .......................................... 23

IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD (COUNT III) ....................... 23

CONCLUSION .................................................................................................... 26

# TABLE OF AUTHORITIES

Page

**Cases**

*AcryMed, Inc. v. Convatec,*
   317 F. Supp. 2d 1204 (D. Or. 2004) ................................................................................24

*All Bus. Solutions, Inc. v. NationsLine, Inc.,*
   629 F. Supp. 2d 553 (W.D. Va. 2009) .............................................................................23

*Am. Petroleum Inst. v. Technomedia Int'l, Inc.,*
   699 F. Supp. 2d 258 (D.D.C. 2010) .................................................................................23

*Am. Registry, LLC v. Hanaw,*
   No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971 (M.D. Fla. Dec. 5, 2013) ................21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................9, 14, 23

*Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ.,*
   944 F. Supp. 1169 (S.D.N.Y. 1996) .................................................................................17

*B & M Linen Corp. v. Kannegiesser, USA, Corp.,*
   679 F. Supp. 2d 474 (S.D.N.Y. 2010) .............................................................................24

*BanxCorp v. Costco Wholesale Corp.,*
   723 F. Supp. 2d 596 (S.D.N.Y. 2010) .............................................................................24

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 570 (2007) ................................................................................9, 14, 23

*Brand v. Angus,*
   No. 3:10-CV-189-HZ, 2012 WL 2178969 (D. Or. June 11, 2012) ................................2, 9

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
   98 F.3d 13 (2d Cir. 1996) .................................................................................................24

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.,*
   388 F. Supp. 2d 37 (N.D.N.Y 2005) ...............................................................................17

*Cinebase Software, Inc. v. Media Guar. Trust, Inc.,*
   No. C98-1100 FMS, 1998 WL 661465 (N.D. Cal. Sept. 22, 1998) ................................20

*CollegeNET, Inc. v. Xap Corp.,*
   No. CV-03-1229-HU, 2004 WL 2303506 (D. Or. Oct. 12, 2004) .....................................9

*Composite Marine Propellers., Inc. v. Van Der Woude,*
   962 F.2d 1263 (7th Cir. 1992) .........................................................................................20

*Compuware Corp. v. Health Care Serv. Corp.*,
    No. 01 C 0873, 2002 WL 485710 (N.D. Ill. Apr. 1, 2002) ....................................................20

*Crowden v. Federal Nat'l Mortg. Ass'n*,
    No. 3:11-cv-1083-HZ, 2011 WL 6740741 (D. Or. Dec. 22, 2011).........................................4

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ...............................................................................................25

*Deutsche Bank Sec. Inc. v. Rhodes*,
    578 F. Supp. 2d 652 (S.D.N.Y. 2008) ...................................................................................17

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ...................................................................................15

*Document Sec. Sys., Inc. v. Coupons.com, Inc.*,
    No. 11-CV-6528 CJS, 2013 WL 1945954 (W.D.N.Y. May 9, 2013)..................................16

*Edifecs Inc. v. Tibco Software Inc.*,
    756 F. Supp. 2d 1313 (W.D. Wash. 2010) ............................................................................18

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ...............................................................................................25

*Fairbank v. Citibank (S.D.), N.A.*,
    No. 3:12-cv-864-HZ, 2012 WL 6154759 (D. Or. Dec. 11, 2012).........................................14

*Fleshman v. Wells Fargo Bank*, N.A.,
    ___ F. Supp. 2d ___ , No. 3:13-cv-2062-HZ, 2014 WL 2772508 (D. Or. June 17, 2014) ................10

*Frink Am., Inc. v. Champion Road Mach. Ltd.*,
    48 F. Supp. 2d 198 (N.D.N.Y. 1999) ....................................................................................23

*Gibson v. Office of Attorney Gen.*,
    561 F.3d 920 (9th Cir. 2009) .................................................................................................16

*Giftango, LLC v. Rosenberg*,
    925 F. Supp. 2d 1128 (D. Or. 2013)......................................................................................22

*Gutkowski v. Steinbrenner*,
    680 F. Supp. 2d 602 (S.D.N.Y. 2010) ...................................................................................24

*Hill Meat Co. v. Sioux-Preme Packing Co.*,
    No. 08-cv-1062-SU, 2009 WL 1346606 (D. Or. May 13, 2009) ...........................................24

*Holden v. Hagopian*,
    978 F.2d 1115 (9th Cir. 1992).................................................................................................14

*Hudson Hotels Corp. v. Choice Hotels Int'l*,
    995 F.2d 1173 (2d Cir. 1993).................................................................................................23

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) ................................................................................20

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ................................................................................9

*Jacobs Vehicle Sys., Inc. v. Yang*,
    No. 1:12-cv-181, 2013 WL 4833058 (M.D.N.C. Sept. 10, 2013) ....................................21

*Lopez v. Fed. Housing Fin. Agency*,
    ___ F. App'x ___, No. 11-17645, 2014 WL 2611196 (9th Cir. June 12, 2014) ...............................25

*Lycoming Engines v. Superior Air Parts, Inc.*,
    No. 3:13-cv-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014).....................................20

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) .................................................................................18

*Marietta Corp. v. Fairhurst*,
    754 N.Y.S.2d 62 (App. Div. 2003).........................................................................21

*Market Trading, Inc. v. AT&T Mobility, LLC*,
    388 F. App'x 707 (9th Cir. July 20, 2010) ..............................................................15

*Medafor, Inc. v. Starch Med. Inc.*,
    No. 09-cv-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009) ..............................20, 21, 23

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012)...................................................................22

*Nycomed US, Inc. v. Glenmark Generics, Inc.*,
    No. 08-cv-5023(CBA), 2010 WL 889799 (E.D.N.Y. Mar. 8, 2010) ................................19

*Oak Harbor Freight Lines, Inc. v. Harris*,
    No. 3:13-cv-1100-HZ, 2013 WL 6576284 (D. Or. Dec. 13 2013)....................................14

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
    No. CV 10–8026 PSG (AJWx), 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ...............................19

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03-cv-3120(LTS)(THK), 2009 WL 1492196 (S.D.N.Y. May 27, 2009) ...................................14

*Silvaco Data Sys. v. Intel. Corp.*,
    184 Cal. App. 4th 210 (2010)...............................................................................19

*sit-up Ltd. v. IAC/InterActiveCorp.*,
    No. 05 Civ. 9292(DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) .............................21, 22

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................................4

*Starr v. Baca,*
    633 F.3d 1191 (9th Cir. 2011) ............................................................................. 9

*Stell v. Intel Corp.,*
    No. 10-cv-90-AA, 2010 WL 4065597 (D. Or. Oct. 13, 2010) ....................... 16

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................................. 9

*W. Med. Consultants, Inc. v. Johnson,*
    80 F.3d 1331 (9th Cir. 1996) ............................................................................. 21

*W. Med. Consultants, Inc. v. Johnson,*
    835 F. Supp. 554 (D. Or. 1993) ........................................................................ 18

*Ying Chang v. Citimortgage, Inc.,*
    No. 3:12-cv-1884-HU, 2013 WL 5939985 (D. Or. Nov. 2, 2013) ................. 15

**Statutes**

Or. Rev. Stat. § 646.461(2) ...................................................................................... 22

Or. Rev. Stat. § 646.461(4)(a) .................................................................................. 19

**Treatises**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed.
    2004) ..................................................................................................................... 9

## MOTION

Pursuant to Local Rule 7-1(a), counsel for Defendants Amdocs Management Limited and Amdocs, Inc., certify that they conferred telephonically with counsel for Plaintiff Vesta Corporation regarding the substance of this motion. The parties made a good-faith effort to resolve the issues raised in Defendants' Motion to Dismiss but were unable to do so.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), for the reasons set forth below, Defendants Amdocs Management Limited and Amdocs, Inc., by and through their attorneys, respectfully move this Court for entry of an order dismissing Plaintiff's Complaint in its entirety on the grounds that it fails to state a sufficient claim on which relief can be granted.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

This is a meritless lawsuit seemingly born out of Vesta's inability to compete against Amdocs in the mobile phone payment processing market. Plaintiff Vesta operates primarily in the payment processing market. *See* Compl. ¶ 9. Its payment platform includes a proprietary fraud prevention and detection algorithm that, Vesta claims, gives it a "significant advantage" over its competitors. Compl. ¶ 91. Amdocs, by contrast, has an extensive product portfolio and offers a wide range of services, including billing platform solutions. Amdocs began moving into the payment processing market in 2006, with its acquisition of Qpass. In 2012, it announced it was building a payment processing solution for mobile phone company MetroPCS. The solution launched in 2014. Amdocs's solution differs from Vesta's in at least two ways: (1) it is less complex and, hence, less expensive (Compl. ¶ 57); and (2) it does not have a fraud detection component (*cf.* Compl. ¶¶ 75(a), 96).[1] Shortly after Amdocs launched its payment solution, Vesta filed this lawsuit for breach of contract, trade secret misappropriation, and fraud. Compl. ¶ 97.

Vesta's claims are shots in the dark; broad allegations unsupported by facts sufficient to state a claim for relief. As this Court previously has explained, "[t]he allegations made in a complaint must be both sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it and sufficiently plausible such that it is not unfair to require the opposing party to be subjected to the expense of discovery." *Brand v. Angus*, No. 3:10-CV-189-HZ, 2012 WL 2178969, at *1 (D. Or. June 11, 2012) (internal punctuation and citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

---

[1] The Complaint does not allege Amdocs's payment solution has fraud functionality and, in the meet and confer in advance of this Motion, Vesta's attorneys confirmed that it is not taking the position Amdocs's solution has this capability.

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Vesta fails to plead plausible facts supporting its claims for breach of contract and trade secret misappropriation. The two claims are essentially identical – in support of both, Vesta alleges that Amdocs breached non-disclosure agreements ("NDAs") with Vesta, and misappropriated Vesta's trade secrets by using confidential information Amdocs obtained from Vesta from 2010–2012, as part of two failed joint pitches to MetroPCS and two fruitless acquisition attempts. Vesta, however, fails to properly plead the elements of these claims.

First, Vesta does not identify what information Amdocs misused. Vesta alleges that it disclosed to Amdocs "Risk Information" and "Solution Methods," but it defines these terms by listing categories of information – fraud data, pricing, architectural drawings, and sequence flow diagrams – too broad to put Amdocs on notice of what it purportedly misused and too vague to support a plausible conclusion that the information was protected by NDAs or trade secret law.[2]

Second, Vesta does not properly plead breach or misappropriation. To plead breach, Vesta must allege facts plausibly suggesting that Amdocs actually used proprietary Vesta information to create the Amdocs mobile payment solution. Instead of pleading facts, however, Vesta relies on speculation, claiming that Amdocs must have misappropriated Vesta's confidential information because, without it, "Amdocs would not have been able to develop, sell and launch its own payment solution platform for Metro PCS on the timeline required by Metro PCS or at the price bargained for with Metro PCS." Compl. ¶ 48. This is unsubstantiated conjecture lacking any plausible basis. Amdocs has a market

---

[2] Vesta defines "Risk Information" as "statistical information about: (a) the prevalence of fraudulent payment transactions in the prepaid mobile device marketplace; and (b) how Vesta uses fraud data to price its payment solutions . . . ." Compl. ¶ 51. Vesta defines "Solution Methods" as "information about the architecture and design of the solutions, including proprietary payment routines, methodologies and processes" (Compl. ¶ 22) and "architectural drawings and sequence flow diagrams that depicted, on a step-by-step basis, how Vesta would design and implement its payment solution for Metro PCS" (Compl. ¶ 32).

capitalization of over seven billion dollars, more than $1.2 billion in cash, and more than 20,000 employees. It began making acquisitions in the payment processing area in 2006. Vesta's core allegation – that Amdocs could not have developed a payment solution in 18 months – does not plausibly suggest liability. Consequently, the breach of contract and trade secret claims should be dismissed.

Vesta also fails to state a claim for fraud. Vesta's fraud theory seems to be based on the idea that Amdocs "tricked" Vesta into continuing acquisition discussions in 2012 without disclosing to Vesta that Amdocs was at that time developing its own payment solution. This argument, however, is expressly foreclosed by a 2012 NDA in which Vesta acknowledged that Amdocs may be "developing internally" a solution that would be "similar to or compete with" Vesta's system. Request for Judicial Notice ("RJN") Ex. A at 3–4.[3] Vesta cannot complain it was misled about something it expressly acknowledged might be happening.

For all of these reasons, and as discussed in detail below, the Complaint fails to state a claim on which relief can be granted and must therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL BACKGROUND

The following factual background is taken from Vesta's Complaint and from matter subject to judicial notice under Federal Rule of Evidence 201.

---

[3] All citations to "RJN Ex. __" are to the exhibits attached to the Declaration of Christina L. Costley submitted in connection with the contemporaneously filed Request for Judicial Notice. As explained more fully in the Request for Judicial Notice, while the Court assumes the truth of well-pleaded allegations, it does not assume the truth of factual or legal conclusions, nor matters that contradict information contained in the documents subject to judicial notice or incorporated by reference. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Crowden v. Federal Nat'l Mortg. Ass'n*, No. 3:11-cv-1083-HZ, 2011 WL 6740741, at *3–9 (D. Or. Dec. 22, 2011) (dismissing complaint based on documents subject to judicial notice and incorporation by reference that disproved the claims).

## I.    THE PARTIES

### A.    <u>Amdocs</u>

Amdocs, Inc., and Amdocs Management Limited are both subsidiaries of the publicly traded company Amdocs, Ltd. (NASDAQ: DOX). Amdocs, Ltd. and its subsidiaries ("<u>Amdocs</u>") are international companies providing end-to-end software and service solutions to mobile network operators including MetroPCS. Amdocs provides revenue management (billing, payments, and partner settlement), network management/control (selecting the network, roaming, and associated services), and operational support (fulfillment, inventory, etc.). Among other things, Amdocs's software and services enable mobile customers to use 4G networks for talk and text, allow customers to view their data and minutes used, and facilitate revenue management for mobile network operators. RJN Ex. B, at 26–28.

Amdocs employs 21,000 people worldwide, *id*. at 57, and provides the software and solutions relied upon by over 650 million mobile phone subscribers. In its most recent annual report, Amdocs reported annual revenues of $3.35 billion and earnings of over $400 million. *Id.* at 11. Amdocs had approximately $1.118 billion in cash in 2012, and $1.326 billion in cash in 2013. *Id.*

### B.    <u>Vesta</u>

Vesta is a privately held entity formed in 1995 that specializes in fraud detection functionality for mobile network operator prepaid payments. *See* Compl. Intro.; RJN Ex. C. Managed in part by a former Vice President of Verisign, Inc. – another fraud detection and security firm – Vesta touts its fraud detection software and its willingness to indemnify mobile network operators for any losses as a result of fraud. *See* RJN Ex. C. Vesta also offers mobile network operators its "Mobile Payment Platform" ("<u>MPP</u>"), which is a payment processing system for the various channels that customers pay mobile network operators (e.g., prepaid, mail, internet, content payments, connected devices, and mobile commerce). *See* RJN Ex. D. Vesta advertises MPP as a program that will save mobile network operators the time of developing it themselves. According to Vesta, "Vesta's Mobile Payment Platform (MPP)

5

delivers a full suite of feature functionality in a fraction of the time it would take to build an in-house solution." *Id.*

At the core of Vesta's payment solution is its fraud detection and protection algorithms. Vesta alleges in the Complaint: "Vesta has spent nearly 20 years and millions of dollars to refine its fraud detection and protection algorithms. Vesta's fraud detection and protection algorithms are highly confidential and give Vesta a significant advantage in the payment solution marketplace." Compl. ¶ 91; *see also* Compl. ¶ 51.

## II.    VESTA AND AMDOCS PREPARE JOINT PITCH MATERIAL AND ENTER INTO MERGER DISCUSSIONS

Vesta alleges that it entered into four NDAs with Amdocs: (1) an NDA dated October 18, 2006 (which was actually entered into between Vesta and Amdocs Software Systems Limited, an Irish Amdocs subsidiary not named or involved in this lawsuit) (*see* RJN Ex. J); (2) an NDA dated June 24, 2009, that governed the parties' initial collaboration on a joint payment solution; (3) an NDA entered into March 31, 2010 (which Amdocs has been unable to identify); and (4) an NDA dated July 3, 2012, entered into as part of the 2012 acquisition discussions. Compl. ¶¶ 16, 18, 41.

Amdocs began talks to acquire Vesta in the first quarter of 2010. Vesta alleges that, as part of these discussions, it disclosed to Amdocs "financial, pricing and profitability data." Compl. ¶ 25. Amdocs terminated these discussions in April 2010. Compl. ¶ 27.

In 2010, Vesta and Amdocs partnered to pitch a joint payment solution to MetroPCS. Compl. ¶¶ 29, 36. Amdocs was already providing MetroPCS's billing platform at that time. Compl. ¶ 29. Vesta alleges that, while collaborating on the pitch, Vesta shared "Solution Methods" including "architectural drawings and sequence flow diagrams that depicted, on a step-by-step basis, how Vesta would design and implement its payment solution for Metro PCS" and information about Vesta's "Text-to-Pay" system and "customer relationship management tools." Compl. ¶ 32. "Ultimately, the joint pitch to

Metro PCS by Vesta and Amdocs was not successful . . ." and MetroPCS purchased a payment system from a competing vendor in 2011.[4] *See* Compl. ¶ 35. Subsequently, at an unspecified time in 2012, Amdocs and Vesta partnered on a second joint pitch to MetroPCS, which also was not successful. Compl. ¶ 36.

In July 2012, Vesta again put itself up for sale. Compl. ¶ 65. Amdocs and Vesta executed an NDA as part of these discussions. *See* Compl. ¶ 41; RJN Ex. A. The 2012 NDA includes the following language:

> [E]ach of the Parties acknowledge that the other Party and **its Representatives may currently or in the future be developing information internally, or receiving information from third parties, that is similar to the Evaluation Material**. Accordingly, **nothing in this letter agreement will prohibit a Party or its Representatives from developing or having developed** for itself or for any third parties **products**, concepts, systems or techniques **that are similar to or compete with the products, concepts, systems or techniques contemplated by, or embodied in, the Evaluation Material**, provided that such party does not violate any of its obligations under this letter agreement in connection with such development.

RJN Ex. A, at 3–4 (emphasis added). The July NDA also expressly provided that it superseded any prior agreements between the parties. *See id* at 5. Vesta alleges that, as part of the 2012 acquisition discussions, it provided Amdocs with information "about its business plan, pricing strategies and products." Compl. ¶ 42. Again, however, the discussions did not result in an acquisition because the parties were unable to come to an agreement on price. Compl. ¶ 43.

## III. AMDOCS'S PAYMENT SOLUTION

In mid-2012, after the failed Vesta/Amdocs pitch, MetroPCS approached Amdocs individually and asked it to create a payment solution that would integrate with Amdocs's existing billing platform (which MetroPCS was already using). Compl. ¶¶ 36, 45. In response, Amdocs spent approximately

---

[4] Fiserv won the bid for MetroPCS's payment system in 2011. Amdocs replaced Fiserv, at MetroPCS's request, in 2012.

18 months developing the Enterprise Payment Processing ("EPP") solution.[5] *Compare* Compl. ¶ 36 (Amdocs was approached in mid-2012 to develop a payment platform) *with* Compl. ¶ 45 (Amdocs "went live" at MetroPCS in January 2014, 18 months later). Amdocs built the EPP solution, in part, using resources from its 2006 acquisition of Qpass. *See* RJN Ex. E (announcing Amdocs purchase of Qpass in April 2006); Ex. F, at 82 ("Our portfolio of product offerings includes revenue management (e.g. billing, mediation, partner settlement)"). The Qpass team had already developed a product called Amdocs Mobile Payments ("AMP"), which allowed mobile network operators to sell products to customers and settle payment against any available payment method. *See* RJN Ex. G, at 114. Amdocs combined and expanded upon this product, using its internal resources and its relationship with a payment processing company named Trivnet, to develop a payment gateway and the other types of payment software. *See* RJN Ex. H; *see also* Ex. D, at 60 (Vesta's website acknowledging that mobile operators and others can develop payment software).

Amdocs's EPP solution differs from Vesta's in two important ways: (1) it is less expensive (Vesta attributes this to Amdocs's ability to eliminate the complexities of integrating unrelated billing and payment platforms) (Compl. ¶ 57); and (2) while the defining feature of Vesta's payment solution is its fraud prevention and detection algorithm, Amdocs's solution does not have a fraud detection component (Compl. ¶ 91). *See* RJN Ex. I.

## ARGUMENT

Vesta's complaint fails to state a claim upon which relief can be granted and must therefore be dismissed.

---

[5] Vesta identifies the product that Amdocs sold as Amdocs Mobile Payments, which is a pre-existing software tool developed by Qpass.

## I.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555. It is not enough to plead facts "that merely create[] a suspicion [of] a legally cognizable right of action." *Id.* (first alteration added) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)). Likewise, a complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 446 U.S. at 678 (alteration in original) (quoting *Twombly,* 550 U.S. at 557). "The allegations made in a complaint must be both 'sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it' and 'sufficiently plausible' such that 'it is not unfair to require the opposing party to be subjected to the expense of discovery.'" *Brand v. Angus*, No. 3:10-CV-189-HZ, 2012 WL 2178969, at *1 (D. Or. June 11, 2012) (quoting *Starr v. Baca*, 633 F.3d 1191, 1216 (9th Cir. 2011)).

Moreover, when a complaint sounds in fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. "Rule 9(b)'s heightened pleading standard will apply if the allegations are such that plaintiff is alleging a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of the claim. If so, the claim is 'grounded in fraud.'" *CollegeNET, Inc. v. Xap Corp.*, No. CV-03-1229-HU, 2004 WL 2303506, at *6 (D. Or. Oct. 12, 2004) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)), *adopted as modified*, 2005 WL 708406 (D. Or. Mar. 28, 2005). Where the complaint includes a fraud claim premised on the same factual basis as other allegations, therefore, Rule 9(b) applies and plaintiff must plead its claims with specificity. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1027–28 (9th Cir. 2005)

(including claim for fraud required that other allegations based on same set of facts also be pled with particularity). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107.

## II.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT (COUNT 1)

To state a claim for breach of contract, a plaintiff must "specify which [contract] Defendant[s] allegedly violated and which provision(s) were violated by what specific conduct." *Fleshman v. Wells Fargo Bank*, N.A., ___ F. Supp. 2d ___ , No. 3:13-cv-2062-HZ, 2014 WL 2772508, at *8 (D. Or. June 17, 2014) (dismissing complaint where there were multiple contracts at issue and plaintiff failed to allege which one applied). In addition, a plaintiff must allege "the contractual harm that each alleged breach caused." *Id.* at *8. These are basic requirements of fair notice to the defendant, without which an adequate defense cannot be prepared.

Vesta fails entirely to plead these elements. Vesta, in fact, does not even identify the governing contracts. Instead, Vesta alleges that the parties entered into four NDAs as well as "Sign-in" NDAS;[6] that the 2009 NDA is an "umbrella" NDA that governs all conduct between the parties; and that the breach of contract claims could be based on "the 2009 NDA and/or the 2012 NDA." Compl. ¶¶ 19, 68(a), 75(a), (d).[7] Vesta also does not identify the relevant contractual provision it alleges Amdocs

---

[6] Vesta refers, in passing, to "sign-in" NDAs, allegations which appear to refer to sign-in sheets visitors sign in a reception area before entering Vesta's office building. Compl. ¶¶ 20, 22, 68(c). Vesta does not identify who executed them, when they were executed, what acts they govern, what conduct they prohibit, what information they protect, how they relate to Vesta's claims, or whether there was mutuality or consideration with respect to them.

[7] Vesta alleges that, while the 2012 and 2009 NDAs in some instances may both apply, the 2012 NDA is merely a supplementary, and not superseding, contract. The 2012 NDA directly contradicts this allegation, stating it: "supersedes all prior agreements and undertakings, both written and oral, between the Parties with respect to the subject matter hereof relating to a Transaction involving the Company." *See* Ex. A, at 5.

violated. In addition, as set forth more fully below, Vesta also fails properly to plead breach of the NDAs and damages. For these reasons, Amdocs's motion to dismiss should be granted.

### A.    Vesta Fails to Plead a Plausible Basis for Inferring that Amdocs Breached the NDAs

Vesta attempts to state a claim for breach of contract based on Amdocs's alleged use of "Risk Information" and "Solution Methods" in violation of either "the 2009 NDA and/or the 2012 NDA." Vesta, however, fails to allege facts plausibly supporting a contention that Amdocs used this information when building its payment platform. Vesta pleads no facts explaining how Amdocs used "Risk Information" (fraud data) to build a solution with no fraud functionality. In addition, Vesta also fails to plead plausible facts explaining why "Solution Methods" (draft drawings and diagrams) prepared for a pitch in 2010 would have been useful to Amdocs when creating a payment solution, with different components and functionality, in 2012 and 2013. Vesta, instead, relies on conclusory assertions that Amdocs "could not have" built its payment solution without Vesta's fraud data and pitch material. As further explained below, this does not suffice to plead a claim.

### 1.    Vesta Fails to Plead Breach as to the "Risk Information"

Vesta alleges Amdocs breached either the 2009 or the 2012 NDA by relying on Vesta's "Risk Information" "to aid its decision to enter the payments marketplace." Compl. ¶ 75(a). To be clear: Vesta is not alleging that Amdocs looked at Vesta's fraud data and used it to replicate Vesta's fraud detection functionality. Instead, Vesta is alleging that Amdocs relied on Vesta's fraud data when deciding *not* to add fraud functionality to Amdocs's payment solution.[8] Vesta has tortured the language of this claim because, when pled outright, Vesta is left with an allegation that Amdocs breached the NDA by deciding to create a payment solution that uses none of Vesta's core functionality. This allegation is nonsensical. Vesta pleads no facts indicating Amdocs ever considered adding fraud functionality to its payment

---

[8] Vesta confirmed this interpretation of the allegation during the parties' mandatory meet and confer on September 10, 2014.

processing solution. Vesta also does not allege that Amdocs ever consulted Vesta's "Risk Information" when deciding whether to add fraud functionality. And Vesta does not explain why the "Risk Information," if Amdocs had reviewed it, would have dissuaded Amdocs from entering the fraud prevention market. In fact, Vesta's allegation that its fraud prevention and detection components gave it a "significant advantage" in the payment market (Compl. ¶ 91) actually seems to support the opposite conclusion.

This claim also should be dismissed because Vesta does not explain what provision of the NDA(s) Amdocs breached by relying on Vesta's Risk Information "to aid its decision to enter the payments marketplace." Comp. ¶ 75(a). The 2012 NDA expressly permits Amdocs to use Vesta's information for purposes of evaluating a possible acquisition of Vesta. Deciding whether to acquire Vesta, of course, necessarily required Amdocs to determine whether it wanted to add the functionality offered by Vesta's system.[9] *See* Ex. A; *Jamison v. Olin Corp.-Winchester Div.*, No. 03-1036-KI, 2005 WL 7213837, at *5–6 (D. Or. Oct. 4, 2005), *adopted*, 2005 WL 2897036 (D. Or. Nov. 3, 2005). This Court's decision in *Jamison* is instructive on this point. The plaintiff in that case sued the defendant, a gun maker, alleging that the defendant used confidential ballistics data (acquired while considering a joint venture with the plaintiff) as "motivation" to develop "the exact same concept." *Id*. at *5. The Court dismissed the claims, holding that, by offering the data for use in a joint venture, the plaintiff consented to defendant's use of it when deciding whether to enter the market. Similarly, here, by allowing Amdocs to use the Risk Information to determine whether to acquire Vesta, Vesta also consented to Amdocs's use of it when determining whether to add Vesta's functionality as it entered the payment market. In fact, the reasons for dismissal are even stronger in this case than in *Jamison* because Vesta acknowledged, in the 2012 NDA, that Amdocs might be developing a competing payment

---

[9] Vesta alleges that Amdocs obtained the Risk Information in the context of merger discussions, *not* as part of the joint pitches prepared by the parties in 2010 and 2012. *See* Compl. ¶¶ 32, 74-77.

solution while vetting Vesta for acquisition. *See* Ex. A, at 2. Vesta, consequently, fails to plead breach as to the "Risk Information."[10]

2.    Vesta Fails to Plead Breach as to the "Solution Methods"

Vesta also fails to plead breach, or misappropriation, as to the "Solution Methods." Though Vesta claims that Amdocs used the "Solution Methods" to create a "copycat" solution, the factual allegations in the Complaint indicate that the two payment solutions differ in at least two significant respects: (1) the hallmark of Vesta's solution is fraud functionality, which Amdocs's platform does not have; and (2) Amdocs's solution is less complex than Vesta's because it was designed to integrate only with Amdocs's own billing platform, not many different billing solutions. Compl. ¶¶ 57, 91. Apart from these allegations, which describe how the two payment systems differ (*not how they are the same*) Vesta pleads *no other facts describing Amdocs's payment solution*. Vesta does not allege that Amdocs's architecture mirrors Vesta's in any way. Vesta also does not allege that Amdocs's payment solution has any components depicted in Vesta's "Solution Methods." And Vesta does not identify that the functions performed by Amdocs's payment solution are similar to those in Vesta's "Solution Methods."

Moreover, even if the two payment solutions were similar (which they are not), the allegations in the Complaint would still be insufficient to state a claim because Vesta also fails to allege that its System Methods were sufficiently detailed or certain for Amdocs to use when building its payment platform. Vesta describes the "Solution Methods" as prospective material "that depicted, on a step-by-step basis, how Vesta *would* design and implement its payment solution for Metro PCS." Compl. ¶ 32. In other words, the "Solution Methods" were not even final designs; they were draft pitch material prepared by Vesta to show how Vesta and Amdocs would integrate a payment solution to work

---

[10] Vesta also alleges Amdocs breached the NDAs by using the Risk Information to set pricing. Vesta, however, does not allege facts explaining why its prices are secret, why Risk Information from 2012 would have been commercial valuable to Amdocs when setting pricing in 2014, and how pricing of Vesta's payment solution with substantially different functionality would have informed Amdocs's own pricing policies. *See* Compl. ¶ 75(b).

with Amdocs's billing solution. Compl. ¶ 33. None of these allegations provide the requisite plausible basis for inferring that Amdocs used Vesta's "Solution Methods" when creating its payment solution.

Instead of pleading facts, Vesta relies on a conclusory assertion that Amdocs must have used Vesta's "Solution Methods" because, without it, Amdocs "would not have been able to develop, sell and launch its own payment solution platform for Metro PCS on the timeline required by Metro PCS or at the price bargained for with Metro PCS." Compl. ¶ 48. Although well-pleaded facts in a Complaint are generally presumed true for purposes of a motion to dismiss, conclusory statements devoid of factual support – such as the *ipse dixit* contention that Amdocs could not possibly have developed its payment solution without misuse of Vesta's confidential information – "are no more than conclusions" which are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *Fairbank v. Citibank (S.D.), N.A.*, No. 3:12-cv-864-HZ, 2012 WL 6154759, at *1 (D. Or. Dec. 11, 2012) ("[T]he court need not accept conclusory allegations as truthful.") (citing *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992)); *see also e.g., Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-cv-3120(LTS)(THK), 2009 WL 1492196, at *9–10 (S.D.N.Y. May 27, 2009) (dismissing a breach of contract claim premised upon conclusory allegations). Vesta's conjecture that there must have been a breach of contract is insufficient to raise Plaintiff's "right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Vesta fails to state a claim based on Amdocs's development of a competing payment solution because an "obvious alternative explanation" exists. *See id.* at 567–68; *Iqbal*, 556 U.S. at 682. "The plausibility standard" for pleading a claim "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires a plaintiff to allege more than just facts "'merely consistent with'" the defendant's liability. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Oak Harbor Freight Lines, Inc. v. Harris*, No. 3:13-cv-1100-HZ, 2013 WL 6576284, at *4 (D. Or. Dec. 13, 2013) ("'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Iqbal*, 556 U.S. at 678); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 428 (S.D.N.Y. 2010) ("If the allegations of a complaint show that the complained-of conduct was 'not only compatible with, but indeed was more likely explained by lawful' conduct, no claim for relief is stated.") (quoting *Iqbal*, 556 U.S. at 680).

An obvious alternative explanation exists here. There is nothing proprietary about payment processing platforms in general; Vesta's own website states that its software can be replicated by other mobile network operators. *See* RJN Ex. D. Nor does any reason exist to believe that Amdocs could not have developed its own payment platform in the 18-month period between mid-2012 (when it first discussed its solution with MetroPCS) and early 2014 (when it unrolled its payment platform). Amdocs has a market capitalization of seven billion dollars, more than $1.2 billion in free cash, and more than 20,000 employees. It has been developing complex computer software for over 30 years. In 2006, Amdocs acquired a company that provided billing solutions, and in 2009, it partnered with another billing provider, both of which assisted Amdocs with building its payment solution. In sum, Vesta's claim that Amdocs could not have developed its own payment processing solution in 18 months without using Vesta's "Solution Methods" is nothing more than wild speculation, unsubstantiated by facts, and it is contrary to allegations in the Complaint and judicially noticeable documents indicating that Amdocs had ample resources to create a payment solution from the ground up (which it did).

**B.**    **Vesta Fails to Plead Damages**

Vesta also fails to allege that "defendant's breach result[ed] in damage to plaintiff." *Ying Chang v. Citimortgage, Inc.*, No. 3:12-cv-1884-HU, 2013 WL 5939985, at *12 (D. Or. Nov. 2, 2013) (Hernandez, J.); *see also Market Trading, Inc. v. AT&T Mobility, LLC*, 388 F. App'x 707, 709 & n.2 (9th Cir. July 20, 2010) (affirming dismissal of breach of contract claims and stating "Damages are, of course, a necessary element of the breach of contract cause of action.") (internal citations and quotation

15

marks omitted); *Gibson v. Office of Attorney Gen.*, 561 F.3d 920, 929 (9th Cir. 2009) (holding contractual claims must fail because plaintiffs "failed to allege any foreseeable contract damages"); *Stell v. Intel Corp.*, No. 10-cv-90-AA, 2010 WL 4065597, at *1 (D. Or. Oct. 13, 2010) (dismissing claim for breach of contract because plaintiff failed to explain how alleged breach is material and failed to plead that breach resulted in damages).

The damages Vesta identifies – "lost revenue on the MetroPCS account" (Compl. ¶ 70) – are not only speculative, they are squarely refuted by the Complaint. Vesta acknowledges that MetroPCS *twice* chose not to retain Vesta to develop a payment solution for it. Compl. ¶ 35. Vesta also alleges that MetroPCS asked Amdocs to create a solution for it at a lower price point. *See* Compl. ¶ 57. Finally, Vesta does not allege that MetroPCS's system had any use for the fraud functionality that serves as the primary feature of Vesta's solution. *See generally* Complaint. Since Vesta has not pled damages, its breach of contract claim should be dismissed.

## III.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR TRADE SECRET MISAPPROPRIATION (COUNT II)

### A.    The Trade Secret Claim Should Be Dismissed Because It Is Wholly Derivative of the Breach of Contract Claim

Although the pleading standards are governed by Oregon law, under the terms of the NDAs the substantive legal issues regarding the breach of contract claim are governed by New York law. Under New York law, "when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual." *Document Sec. Sys., Inc. v. Coupons.com, Inc.*, No. 11-CV-6528 CJS, 2013 WL 1945954, at *3 (W.D.N.Y. May 9, 2013) (internal quotations omitted).[11] "[B]reach of contract and misappropriation of trade secret claims that are truly identical

---

[11] To the extent the NDAs are relevant to the trade secret claims, the choice of law provisions they include state that New York law should apply. If the Court finds the trade secret claims are independent of the breach of contract claims, then the law of the state where the alleged misappropriation occurred

causes of action, though asserted under two different labels, cannot co-exist." *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 64 (N.D.N.Y 2005). To survive dismissal, plaintiff bears the burden of showing that its "tort and breach of contract theories, based upon a common set of facts are sufficiently distinct." *Id.* The rationale behind this rule, simply put, is that a trade secret claim based only on a contractual breach is not a breach of a confidential relationship apart from the contract. "[W]here parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169, 1179 (S.D.N.Y. 1996) (internal quotations omitted); *Deutsche Bank Sec. Inc. v. Rhodes,* 578 F. Supp. 2d 652, 665 (S.D.N.Y. 2008) ("[B]reach [of a confidentiality provision in a contract] cannot support liability in tort for misappropriation [of a trade secret] unless an independent duty has been violated") (citation omitted).

The Complaint alleges a series of arm's-length business negotiations and discussions, all of which were governed by written NDAs. Vesta alleges that the NDAs define the relevant "proprietary information" and the scope of permissible "use." Compl. ¶¶ 60–65. Both the breach of contract claim and the trade secret misappropriation claim allege that Amdocs used the same information – the "Solution Methods" and the "Risk Information." *Compare* Compl. ¶¶ 68 & 75 (alleging that the proprietary information at issue in the breach of contract claim is the "Solution Methods" and the "Risk Information") *with* Compl. ¶¶ 84 & 94 (alleging that the trade secrets at issue in the trade secret claim are the same). Finally, both causes of action allege that Amdocs used that information for the same

---

should govern. The Complaint does not definitively identify that location. Instead, it alleges generally that "Solution Methods" were exchanged in "Oregon and Amdocs's various offices throughout the United States and the world, including Texas, New Jersey, England and Israel." Compl. ¶ 22. The Complaint does not allege where the "Risk Information" was disclosed, and it does not allege where any misappropriation allegedly occurred. In the absence of such allegations, Amdocs cites Oregon law (and the law of other states applying the Uniform Trade Secrets Act) for aspects of the trade secret and fraud analysis that are independent of the breach of contract claim. If Vesta is given leave to amend, and identifies the location of the alleged misappropriation, Amdocs may assert that the law of that state or nation governs.

purpose: to develop and sell a competing product. *Compare* Compl. ¶ 68 *with* Compl. ¶ 85.[12]
Accordingly, the trade secret claim relies solely upon the contractual scope of protected information and
permissible use to define the alleged violation. It is wholly duplicative of the claim for breach of
contract and must therefore be dismissed.

**B.    The Trade Secret Claim Should Be Dismissed As Vesta Has Failed to Allege a Claim
for Trade Secret Misappropriation**

To state a claim for trade secret misappropriation, a plaintiff must allege that (1) the subject of
the claim qualifies as a statutory trade secret; and (2) the conduct of the defendants constitutes statutory
misappropriation. *W. Med. Consultants, Inc. v. Johnson*, 835 F. Supp. 554, 557 (D. Or. 1993). For the
reasons set forth in connection with the breach of contract claim, and as further explained below, Vesta's
Complaint fails on both prongs and fails to allege secrecy.

1.    Vesta Fails to Clearly Identify any Trade Secret

To survive a motion to dismiss, Vesta must "identify the trade secrets" at issue and explain why
the subject matter meets the statutory standard for a trade secret. *MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511, 522 (9th Cir. 1993). This requires Vesta to "clearly identif[y]" the trade secrets
themselves "with sufficient particularity to separate them from matters of general knowledge." *S. Cal.
Inst. of Law v. TCS Educ. Sys.*, No. CV 10–8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal.
Apr. 5, 2011) (internal alterations and quotations omitted) (granting motion to dismiss for failure to state
a claim because trade secret was only generally described); *Jamison*, 2005 WL 7213837, at *9 (D. Or.

---

[12] Vesta's Complaint contains vague references to Amdocs hiring an employee named Neil Webzell in
the European Sales Department in April 2014. Compl. ¶¶ 53–56, 68, 75. The Complaint fails to identify
any relevant confidential knowledge that this European salesperson, hired in April 2014, could have
regarding the American MetroPCS transaction, which Amdocs had finished by January 2014. Vesta fails
to allege that Mr. Webzell knew anything related to this case at any time that mattered and therefore
fails to state a claim. *Edifecs Inc. v. Tibco Software Inc.*, 756 F. Supp. 2d 1313, 1317, 1319–21 (W.D.
Wash. 2010) (dismissing trade secret claim that "fails to make anything but speculative claims of future
misuse of proprietary information" and rejecting that an employee's "inevitable disclosure" is a basis for
relief).

Oct. 4, 2005) ("These requirements mean that plaintiff must identify its alleged trade secrets with sufficient particularity so that defendants are able to determine whether the information in question was in fact secret and whether it was in fact not readily ascertainable through appropriate means.").

A trade secret consists of "information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that . . . [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use . . . ." Or. Rev. Stat. § 646.461(4)(a). A trade secret is not a mere idea, nor is it any information that is commercially known. *Silvaco Data Sys. v. Intel. Corp.*, 184 Cal. App. 4th 210, 220–21 (2010) ("Trade secret law does not protect ideas as such."), *disapproved on other grounds, Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). Even "an assertion of confidential business information, without more, will not merit trade secret protection." *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-cv-5023(CBA), 2010 WL 889799, at \*6 (E.D.N.Y. Mar. 8, 2010).

Vesta fails to clearly identify any specific information it shared with Amdocs that qualifies for trade secret protection. Notably, Vesta does not allege Amdocs received Vesta's source code, object code, or other form of software that could be copied into a competing product. Instead, Vesta claims Amdocs received Vesta's "Solution Methods" and "Risk Information." Compl. ¶¶ 84, 94. The Complaint defines "Solution Methods" as "payment routines, methodologies and processes" (Compl. ¶ 22) and "architectural drawings and sequence flow diagrams" (Compl. ¶ 32).[13] It defines "Risk

---

[13] Vesta also alleges "Solution Methods" includes information about "customer notifications to optimize payments and customer retention, including detailed information about Vesta's 'Text-to-Pay' system," and information about Vesta's "customer relationship management tools." These concepts are offered by many different consumer services companies, including mobile network operators, and Vesta fails to allege any example of what information it created and is known to Vesta, alone, and provides Vesta with a competitive advantage. *See Composite Marine Propellers., Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (per curiam) ("It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets.").

Information" as information regarding "the prevalence of fraudulent payment transactions in the prepaid mobile device marketplace" and "how Vesta uses fraud data to price its payment solutions." Compl. ¶ 51. At no point in the Complaint does Vesta describe the information it showed Amdocs with any greater specificity. Instead, Vesta "effectively assert[s] that all information in or about its software is a trade secret." This does not suffice. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (such allegations are "both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret"); *Compuware Corp. v. Health Care Serv. Corp.*, No. 01 C 0873, 2002 WL 485710, at *4 (N.D. Ill. Apr. 1, 2002) ("[T]he Court rejected Compuware's assertion that each of its software programs was, in and of itself, a trade secret").

Vesta's allegations that Amdocs misappropriated Vesta's "Solution Methods" – i.e., methodologies, architectural drawings, processes, payment routines, or sequence flow diagrams – are insufficient as a matter of law to state a claim. Allegations that defendants stole "business methodologies" are "so broad as to be meaningless" and therefore "insufficient to inform [defendant] of the basic fact of what exactly it is supposed to have stolen or unlawfully obtained." *Medafor, Inc. v. Starch Med. Inc.*, No. 09-cv-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009). Courts have also dismissed "broad claim[s] based on . . . software architecture as a whole" because it makes it "difficult to assess their relevance." *Cinebase Software, Inc. v. Media Guar. Trust, Inc.*, No. C98-1100 FMS, 1998 WL 661465, at *11 (N.D. Cal. Sept. 22, 1998). Likewise, courts have dismissed claims based on broad descriptions of "drawings, process, . . . and other technical knowhow." *See Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-cv-1162-L, 2014 WL 1976757, *7–8 (N.D. Tex. May 15, 2014); *see also Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at *3-4 (M.D. Fla. Dec. 5, 2013) (dismissing claim where plaintiff alleged trade secrets included "sales and operation procedures . . . system architecture, [and] financial data").

Allegations related to the "Risk Information" likewise fail to state a claim. Vesta does not allege that Amdocs had access to its fraud algorithms or other proprietary software. Instead, it alleges Amdocs obtained access to data regarding "the prevalence of fraudulent payment transactions in the prepaid mobile device marketplace." Compl. ¶ 51. "Boilerplate allegations" such as "formulas, patterns, programs, devices, compilations of information, methods or techniques, . . . relating to the invention, design, manufacture, formulation, research, development, or production of [plaintiff's products] . . . . do nothing to notify [defendant] of what [plaintiff] alleges is actually a protected trade secret that he has misappropriated." *Jacobs Vehicle Sys., Inc. v. Yang*, No. 1:12-cv-181, 2013 WL 4833058, at *9 (M.D.N.C. Sept. 10, 2013); *see also Medafor*, 2009 WL 2163580, at *1 (allegations related to "compilations"). Allegations that Amdocs accessed "fraud data used to price its payment solutions" are also insufficiently precise. *See* Compl. ¶ 51. "Pricing data and market strategies" do not constitute trade secrets. *Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62, 67 (App. Div. 2003); *see also Am. Registry*, 2013 WL 6332971, at *3–4 (allegations regarding "financial data" and "information relating to products offered by [plaintiff]" are "so broad as to be meaningless"). Vesta also fails to allege why this information – which appears to simply be industry knowledge regarding the occurrences of fraud, and the price Vesta charges for its fraud detection software – is confidential. *See W. Med. Consultants, Inc. v. Johnson*, 80 F.3d 1331, 1337–38 (9th Cir. 1996) (recognizing that information that is "generally known to the public" cannot qualify as a trade secret under Oregon law); *sit-up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292(DLC), 2008 WL 463884, at *12 (S.D.N.Y. Feb. 20, 2008) ("[M]atters of . . . general knowledge in an industry cannot be appropriated by one as his secret.") (internal quotations omitted, alteration in original).

### 2.    Vesta Fails to Adequately Allege Misappropriation

To plead misappropriation, Vesta must identify the trade secret used by Amdocs in the allegedly infringing software and how that trade secret was misappropriated. Or. Rev. Stat. § 646.461(2); *see also*

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (granting motion to dismiss holding that "MedioStream has failed to identify which, if any, of the trade secrets described in the complaint were encompassed in the products and technology . . . .") (internal quotations omitted); *cf. Giftango, LLC v. Rosenberg*, 925 F. Supp. 2d 1128, 1139 (D. Or. 2013) (Hernandez, J.) (finding no likelihood of success on merits of trade secret claim where there was no evidence that a misappropriation had actually occurred and threat of misappropriation was low).

Vesta fails to meet this standard for the same reasons it fails to plead a contractual breach. Vesta cannot plead a claim as to the "Risk Information" because Vesta does not allege that Amdocs utilized Vesta's fraud data when creating its payment solution. To the contrary, Vesta alleges Amdocs utilized its "Risk Information" when determining *not* to add a fraud detection component to its payment solution. *See* Compl. ¶¶ 51, 90–100. This, of course, is the opposite of what trade secret law prohibits. In addition, because Vesta claims it disclosed the "Risk Information" solely in the context of merger discussions (i.e., an inquiry by Amdocs into whether to expand into the payments market), consent for Amdocs to use the data to determine whether to move into the payments market is implied. *See Jamison*, 2005 WL 7213837, at *5–6 (rejecting plaintiff's argument that defendant misappropriated trade secrets by using confidential information as motivation to continue with a project).

As for the "Solution Method" count of the trade secret misappropriation claim, Vesta merely alleges that it disclosed unidentified portions of the "Solution Methods" to Amdocs and that Amdocs "us[ed] that information to develop, market and sell a competing payment solutions platform." Compl. ¶¶ 84–85. Again, Vesta fails to describe the "compilation" – i.e. the alleged trade secret – "with adequate specificity to inform [Amdocs] what it is alleged to have misappropriated[,]" *see sit-up Ltd.*, 2008 WL 463884, at *11, and fails to identify any aspect or feature of Amdocs's "competing payment solutions platform" that uses information taken from Vesta. In fact, Vesta does not attempt in any way to link the alleged "Solution Method" (i.e., preliminary drawings drafted for the MetroPCS pitch) to the

payment solution Amdocs developed. Compl. ¶¶ 22, 32. Absent such allegations, Vesta fails to plead a claim for trade secret misappropriation.[14]

>              3.       Vesta Fails to Adequately Allege Secrecy

Vesta also must allege that it maintained the secrecy of the information. Vesta fails to meet this prong because it does not allege facts plausibly indicating that the methods and processes Amdocs allegedly misappropriated were not disclosed publicly to consumers when they subscribe to mobile network operators. This is important because Vesta's "trade secrets" are alleged at such a high level of abstraction (e.g., a "process" for making mobile payments, "customer notification" of a payment, or a "Text-to-Pay" option), that it would be something consumers see when they subscribe to a mobile network and make payments. *See Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1177 (2d Cir. 1993) ("Once [plaintiff's product was marketed], it could not constitute a protectable trade secret because, from that time forward, it could not be used secretly and continuously in its business."), *abrogated on other grounds, Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000); *see also Frink Am., Inc. v. Champion Road Mach. Ltd.*, 48 F. Supp. 2d 198, 201, 206–208 (N.D.N.Y. 1999) (holding that manufacturing plans, product drawings, jigs, dies, machine tools, and technical manuals were not trade secrets because company sold a product embodying the foregoing).

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD (COUNT III)

Plaintiff's fraud claim fails for at least two reasons. First, the claim is duplicative of and barred by the trade secret and contract claims. Oregon has adopted the Uniform Trade Secret Act, which bars

---

[14] *See, e.g., Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 265 (D.D.C. 2010) (citing *Iqbal* and holding that trade secret allegations "are the sort of 'naked assertions devoid of further factual enhancement' that fall woefully short of the already liberal pleading standard"); *All Bus. Solutions, Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 559 (W.D. Va. 2009) (dismissing misappropriation claims and observing "*Twombly* and *Iqbal* make clear that naked assertion[s] devoid of further factual enhancement are insufficient to withstand a motion to dismiss . . . .") (internal quotations omitted); *Medafor*, 2009 WL 2163580, at *1 (holding that plaintiff "has failed to plead any facts to support its allegation that [defendant] stole its trade secrets").

any tort claim arising out of the same facts as a trade secret claim. *See AcryMed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1218 (D. Or. 2004) (dismissing as preempted under the UTSA claims for fraud arising out of alleged breach of an NDA). As this Court has explained in a similar case, "[t]here would be no claim for fraud, and Plaintiffs would have suffered no damages, in the absence of Defendants' misappropriation of [plaintiff's] trade secrets," where plaintiff's underlying claim is that "Defendants used their misrepresentation to wrongfully obtain access to Plaintiffs' trade secrets." Consequently, "Plaintiffs' fraud claim is also preempted by the Act" and should be dismissed. *Id.*

Plaintiff's claim also is barred by the breach of contract claim. This Court has previously held that "a breach of a promise is actionable through a breach of contract action, not a fraud claim." *Hill Meat Co. v. Sioux-Preme Packing Co.*, No. 08-cv-1062-SU, 2009 WL 1346606, at *7 (D. Or. May 13, 2009). In determining whether a fraud claim is actionable where a breach of contract claim also is alleged, courts consider whether the type of harm alleged was actually "caused by [defendant's] alleged breach of the contract," or "by [defendant's] allegedly false representations." *Id.* at *6–7. "Harm caused by a breach of a promise is actionable through a breach of contract action, not a fraud claim." *Id.* at *7.[15] Here, the harm Vesta alleges in connection with the fraud count – loss of the MetroPCS account – is identical to the harm alleged based on the breach of contract claim. Since this is not a separate harm, the fraud claim cannot be maintained.

---

[15] New York law is in accord. *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 619 (S.D.N.Y. 2010) ("[A] fraud claim cannot be maintained based on misrepresentations as to acts or intentions that formed the content of the contract unless a separate legal duty existed."); *B & M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480–83 (S.D.N.Y. 2010) ("Even a deliberately false statement that the defendant intends to perform on a contract, when he does not, will not suffice.") (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)); *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 614 (S.D.N.Y. 2010) ("[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim.") (internal quotations omitted).

Second, the claim fails because plaintiff fails to plead the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Lopez v. Fed. Housing Fin. Agency*, ___ F. App'x ___, No. 11-17645, 2014 WL 2611196, at *1 (9th Cir. June 12, 2014) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Though far from clear, it seems Vesta may be alleging that Amdocs misled it regarding its motive for entering into merger discussions in 2012. *See* Compl. ¶ 107. This allegation, however, is squarely foreclosed by the provision in the July 10, 2012 NDA in which Vesta specifically acknowledged that Amdocs may be "developing internally" a payment solution that would be "similar to or compete with" Vesta's system, concepts, products, and ideas. Ex. A, at 3–4. Vesta cannot now complain that it was misled about something it acknowledged may be happening. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (fraud claim dismissed where plaintiff purported to rely on representations contradicted by the signed agreements). For all of these reasons, the fraud claim also should be dismissed.

## CONCLUSION

For all of these reasons, Plaintiff fails to state a claim upon which relief may be granted, and its

Complaint should therefore be dismissed.

DATED this 15th day of September, 2014,

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.

ROBERT A. SHLACHTER, OSB No. 911718
JOSHUA L. ROSS, OSB No. 034387
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:   (503) 227-1600
Facsimile:    (503) 227-6840
rshlachter@stollberne.com
jross@stollberne.com

KATTEN MUCHIN ROSENMAN LLP

By:    s/ Bruce G. Vanyo
BRUCE G. VANYO (*Pro Hac Vice*)
CHRISTINA L. COSTLEY (*Pro Hac Vice*)
YONATON ROSENZWEIG (*Pro Hac Vice*)
2029 Century Park East
Suite 2600
Los Angeles, CA 90067-3012
Telephone:   (310) 788-4400
Facsimile:    (310) 788-4471
bruce@kattenlaw.com
christina.costley@kattenlaw.com
yoni.rosenzweig@kattenlaw.com

*Attorneys for Defendants*