**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Erick J. Haynie**, OSB No. 982482
EHaynie@perkinscoie.com
**Joanna T. Perini-Abbott**, OSB No. 141394
JPeriniAbbott@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff
Vesta Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VESTA CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>AMDOCS MANAGEMENT LIMITED;<br>AMDOCS, INC.,<br><br>    Defendants. | No. 3:14-cv-01142-HZ<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

i- PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
  DEFENDANTS' MOTION TO DISMISS

35302-0026/LEGAL123828122. 3

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Factual Background ............................................................................................... 1

    I.    The parties .............................................................................................. 1

    II.    Beginning in 2006, the parties formed a strategic relationship ............ 2

    III.    Amdocs and Vesta execute broad NDA's ............................................. 3

    IV.    Vesta shares proprietary information with Amdocs .............................. 3

        A.    Collaboration Projects ............................................................... 3

        B.    Acquisition Courtships ............................................................... 4

        C.    The MetroPCS Project ............................................................... 4

        D.    The Second Acquisition Attempt ............................................... 6

    V.    Theft of Confidential Information by Defendants ................................. 7

        A.    Theft of Confidential Solution Methods by Amdocs .................. 8

        B.    Theft of Confidential Risk Information by Amdocs .................... 8

Legal Standards ..................................................................................................... 9

Argument ............................................................................................................... 9

    I.    The Complaint asserts well-stated claims against Amdocs ................... 9

        A.    Contract Claim (Count I):  the Complaint asserts a well-stated claim for breach of contract ............................................ 10

            1.    The Complaint clearly identifies the contracts and terms at issue in this case (Element 1, Counts 1 and 2) ............................ 11

            2.    The Complaint clearly alleges how Amdocs used its "Confidential Risk Information" (Element 2, Count 2) ............... 12

            3.    Vesta clearly alleges how Amdocs used its "Confidential Solution Methods" (Element 2, Count 1) .................................... 15

            4.    The Complaint properly and sufficiently alleges Vesta's damages (Element 4, Counts 1 and 2) ......................................... 17

        B.    Trade Secret Claim (Count II):  the Complaint asserts a well-stated claim for trade secret misappropriation .......................... 19

            1.    Oregon law applies to Vesta's claim for trade secret misappropriation ........................................................................ 19

            2.    Vesta may plead both tort and contract theories simultaneously ........................................................................... 21

            3.    Vesta adequately identifies its trade secrets ............................... 21

# TABLE OF CONTENTS
## (continued)

**Page**

    4.    The Complaint fairly and sufficiently alleges
misappropriation by Defendants ................................................... 28

    5.    The Complaint fairly and sufficiently alleges secrecy ................ 30

C.    Fraud Claim (Count III):  Vesta's Claim for Fraud is Proper ................. 32

Conclusion ........................................................................................................... 35

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204 (D. Or. 2004) .......................................... 19, 33

*American Registry, LLC v. Hanaw*, No. 13-cv-352-FtM, 2013 WL 4833058
(M.D. Fla. Dec. 5, 2013)........................................................................................................ 27

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................. 9, 16, 17, 29

*BioD, LLC v. Amnio Technology, LLC*, No. 13-cv-1670-HRH, 2014 WL
268644 (D. Ariz. Jan. 24, 2014) ...................................................................................... 23, 24

*Buffets, Inc. v. Klinke*, 73 F.3d 965 (9th Cir. 1996) ................................................................ 30

*Canzona v. Atanasio*, 988 N.Y.S.2d 637, 118 A.D.3d 841 (N.Y.A.D. 2nd Dept.
2014) .................................................................................................................................. 10, 17

*Cinebase Software, Inc. v. Media Guar. Trust, Inc.*, No. C98-1100 FMS, 1998
WL 661465 (N.D. Cal. Sept. 22, 1998) ........................................................................... 24, 25

*Clark v. Bunker*, 453 F.2d 1006 (1972) ................................................................................... 30

*Cobalt Flux, Inc. v. Positive Gaming AS*, No. 2:08-cv-185-TS, 2008 WL
4534182 (D. Utah Oct. 6, 2008) ............................................................................................ 26

*Compuware Corp. v. Health Care Serv. Corp.*, No. 01-cv-0873, 2002 WL
485710 (N.D. Ill. April 1, 2002)............................................................................................ 27

*Diversified Marine, Inc. v. JT Marine, Inc.*, Civ. No. 10-664-JE, 2010 WL
3210848 (D. Or. Aug. 10, 2010)....................................................................................... 33, 34

*Dreamstone Entertainment, Ltd. v. Maysalward Inc.*, No. 14-cv-02063-CAS,
2014 WL 4181026 (C.D. Cal. Aug. 18, 2014)...................................................................... 16

*Fleshman v. Wells Fargo Bank, N.A.*, __ F. Supp. 2d __, No. 3:13-cv-2062-
HZ, 2014 WL 2772508 (D. Or. June17, 2014) (not yet published)........................................ 12

*Flow Valve, LLC v. Forum Energy Technologies, Inc.*, 13-cv-1261, 2014 WL
3567814 (W.D. Okla. July 18, 2014)................................................................................ 16, 29

*Frink Am., Inc. v. Champion Road Mach. Ltd.*, 48 F. Supp. 2d 198 (N.D.N.Y.
1997) ...................................................................................................................................... 32

*Gibson v. Office of Attorney Gen.*, 561 F.3d 920 (9th Cir. 2009)............................................. 19

*Giftango, LLC v. Rosenberg*, 925 F. Supp. 2d 1128 (D. Or. 2013) ........................................... 29

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Hill Meat Company v. Sioux-Preme Packing Co.*, Civ. No. 08-1062-SU, 2009
WL 1346606 (D. Or. May 13, 2009) ................................................... 34

*Hill v. Bank of America, N.A.*, No. 3:3-13-CV-000745-KI, 2013 WL 45444260
(D. Or. Aug. 27, 2013).................................................................. 10

*Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173 (2d Cir. 1993) .............. 31

*IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002).................... 26

*IKON Office Solutions, Inc. v. American Office Products, Inc.*, 178 F. Supp. 2d
1154 (D. Or. 2003)...................................................................... 26

*Jacobs Vehicle Sys. Inc. v. Yang*, No. 1:12-cv-00181, 2013 WL 4833058
(M.D.N.C. Sept. 10, 2013)............................................................. 28

*Jamison v. Olin Corp.-Winchester Div.*, No. 03-1036-KI, 2005 WL 7213837
(D. Or. Oct. 4, 2005)............................................................. 13, 14, 26

*Kaib's Roving R. Ph. Agency, Inc. v. Smith*, 237 Or. App. 96, 239 P.3d 247
(2010)........................................................................ 22, 23, 24, 30

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ........................... 25

*Lycoming Engines v. Superior Air Parts, Inc.*, No. 13-cv-1162-L, 2014 WL
1976757 (N.D. Tx. May 15, 2014) ...................................................... 27

*Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62 (App. Div. 2003)...................... 26, 27

*Market Trading, Inc. v. AT&T Mobility, LLC*, 388 F. App'x 707 (9th Cir. July
20, 2012) ............................................................................. 19

*Medafor, Inc. v. Starch Med. Inc.*, No. 09-cv-0441-PJS/FLN, 2009 WL
2163580 (D. Minn. July 16, 2009)...................................................... 27

*MedioStream, Inc. v. Microsoft Corp.*, 896 F. Supp. 2d 1095 (N.D. Cal. 2012)......... 29

*Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-cv-5023-CBA, 2010
WL 889799 (E.D.N.Y. Mar. 8, 2010).................................................... 26

*S. Cal. Inst. Of Law v. TCS Educ. Sys.*, No. 10-cv-8026-PSG, 2011 WL
1296602 (C.D. Cal. April 5, 2011) .................................................... 25

*Seal Source, Inc. v. Calderon*, No.03:09-cv-00875-HU, 2011 WL 5041275 (D.
Or. Sept. 29, 2011)................................................................... 22

*Silvaco Data Sys. V. Intel. Corp.*, 184 Cal. App. 4th 210 (2010) ................... 25

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Silver v. Kulongoski*, No. 10-1241-AC, 2012 WL 4739273 (D. Or. Sept. 6, 2012) ........................................................................................................... 9

*Stell v. Intel Corp.*, No. 10-90-AA, 2010 WL 4065597 (D. Or. Oct. 13, 2010) .......................... 19

*Stockamp & Assoc., Inc. v. Accretive Health*, cv 04-1443-BR, 2005 WL 1864298 (D. Or. Aug. 4, 2005) ................................................................. 33, 34

*Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 258 P.3d 1199 (2011) .............................. 33

*Superior Leasing, LLC v. Kaman Aerospace Corp.*, Civ. No. 04-cv-3099-CO, 2006 WL 3756950 (D. Or. Dec. 19, 2006) ................................................ 20

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992) ......................................................................................................... 20

*Technical Security Integration, Inc. v. S&S Elec. Contractors*, LLC, No. 3:13-cv-00636-MO, 2014 WL 1744988 (D. Or. Apr. 30, 2014) ....................................... 21

*Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013) .................................................. 21

*W. Med. Consultants, Inc. v. Johnson*, 80 F.3d 1331 (9th Cir. 1996) ........................................ 26

**Statutes**

A.R.S. § 44-401(4) ....................................................................................... 23

ORS 646.461 ............................................................................................. 34

ORS 646.461(2)(d)(B) ................................................................................... 28

ORS 646.461(4) ...................................................................................... 22, 23

ORS 646.473(1) .......................................................................................... 33

ORS 646.473(2)(a) ...................................................................................... 21

ORS 646.473(2)(b) ...................................................................................... 33

**Other Authorities**

*Black's Law Dictionary*, "Allegation" (9th ed. 2009) ................................................. 17

Gurnick & Grinblat, *When is it Lawful to Use Other People's Intellectual Property in Franchising*, 33 Franchise L.J. 481, n.39 (Spring, 2014) ....................................... 26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

Cal. C. Civ. P. § 2019.210 ................................................................... 25

Fed. R. Civ. P. 12(b)(6)................................................................... 9, 19

Fed. R. Civ. P. 8(a) ........................................................................ 9

Fed. R. Civ. P. 9(b) ....................................................................... 32

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## INTRODUCTION

This case involves the theft by Amdocs Management Limited and Amdocs, Inc. ("Amdocs" or "Defendants") of highly confidential and proprietary information belonging to Vesta Corporation ("Vesta" or "Plaintiff"). Plaintiff shared with Defendants the information in question under strict contractual limitations, and yet Defendants used the information improperly to create and sell a competing product. In this action, Plaintiff pursues claims for breach of contract, theft and fraud.

Defendants move to dismiss this action, primarily on the ground that they disagree with Vesta's allegations. In an effort to prove their disagreements, they offer extrinsic evidence (hearsay even) and draw inferences that Vesta disputes. This is improper. In evaluating a motion to dismiss, the court is to give Vesta, not Defendants, the benefit of all reasonable inferences. Defendants may controvert Vesta's allegations and offer additional facts, but not in a motion to dismiss. At this stage in the proceedings, all of Vesta's well-pled allegations are presumptively true. As such, all of Defendants' fact-based arguments are misplaced.

In their motion, Defendants also make a number of pre-emption arguments which, as discussed below, all fail as a matter of law.

## FACTUAL BACKGROUND

### I.    The parties.

Vesta is a worldwide leader in client-branded electronic payments solutions through a variety of e-commerce channels, including the Internet, mobile phones and industry-leading mobile commerce applications. Cmp., ¶ 9. [1] A primary focus of Vesta's business is providing e-

---

[1] Throughout this Response, record cites are as follows:
- Complaint, ECF No. 1-1, p. 4-30, is referenced as "Cmp., ¶ __";
- Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 25, is referenced as "Def. Mtn., p. __";
- Exhibits to the Declaration of Christina Costley related to Defendants' Request for Judicial Notice, ECF No. 28-1, are referenced as "Costley Decl., Exhibit __, p. __."

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

commerce solutions for the payment of prepaid phone services. *Id.* Vesta's primary customers are national and international mobile network operators ("MNO's"). *Id.* Vesta's solutions allow MNO's to receive and process payments for prepaid mobile phone and long distance charges domestically and internationally. *Id.*

Amdocs is a provider of billing platforms. Cmp., ¶ 10. Amdocs provides MNO's with billing platforms in both the prepaid and post-paid (contract) mobile phone markets. *Id.*

Billing platforms and payments solutions are distinct in the MNO's support services marketplace. Cmp., ¶ 11. A billing platform maintains account status and account information for the benefit of the MNO's and its customers. *Id.* By contrast, a payments solution facilitates an MNO's receipt of payments from the end-users of mobile devices, often by electronically-communicated credit or debit card information. *Id.* Until recently, Amdocs has never been a provider of payments solutions. *Id.* ¶ 12.

## II.    Beginning in 2006, the parties formed a strategic relationship.

Because MNO's require both a billing platform and a payments solution to serve their end-users, Vesta and Amdocs have over the years shared many of the same customers. Cmp., ¶ 13. Given their shared customer base, and the need for billing platforms and payments solutions to work in tandem, Vesta and Amdocs began collaborating in 2006. *Id.* Beginning in 2009, Amdocs and Vesta's relationship became more strategic in nature. Cmp., ¶ 14. In 2009, Amdocs and Vesta began working together to integrate their services and platforms to provide improved marketing opportunities for both parties and increased value to joint customers. *Id.* Since 2009, the parties have, on numerous occasions, worked together to jointly market their respective services to MNO's. *Id.* In addition, since 2010 Amdocs has twice approached Vesta

---

- Exhibits to the Declaration of Erick Haynie filed concurrently with this document in support of Vesta's Response to Defendants' Motion to Dismiss, are referenced as "Haynie Decl., Exhibit __, p. __."

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

about the possibility of Amdocs acquiring Vesta.  *Id.*  On each such occasion, Amdocs engaged in extensive due diligence.  *Id.*

### III.    Amdocs and Vesta execute broad NDA's.

In order to collaborate and integrate their services for joint customers, it was necessary for Vesta and Amdocs to share detailed technical information with each other.  Cmp., ¶ 15.  This was necessary to allow each platform to communicate with the other in a seamless and scalable fashion within the client's software and hardware environments.  *Id.*  Given the proprietary nature of each party's various routines, methodologies and processes, Amdocs and Vesta entered into a series of confidentiality and non-disclosure agreements (the "NDA's") to protect each party's proprietary information from use or disclosure by the other.  *Id.*

The first such NDA was signed on or about October 18, 2006.  Cmp., ¶ 16.  Additional NDA's were entered into on June 24, 2009, March 31, 2010, and July 3, 2012.  *Id.*  In addition to these NDA's, every time an Amdocs employee came to Vesta's Portland headquarters, and as a condition for entry, he or she personally signed, acknowledged and agreed that all of the information learned while inside the Vesta premises was confidential and proprietary to Vesta (the "Sign-In NDA's").  *Id.* ¶ 20.  A copy of the 2012 NDA is attached as Exhibit A to the Costley Declaration.  A copy of the 2009 is attached as Exhibit A to the Haynie Declaration.

The various NDA's served to protect two highly proprietary and exploitable categories of Vesta's confidential information: (1) information about the structure of Vesta's payments solution and (2) proprietary business information.  Cmp., ¶ 17.  Since October 18, 2006, there has always been at least one comprehensive NDA in effect between Vesta and Amdocs.  Cmp., ¶ 19.

### IV.    Vesta shares proprietary information with Amdocs.

#### A.    Collaboration Projects.

Since 2006, and pursuant to the terms of the various NDA's, Vesta has shared extensive proprietary information with Amdocs about Vesta's payments solutions.  Cmp., ¶ 22.  This

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

information has included detailed descriptions of the architecture and design of the solutions, including proprietary payment routines, methodologies and processes (the "Confidential Solution Methods"), as discussed further below. *Id.* The Confidential Solution Methods were shared via emails and other documents and numerous face-to-face meetings, often in connection with joint projects for specific MNO customers, such as MetroPCS. *Id.* ¶ 23.

B.    **Acquisition Courtships.**

Collaboration was not the only context in which Vesta shared confidential information with Amdocs. In 2010 and again in 2012, Amdocs asked Vesta to consider a complete acquisition by Amdocs. Cmp., ¶ 24. As part of these discussions, Amdocs made repeated trips to Vesta's Portland offices. *Id.* ¶ 25. Vesta shared proprietary information, including detailed financial, pricing and profitability data that had not been previously shared and which Vesta would not have shared with Amdocs other than in the context of an acquisition. *Id.*

Throughout the acquisition discussions, Amdocs led Vesta to believe that Amdocs' desire to purchase Vesta was sincere. Cmp., ¶ 26.

The acquisition discussions between the parties culminated in an invitation to Vesta to come to Amdocs' headquarters in Tel Aviv, Israel in early April 2010 for a face-to-face discussion at the highest levels of the companies. Cmp., ¶ 27. Vesta's Chief Executive Officer, Douglas Fieldhouse, accepted this invitation and travelled to Tel Aviv. *Id.* At the Tel Aviv meeting, Amdocs' then-Chief Executive Officer, Dov Baharav, suddenly announced that Amdocs, in fact, had no interest in acquiring Vesta. *Id.* This was a complete surprise to Mr. Fieldhouse, who had been led to believe that Amdocs was interested in purchasing Vesta and who had disclosed highly confidential information based on that belief. *Id.*

C.    **The MetroPCS Project.**

Although Amdocs' initial acquisition attempt stopped after the Tel Aviv meeting, many of Mr. Baharav's subordinates continued to encourage a strategic business relationship with Vesta. Cmp., ¶ 28. These subordinates apologized for Mr. Baharav's decision and, as described

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

below, negotiated a collaborative relationship with Vesta which involved continued sharing of Vesta's confidential and proprietary information. *Id.*

When Amdocs reached out to Vesta again, the discussions did not concern an acquisition effort. Cmp., ¶ 29. Rather, Amdocs was now proposing that the parties work together to jointly pitch a Vesta-based payments solution for MetroPCS. *Id.* MetroPCS is a large MNO, now affiliated with T-Mobile. *Id.* At this point in time (late April of 2010), MetroPCS had recently moved to an Amdocs billing platform, but MetroPCS's separate payments solution was old and poorly implemented. *Id.*

Amdocs stood to gain by Vesta's involvement with MetroPCS. Cmp., ¶ 30. As Amdocs was aware, Vesta's payments solution included proven reliability and optimization tools to stabilize and increase MetroPCS's customer base. *Id.* A more stabilized and increased customer base would, in turn, reduce customer churn and ultimately increase the revenues Amdocs would earn as well. *Id.* Amdocs was also aware at the time that, if it could develop its own payments solution similar to that of Vesta, it could achieve these same goals while also receiving the additional revenues associated with payment services. *Id.*

In response to Amdocs' inquiry, and not knowing that Amdocs intended to develop a competing payments solution, Vesta agreed to work cooperatively with Amdocs to present a joint proposal to MetroPCS. Cmp., ¶ 31. The joint proposal contemplated that Vesta would provide a payments solution that would be integrated into Amdocs' billing platform. *Id.* In connection with these discussions, the parties remained bound by the 2009 NDA. *Id.*

In connection with the MetroPCS pitch work, representatives of Amdocs and Vesta met on numerous occasions to prepare pitch materials and otherwise collaborate on the project. Cmp., ¶ 32. In those discussions, Vesta provided Amdocs with detailed information about its most updated Confidential Solution Methods and best practices. *Id.* These updated Confidential Solution Methods and best practices included, among other things, detailed architectural drawings and sequence flow diagrams that depicted, on a step-by-step basis, how Vesta would

5-    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

35302-0026/LEGAL123828122. 3

design and implement its payments solution for MetroPCS. *Id.* These Confidential Solution Methods also included detailed information about how Vesta implements its system of direct customer notifications to optimize payments and customer retention, including detailed information about Vesta's proprietary "Text-to-Pay" system. *Id.* The Confidential Solution Methods also included detailed information about Vesta's customer relationship management tools, and how those tools serve to optimize customer loyalty and MNO revenues. *Id.*

Vesta spent over 1,000 man-hours (i.e., the equivalent of one person working full time for over six-months) with Amdocs' business and technical representatives discussing and explaining these matters. Cmp., ¶ 33. Vesta would not have shared its confidential information with Amdocs had Vesta known that Amdocs would use it to build a competing payments solution. *Id.* ¶¶ 33, 52.

Ultimately, the joint pitch to MetroPCS by Vesta and Amdocs was not successful in adding Vesta's payments solution. Cmp. ¶ 35. As discussed further below, Vesta would learn later that, either during, or shortly after the failed joint pitch to MetroPCS in 2012, Amdocs successfully sold MetroPCS an Amdocs-only payments solution and billing platform. Amdocs' sale of a payments solution to MetroPCS completely excluded Vesta. *Id.* ¶ 36.

Amdocs' MetroPCS payments system was the first payments solution ever developed or launched by Amdocs. Cmp., ¶ 37. Having had no prior experience as a payments solution provider, Amdocs could not have built an MNO-class payments solution for MetroPCS in the short time frame that it did without using a significant portion of the confidential information provided by Vesta. *Id.*

### D.    The Second Acquisition Attempt.

In the spring of 2012, and in response to acquisition inquiries from other interested buyers, Vesta engaged an investment banking firm, Credit Suisse, to assist with a renewed possibility of a sale of Vesta. Cmp., ¶ 38. Amdocs learned of the possible sale of Vesta and promptly approached Credit Suisse about Amdocs participating in the bidding process. *Id.* ¶ 39.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Since the time of the previous acquisition discussions in 2010, Amdocs had terminated its relationship with Mr. Baharav, the Chief Executive Officer who had ended the 2010 acquisition discussion with Vesta. *Id.* Despite Vesta's expressed concern regarding Amdocs' sincerity, Amdocs assured Vesta that its renewed interest in acquiring Vesta was sincere. *Id.*

In reliance on Amdocs' assurances, Vesta (through Credit Suisse) again provided detailed confidential and proprietary information to Amdocs, both in writing and orally. Cmp., ¶ 40. This access included, among other things, providing Amdocs with direct access to Vesta's "virtual data room" for prospective purchasers where volumes of highly sensitive information were kept. *Id.* Vesta also provided Amdocs with a confidential information memorandum. *Id.*

Although the parties at all times remained bound by the 2009 NDA, as a precaution Vesta insisted that Amdocs execute a further NDA in connection with the Credit Suisse discussions. Cmp., ¶ 41. Amdocs agreed and executed a further NDA dated July 3, 2012. The 2012 NDA did not supersede the 2009 NDA, which remained in place (and remains in place today). Cmp., ¶ 66.

Amdocs did not acquire Vesta as a result of the Credit Suisse discussions or otherwise. Cmp., ¶ 43. On August 13, 2012, Amdocs made a written offer to purchase Vesta that was substantially under the fair market value of Vesta. *Id.* Vesta now believes that Amdocs was not sincere in its stated interest in 2012 to pursue an acquisition of Vesta. Cmp., ¶ 44. Amdocs made its "lowball" offer knowing it would be rejected by Vesta. *Id.* As alleged in the Complaint, Amdocs used the 2012 acquisition discussion as a pretext to steal updated proprietary business and technical information from Vesta. *Id.*

## V.     Theft of Confidential Information by Defendants.

Vesta alleges in this action that Amdocs stole two categories of proprietary and confidential information from Vesta. First, Amdocs stole Vesta's proprietary software technology to enable Amdocs to assemble a payments solution that would copy elements of Vesta's payments solution and best practices. Cmp., ¶ 44. Second, Amdocs stole proprietary

market and financial information from Vesta in order to inform its decisions about entering the market, what functionalities to include and how it would price its competing solution to undercut Vesta's position in the marketplace. *Id*. ¶¶ 44, 51, 57, 91.

### A.    Theft of Confidential Solution Methods by Amdocs.

In July 2013, Vesta learned for the first time from a third party that Amdocs had sold a payments solution to MetroPCS. Cmp., ¶ 45. Based on its current information and belief, Vesta alleges the sale occurred sometime in late 2012. *Id.* On information and belief, the Amdocs payments solution went live at MetroPCS in January 2014. *Id.*

Vesta has spent nearly 20 years, and over $60 million dollars, to develop its payments solution. Cmp., ¶ 46. By contrast, prior to the sale of its payments solution to MetroPCS, Amdocs had no experience in the payments solution marketplace. *Id.* ¶ 47. Yet Amdocs entered the marketplace for the first time by selling its purportedly home-grown payments solution to MetroPCS in 2012. *Id.* This occurred shortly after Vesta jointly pitched this same work alongside Amdocs and disclosed to Amdocs the inner-workings of its payments solution. *Id.*

As Vesta specifically alleges in its complaint, Amdocs used the ideas and information provided in confidence by Vesta to substantially reduce its time to market and to substantially lower its costs to bring a payments solution to market. Cmp., ¶ 48. But for its theft of the Confidential Solution Methods, Amdocs would not have been able to develop, sell and launch its own payments solution platform for MetroPCS on the timeline required by MetroPCS or at the price bargained for with MetroPCS. *Id.* Meanwhile, Amdocs is actively marketing its copycat payments solution to other potential buyers. *Id.* ¶ 50.

### B.    Theft of Confidential Risk Information by Amdocs.

In addition to Amdocs' theft of the Confidential Solution Methods, Amdocs also used proprietary information belonging to Vesta to decide what functionality to include in its payments solution and how to price its payments solution. Cmp., ¶ 51. This proprietary information included, among other things, detailed statistical information about: (a) the

8-    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

35302-0026/LEGAL123828122. 3

prevalence of fraudulent payment transactions in the prepaid mobile device marketplace; and (b) how Vesta uses fraud data to price its payments solutions (the "Confidential Risk Information"). *Id.* The Confidential Risk Information is highly proprietary and was developed by Vesta using payment behavior data, fraud detection algorithms and software technologies that Vesta has spent nearly 20 years developing. *Id.* The Confidential Risk Information would be highly valuable to any party attempting to market or sell payments solution services in the MNO marketplace. *Id.*

## LEGAL STANDARDS

This court has summarized the operative legal standard as follows:

> Under the Federal Rules of Civil Procedure, the plaintiff must present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed allegations of fact are not required, but the pleading must contain more than mere conjecture and elements of a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"). In order to survive a motion to dismiss, the complaint must be "plausible on its face." *Id.* at 570. . . .

> In conclusion, the [*Twombly*] Court wrote: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

*Silver v. Kulongoski*, No. 10-1241-AC, 2012 WL 4739273, at *2 (D. Or. Sept. 6, 2012).

## ARGUMENT

**I.    The Complaint asserts well-stated claims against Amdocs.**

Vesta's complaint states three counts against Amdocs:  breach of contract (Count I), misappropriation of trade secrets (Count II), and common law fraud (Count III).  Defendants' motion makes two basic arguments against each of these counts.  First, Amdocs argues that Vesta's allegations are legally insufficient under Rule 12(b)(6).  In so arguing, Amdocs' motion stretches beyond the proper parameters of Rule 12(b)(6), *Iqbal* and *Twombly* by relying on

9-    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
        DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

extrinsic evidence and self-serving factual inferences. Second, Amdocs argues that Vesta's tort claims are preempted by its contract claims. On that point, Amdocs is simply wrong on the law. In the discussion that follows, Vesta responds, by Count, to each of Amdocs' arguments.

### A. Contract Claim (Count I): the Complaint asserts a well-stated claim for breach of contract.

To state a claim for breach of contract, a plaintiff must plead: (1) the existence of a contract and its relevant terms, (2) the plaintiff's performance pursuant to the contract, (3) the defendants' breach of the contract, and (4) damages resulting from that breach. *E.g., Hill v. Bank of America, N.A.*, No. 3:3-13-CV-000745-KI, 2013 WL 45444260, at *2 (D. Or. Aug. 27, 2013); *Canzona v. Atanasio*, 988 N.Y.S.2d 637, 639, 118 A.D.3d 841 (N.Y.A.D. 2nd Dept. 2014).[2] Vesta has pled all four necessary elements to state a breach of the contracts: (1) Vesta specifically identifies the 2009 and 2012 NDA's and their relevant terms, Cmp., ¶¶ 18, 61, 65; (2) Vesta alleges that it has performed all of its required obligations under the NDA's, Cmp., ¶¶ 69, 76; (3) Vesta alleges that Defendants breached the contracts by using the confidential information shared pursuant to the NDA's for their own economic advantage, in violation of the key provisions of the contracts, Cmp., ¶¶ 68, 75; and (4) Vesta alleges that it has been damaged by the breach in the form of lost revenue on the MetroPCS account and other accounts, Cmp., ¶¶ 70, 77.

Defendants have challenged the sufficiency of Vesta's pleadings with regard to the first, third and fourth elements. The discussion that follows addresses those challenged elements.

---

[2] Defendants' argument applies Oregon law to the breach of contract claim despite its later argument in Section III.A of its memorandum relying on New York law. New York and Oregon law are not substantially different with regard to breach of contract claims, as seen from the above cited cases. In response to Defendants' arguments, Vesta relies properly on Oregon law in this response. Under either state's law, however, as seen by the elements listed here, Vesta sufficiently states a claim for breach of contract.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1.    **The Complaint clearly identifies the contracts and terms at issue in this case (Element 1, Counts 1 and 2).**

Vesta's Complaint specifically identifies the contracts at issue and the factual basis for their breach by Amdocs. *See* Cmp., ¶¶ 60-66, 68. Specifically:

- At ¶¶ 61-66, Vesta outlines the various NDA's at issue and their relevant terms;

- At ¶ 61, Vesta identifies specific language in the 2009 NDA that it alleges has been breached: "Amdocs agreed not to use, directly or indirectly, the proprietary information of Vesta or any derivative thereof in any form for purposes of the sale or licensing of any software system, or the provision of services to any third parties, or the development of any software systems, whether for itself or any third parties.";

- At ¶ 65, Vesta also identifies the 2012 NDA and the provision relevant to the alleged breach: "Amdocs agreed that the information shared by Vesta would be used solely for the purpose of evaluating a negotiated transaction between the parties and would not be used or disclosed for any other purpose.";[3]

- At ¶ 20, Vesta identifies the "Sign-In NDA's," their relevant terms and the consideration supporting their enforcement (i.e., entry into the building); and

- At ¶ 68, Vesta identifies the particulars of how Amdocs breached these contracts and provisions.

Defendants cite *Fleshman v. Wells Fargo Bank, N.A.*, for the proposition that Vesta's complaint is not sufficiently specific because it does not distinguish between the three contracts

---

[3] Defendants, in footnote 7, dispute the allegation that the 2012 NDA does not supersede the 2009 NDA. The Complaint alleges that the 2009 NDA remained in place even after the parties entered into the 2012 NDA. Cmp., ¶ 66. The language in the 2012 NDA stating that it supersedes prior agreements "relating to a Transaction involving the Company" could apply only to NDA's relating to potential *acquisitions* between the companies, and would therefore not supersede the 2009 NDA as to *collaboration* projects. *See* Costley Decl. Ex. A, pp. 5, 1 (definition of "Transaction"). Thus, the 2012 NDA does not foreclose claims arising under the 2009 NDA.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

in its breach of contract claim. __ F. Supp. 2d __, No. 3:13-cv-2062-HZ, 2014 WL 2772508, at *8 (D. Or. June17, 2014) (not yet published). Defendants' reliance on *Fleshman* is misplaced.

In *Fleshman*, the court responded to a motion to dismiss and granted plaintiff leave to replead a contract claim. In so ruling, this Court gave that plaintiff an instruction on how to improve her complaint by stating that plaintiff should amend to "specify which deed of trust(s) Defendant allegedly violated and which provision(s) were violated by what specific conduct." In that case, there was great confusion in the initial complaint regarding plaintiff's contention that the contracts at issue incorporated certain statutory schemes. *Id.* at *8.

In their motion, Defendants inflate this Court's case-specific instruction in *Fleshman* into a general pleading rule that would require all contract claims to specifically tie every factual basis for breach to a specific contractual provision in a specific contract. Such a rule would go far beyond what is required of a plaintiff in federal court, which is to provide "a short and plain statement of the claim." In any event, unlike in *Fleshman*, there is no confusion here over which of the parties' contracts are at issue. As outlined above, Vesta's allegations sufficiently reference the operative agreements, the relevant provisions and the specifications of breach.

### 2. The Complaint clearly alleges how Amdocs used its "Confidential Risk Information" (Element 2, Count 2).

The Complaint alleges that Defendants used the Confidential Risk Information to determine what functionalities to include in its own payments solution and how to price its payments solution. Cmp., ¶ 75. The Complaint further alleges that this conduct constitutes a breach of the 2009 NDA, the 2012 NDA and the Sign-In NDA's. *Id.*

Defendants are correct that Vesta is not alleging that Defendants stole their fraud detection algorithms. (Vesta never shared those algorithms with Defendants). However, Vesta did share with Defendants detailed proprietary information about the prevalence of fraud in the marketplace, and how that information is used to price Vesta's payments solution and related services. Cmp., ¶ 51. This proprietary information "was developed by Vesta using fraud

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

detection algorithms and software technologies that Vesta has spent nearly 20 years developing."
*Id.* In addition, the Complaint alleges that Amdocs has recently hired away a key Vesta sales executive with extensive knowledge of the Confidential Risk Information. Cmp., ¶¶ 53-56. This information, unique to Vesta and otherwise unknown to the public at large or others in the industry, gives Defendants deep insight into the economic metrics surrounding how Vesta prices its payments solution and ancillary services. Defendants have used this proprietary information to make a decision to enter the payments solution marketplace and, in addition, to set functionalities, price points and margins in a manner that unfairly undercuts Vesta's prices and competitive position. Cmp., ¶¶ 57-58, 75(a) & (b).

The NDA's specifically prohibit this conduct. Under the 2009 NDA, for example, Amdocs was prohibited from "us[ing] the Proprietary Information of the disclosing party for *any purpose* other than the Project." Haynie Decl., Ex. A, p. 2 (emphasis added); see also Cmp., ¶ 61. Furthermore, the 2012 NDA required that Amdocs "use the Evaluation Material *solely for the purpose* of evaluating a possible negotiated transaction between the Parties." Costley Decl., Ex. A, p. 2 (emphasis added); see also Cmp., ¶ 65. Given the allegations and the plain language of the contracts Vesta has placed at issue, there should be no question that Vesta states a valid claim for breach of contract against Amdocs.

In arguing that Vesta's contract claim is insufficiently pled, Defendants cite *Jamison v. Olin Corp.-Winchester Div.*, No. 03-1036-KI, 2005 WL 7213837, at *5-6 (D. Or. Oct. 4, 2005) adopted 2005 WL 2897036 (D. Or. Nov. 3, 2005). Relying on *Jamison*, Defendants argue that they were permitted to use Vesta's Confidential Risk Information to determine what functionality to include in its own solution because Vesta revealed that information to them during merger negotiations. Defendants' reliance on *Jamison* is misplaced.

In *Jamison*, two gun manufacturers entered into an agreement to explore the possibility of jointly producing a short magnum cartridge/firearm system. *Id.* at *3. In that process, plaintiff shared certain ballistics data with the defendant under an agreement that the information would

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

be used only for the purpose of "evaluation." *Id.* When the deal ultimately fell through, the defendant began working with a different partner to develop the same product. *Id.* During discovery, defendant admitted that certain information shared by the plaintiff was a "motivation" for him to conduct independent research into certain functionalities. *Id.* at *5. Because the plaintiff could not show that its shared information did anything other than "motivate" the defendant to do its own research and development, the court granted summary judgment in favor of the defendant. *Id.* at *6.

Here, the Complaint alleges that Defendants did much more with Vesta's proprietary information than rely on it for "motivation" to springboard a new business line from whole cloth. As discussed above, Vesta alleges that Defendants used Vesta's confidential information to determine what functionalities to include in their payments solution and to price that solution in a manner that would specifically undercut Vesta. The Complaint further alleges that Defendants used not just the general idea of a payments solution, but detailed business and financial information belonging to Vesta, to make its market-entry decision. Thus, the instant case goes well beyond the facts of *Jamison*, where information was used merely as an impetus for independent research. Furthermore, unlike in *Jamison*, the parties here executed strict NDA's far more protective than the limited agreements that existed between the gun manufacturers.

Defendants also appear to argue that the plain terms of the 2012 NDA provide a basis to dismiss this case. Specifically, Defendants seek dismissal based on language in the 2012 NDA that provides that either party may independently develop competing products. This argument is misguided and provides no basis to dismiss this suit at the pleadings stage (or any other). That provision states:

> Notwithstanding anything to the contrary contained or implied in this letter agreement, the terms of this letter agreement shall not be construed to limit a Party's right to develop independently or acquire products without use of the Evaluation Material. . . . Accordingly, nothing in the letter agreement will prohibit a Party or its Representatives from developing or having developed for

> itself or for any third parties products, concepts, systems or techniques that are similar to or compete with the products, concepts, systems or techniques contemplated by, or embodied in the Evaluation Material, *provided that such Party does not violate any of its obligations under this letter agreement in connection with such development.*

Costley Decl., Ex. A, p. 4 (emphasis added).

This provision simply states a truism:  that each party reserves the right to "independently" develop or acquire competing products.  Notably, the provision also goes on to say (as italicized) that such "independent" development may not otherwise violate the NDA.  Thus, this provision provides Defendants with no basis to dismiss any claim in this suit.  If Defendants believe the provision provides a defense, they are free to so plead.  But on a motion to dismiss, this provisions cannot be used to negate Vesta's well-pled allegation that Defendants did, in fact, use Vesta's confidential information in direct violation of the various NDA's between the parties.  *See also supra* footnote 3.

### 3.     Vesta clearly alleges how Amdocs used its "Confidential Solution Methods" (Element 2, Count 1).

There are four key allegations to Vesta's claim that Defendants breached the NDA's by using the Confidential Solution Methods:

> (1) pursuant to an NDA Defendants had access to detailed system architecture drawings, step-by-step flow processes, and proprietary payment routines, Cmp., ¶¶ 22, 32;
>
> (2) Defendants, who had not previously been in the business of payments solutions, developed a payments solution shortly after having access to Vesta's Confidential Solution Methods, Cmp., ¶ 36;
>
> (3) Defendants developed this product in a time period too short to have been the product of independent development, Cmp., ¶ 37; and
>
> (4) Defendants used the confidential information shared by Vesta to create this competing product, Cmp., ¶ 68(a).

15-  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

At the pleading stage, the court must accept each of these allegations as true and permit Vesta the benefit of all reasonable inferences. *Tranxition, Inc. v. Novell, Inc.*, No. 12-cv-1404-HZ, 2013 WL 2318846, at *1, 5 (D. Or. May 27, 2013). The allegations of the Complaint are sufficient to establish a claim that Defendants breached the NDA by using its Confidential Solution Methods.

In support of their arguments, Defendants rely on broad legal propositions from the *Iqbal* and *Twombly* line of cases—as well as an array of hearsay evidence—to conclude that it is "implausible" that Defendants could not have built their payments solution on their own on the timeline they did. However, in making these arguments, Defendants fail to point to a single factually similar case where the court has rejected a "time to market" allegation as conclusory or insufficient at the motion to dismiss stage.

To be sure, Vesta will be in a position to articulate its claims with even more specificity once discovery proceeds. Without discovery, however, Vesta lacks visibility to many of the particulars of Defendants' payments solution. It is precisely this reason that the motion to dismiss standard is more lenient than the summary judgment standard. *See, e.g.*, *Flow Valve, LLC v. Forum Energy Technologies, Inc.*, 13-cv-1261, 2014 WL 3567814, at *4 (W.D. Okla. July 18, 2014) (patent infringement case holding that a plaintiff is not required to make particularized reference to the infringing component "when the operation of the allegedly infringing system (or device) is not ascertainable without discovery.").

From the facts as alleged, however, the court can easily draw an inference that Defendants have used Vesta's Confidential Solution Methods. Unlike the bare legal conclusion rejected in *Twombly* that the defendants engaged in an unlawful agreement based only an allegation of otherwise lawful parallel business conduct, 550 U.S. at 556, the Complaint here alleges supporting facts that give rise to a reasonable (and indeed strong) inference that Defendants misappropriated the information protected by the NDA's. Defendants attack Vesta's claim that the time to market was too short as an *ipse dixit* allegation, but that is the nature of an

16- PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

35302-0026/LEGAL123828122. 3

allegation. *See Black's Law Dictionary*, "Allegation" (9th ed. 2009) ("The act of declaring something to be true."). Because Vesta's time to market allegation is an assertion of fact, not a bare legal conclusion, it is entitled to a presumption of truth.[4] *Twombly*, 550 U.S. at 556. Put another way, it is a sufficient allegation "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *See Id.* Thus, it is sufficient to move the case beyond the motion to dismiss stage.

Defendants' suggestions that there are other explanations for how they developed and launched a new product in a short time amount to nothing more than a factual defense they may choose to put forth at trial. For example, Defendants cite extrinsic hearsay evidence for the proposition that Defendants report annual revenues of "$3.35 billion and earnings of over $400 million," apparently asking the court to draw an inference that they can build anything on any time line because they have so much money. Defendants also reference extrinsic hearsay evidence of a 2006 acquisition of a purportedly comparable company to Vesta, Qpass, asking the Court to draw an inference that Defendants had already developed technology similar to that developed by Vesta. Vesta disputes these facts and inferences and objects to the "admission" of the proffered hearsay evidence—wealth does not prove innocence and, as Vesta will establish at trial, the Qpass technology is antiquated, unscalable and distinct. In any event, Defendants explanations and proffered inferences have no place in a motion to dismiss.

**4.    The Complaint properly and sufficiently alleges Vesta's damages (Element 4, Counts 1 and 2).**

As stated above, to state a claim for a breach of contract under either New York or Oregon law, a plaintiff must plead damages that resulted from the breach of contract. *E.g.*, *Canzona*, 988 N.Y.S.2d at 639. Here, Vesta alleges that it has suffered lost revenue of the MetroPCS account of no less than $300,000,000 in damages. Cmp., ¶¶ 70, 77. Specifically,

---

[4] This presumption is not only procedurally required, but is also substantively reasonable. Vesta has been in this specific line of business for over 20 years and, as such, is in a unique position to judge, and make allegations concerning, Amdocs' time to market.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Vesta alleges Defendants and Vesta made a joint pitch to MetroPCS to use Vesta's payments solution that was ultimately unsuccessful. Cmp., ¶ 35. This pitch was not successful because, in breach of their contract, Defendants used Vesta's confidential information to develop and sell a competing product and to determine a price point that would undercut Vesta. Cmp., ¶¶ 68, 75. These allegations state a claim for damages that is plausible on its face—*i.e.*, that Amdocs breached the contract by using protected information to create and price a competing product and thereby deprive Vesta of a sale to MetroPCS. *See* Cmp., ¶ 48.

Defendants assert that the $300,000,000 in damages from lost revenue on the MetroPCS account is too "speculative" to adequately state a damages claim on a motion to dismiss and is also refuted by the Complaint. Def. Mtn., p. 23. Yet in support of this argument Defendants fail to explain why the damages are allegedly speculative and misstate the allegations in the Complaint. Vesta only alleges one failed joint pitch to MetroPCS by Vesta and Amdocs, not two as Defendants claim, and that the one failed pitch was the result of Amdocs' breach of contract. *Compare* Def. Mtn., p. 25 (citing Cmp., ¶ 35 for the proposition that Vesta acknowledges that MetroPCS twice chose not to retain Vesta) and Cmp., ¶ 35 (referring to one joint pitch). Likewise, Defendants claim that ¶ 57 of the Complaint alleges that "MetroPCS asked Amdocs to create a solution for it at a lower price point," but this is not what the paragraph says. *See* Def. Mtn., p. 25. Rather it states that "Amdocs is marketing and selling its payments solution at a price set intentionally to undercut Vesta" and that it used Vesta's fraud data information, *i.e.* that Confidential Risk Information, to price its products. Cmp., ¶ 57; ¶ 51. These allegations support Vesta's claim that it lost the MetroPCS contract because of Defendants' breach; they in no manner refute such a claim.

Also, the cases relied on by Defendants do not support their argument. These cases only support the proposition that a plaintiff must allege that the breaching conduct resulted in legally recognizable damages, which Vesta has. For example, in *Market Trading, Inc. v. AT&T Mobility, LLC*, the court upheld dismissal of a breach of contract claim because the plaintiff

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

failed to plead, in any fashion, how they were financially harmed by the phone company refusing to credit "rollover minutes" to the plaintiff's new phone account. 388 F. App'x 707, 708-09 (9th Cir. July 20, 2012). In *Gibson v. Office of Attorney Gen.*, the court upheld the dismissal of the contract claim because the plaintiff only pled damages for emotional and physical distress, which are not recoverable on a California contract claim. 561 F.3d 920, 929 (9th Cir. 2009). Lastly, in *Stell v. Intel Corp.*, the plaintiff completely failed to plead any harm from the breach of contract. No. 10-90-AA, 2010 WL 4065597 (D. Or. Oct. 13, 2010). Unlike any of the cases cited by Defendants, Vesta has alleged that it lost revenue, a proper form of damages under contract law, due to the Defendants' breach of the contract.

Vesta adequately states a claim for damages from breach of contract, and accordingly, this claim should not be dismissed.

    **B.**    **Trade Secret Claim (Count II): the Complaint asserts a well-stated claim for trade secret misappropriation.**

To state a claim for misappropriation of a trade secret under Oregon law, a plaintiff must allege: "(1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation." *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004). Vesta has adequately pled each element of this claim. Defendants' various arguments to the contrary are unpersuasive because Defendants rely on cases that are either factually distinguishable, procedurally distinguishable, or based on law not applicable to this case. Notably, Defendants do not cite a single case brought under Oregon's trade secret law that was dismissed on a Rule 12(b)(6) motion.

    **1.**    **Oregon law applies to Vesta's claim for trade secret misappropriation.**

Vesta's claim for misappropriation of trade secrets is based in tort, not contract. Defendants provide no analysis regarding why New York law would govern Vesta's tort claims. Rather, they simply assume New York law applies and then apply a rule of law that is unique to

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

New York law to argue that Vesta's theft of trade secrets claim is improper because it is derivative of Vesta's breach of contract claim.  This argument fails to acknowledge Ninth Circuit precedent and the explicit terms of the choice of law provisions in the NDA's on which Defendants rely.

The choice-of-law language relied on by Defendants is:

> 2009 NDA: "This Agreement shall be governed by and construed under the laws of New York, without giving effect to such laws' provisions regarding conflict of laws."

> 2012 NDA: "This letter agreement . . . shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the conflict of laws principles thereof."

Haynie Decl., Ex. A, p. 4; Costley Decl., Ex. A, p. 5.  Both of these choice-of-law provisions are limited to questions regarding the contract.  Neither provision purports to govern all disputes arising between the parties.  In *Superior Leasing, LLC v. Kaman Aerospace Corp.*, Civ. No. 04-cv-3099-CO, 2006 WL 3756950, at *7 (D. Or. Dec. 19, 2006), the court interpreted nearly identical language:  "This Agreement shall be governed by and construed in accordance with the applicable laws in the State of Connecticut, exclusive of its choice of law rules."  Relying on the general rule that "claims arising in tort are not ordinarily controlled by a contractual choice of law provision, but are decided according to the law of the forum state," the court found that the choice-of-law provision in the contract did not affect the law applied to tort claims arising between the parties.  *Id.* at *8 (quoting *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (internal quotation marks omitted).  Thus, New York law does not apply to Vesta's theft of trade secret claim based on the contract language.  In the absence of any other argument, this Court should apply the law of the forum state—Oregon.

Defendants do not suggest that under Oregon's conflicts of law jurisprudence New York law should apply.  In fact, Defendants do not engage in any analysis to suggest that the Court should apply the law of any state other than Oregon to Vesta's tort claims.  To the contrary,

Defendants specifically acknowledge that they are not making that argument at this time although they may at some future juncture. (Def. Mtn., p. 17 n.11).  This constitutes a waiver of any argument regarding conflicts of law at this stage and any attempt by Defendants to raise it in reply would be improper.  *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("Because we do not consider issues raised for the first time in reply briefs, we deem this late-raised argument forfeited.").  For the reasons discussed above, the law of the forum state, Oregon, should apply.  Furthermore, applying Oregon is reasonable and appropriate not only as a matter of procedure at this stage, but because the center of gravity on Vesta's misappropriation claim is the State of Oregon.

### 2.    Vesta may plead both tort and contract theories simultaneously.

Plaintiff alleges a trade secret claim under Oregon statutory law.  Oregon, unlike New York, has adopted the Uniform Trade Secrets Act ("UTSA").  The UTSA expressly permits parallel claims for breach of contract and trade secret misappropriation.  *See* ORS 646.473(2)(a) (stating actions seeking "[c]ontractual remedies, whether or not based upon misappropriation of a trade secret" are not affected by the Act); *see also Technical Security Integration, Inc. v. S&S Elec. Contractors*, LLC, No. 3:13-cv-00636-MO, 2014 WL 1744988, at *2 (D. Or. Apr. 30, 2014) (allowing parallel claims for breach of contract and misappropriation of trade secrets brought under Oregon law to survive summary judgment).  Thus, under Oregon law, parallel claims for breach of contract and trade secret misappropriation is allowed.[5]

### 3.    Vesta adequately identifies its trade secrets.

Vesta has alleged that Defendants misappropriated two main categories of trade secrets: (1) Confidential Solution Methods, and (2) Confidential Risk Information.  The Complaint defines the Confidential Solution Methods as:

> detailed architectural drawings and sequence flow diagrams that
> depicted, on a step-by-step basis, how Vesta would design and

---

[5] Vesta does not concede that its contract and tort claims are parallel.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> implement its payments solution for MetroPCS. . . . [and] detailed information about how Vesta implements its system of direct customer notifications to optimize payments and customer retention, including detailed information about Vesta's proprietary "Text-to-Pay" system.

Cmp., ¶ 32.  The Complaint defines Confidential Risk information as including:

> detailed statistical information about: (a) the prevalence of fraudulent payment transactions in the prepaid mobile device marketplace; and (b) how Vesta uses fraud data to price its payments solutions.

Cmp., ¶ 51.  These definitions of the trade secrets are sufficient under Oregon law and generally under the law of states that have adopted the Uniform Trade Secrets Act.

> Under Oregon law, a trade secret is:

> Information, drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

> (a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

ORS 646.461(4).  Oregon courts have generally been reluctant to place too fine of a legal definition on what constitutes a trade secret, generally leaving the issue to the factfinder:

> A trade secret is an elusive concept to define and it requires an ad hoc evaluation of historical facts and surrounding circumstances. Such circumstances include: whether the information at issue is generally known within the relevant community; whether the information is more valuable by virtue of not being generally known; what efforts were made to keep it secret; and whether those efforts were reasonable.

*Seal Source, Inc. v. Calderon*, No.03:09-cv-00875-HU, 2011 WL 5041275, at *9 (D. Or. Sept. 29, 2011) (citing *Kaib Roving R. Ph. Agency, Inc. v. Smith*, 237 Or. App. 96, 239 P.3d 247 (2010)).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Contrary to Defendants' contentions, a plaintiff does not need to describe a trade secret with great specificity in a complaint to overcome a motion to dismiss. Nor does trade secret law only protect source code, algorithms, or proprietary software. *See* Def. Mtn., p. 19, 21.

In *Kaib*, for example, the plaintiff alleged a trade secret in in a variety of general processes, including "the process by which customers refer openings to plaintiff," "whether a store has technician assistance coverage or not," "whether lunch is paid for or not," "whether and how much drive time is paid for," "the billing rates paid by chains versus independent stores," and "the store's billing cycles." *Kaib*, 237 Or. App. at 99-100. The Oregon Court of Appeals reversed the trial court's grant of summary judgment based on affidavits submitted by the plaintiff stating that "some of the information was compiled and developed over a period of 20 years and that 'it would take an average business person at least one year to develop similar data,'" "that the information at issue was specialized, confidential, and compiled as the result of much expense and many years' labor," "that it was not generally known," and "that it had independent economic value." *Id.* at 104. The court found these affidavits created an issue of genuine fact sufficient to submit the case to a jury. *Id.*

Similarly, other district courts within the Ninth Circuit have found broad allegations of business methods and means sufficient to state a trade secret. In *BioD, LLC v. Amnio Technology, LLC*, the plaintiff alleged that it held trade secrets in "the means and methods" through which BioD created several of its products, the "manufacturing protocols for BioD products," the "development of internal Standard Operating Procedures ," and the "processes developed and used" to carry out various aspects of their business. No. 13-cv-1670-HRH, 2014 WL 268644, at *6-7 (D. Ariz. Jan. 24, 2014). The court, applying Arizona trade secret law,[6] found these broad allegations to be sufficient. The court began its analysis by recognizing that "[a] plaintiff is not expected to plead its trade secrets in detail because such disclosure would

---

[6] Arizona and Oregon define trade secrets nearly identically. *Compare* A.R.S. § 44-401(4) *with* ORS 646.461(4).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

amount to an effective surrender of the trade secret." *Id.* at *7 (internal citation omitted).  From there, the court reasoned "plaintiffs have alleged that defendants misappropriated their research and development, their internal Standard Operating Procedures, their product recovery processes, and their manufacturing, package, storage, and distribution processes." *Id.* at *8.  Ultimately, the court held, "[t]hese allegations are more than mere 'labels and conclusions' and any argument that some of this information might be public information is premature.  Plaintiffs' allegations are sufficient to suggest the existence of valid trade secrets." *Id.*

Similarly, in *Cinebase Software, Inc. v. Media Guar. Trust, Inc.*, a case erroneously relied on by Defendants, the plaintiff alleged that it possessed trade secrets in "its software design and specifications, in the technical know-how of its engineers, and in various marketing materials and strategies."  No. C98-1100 FMS, 1998 WL 661465, at *7 (N.D. Cal. Sept. 22, 1998).  The court found that these allegations sufficiently identify the trade secrets to overcome a motion to dismiss, reasoning "plaintiff has identified, albeit in fairly general terms, the categories of trade secrets it seeks to protect and the places where those trade secrets are found." *Cinebase*, at *8.  Defendants cite *Cinebase* in support of their arguments, but they appear to have not read the decision closely.  The portion of the *Cinebase* quoted by Defendants concerns a preliminary injunction discussion and standard irrelevant to the issues currently before this Court.

When compared to the allegations in the cases just discussed—*Kaib*, *BioD*, and *Cinebase*—it is clear that Vesta's allegations are sufficient under the pleading standard of Rule 8.  In *Kaib*, for example, the plaintiff alleged the existence of trade secrets in its general business practices (such as billing cycles, billing rates, and the process by which customers refer openings to plaintiff), namely because of the amount of man-hours required to hone such data and because it would take an average business person at least a year to compile such data.  237 Or. App. at 99-100.  The plaintiff in *BioD* also alleged general business practices as trade secrets, such as standard operating procedures and manufacturing protocols.  2014 WL 268644 at *6-7.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The plaintiff in *Cinebase* simply alleged general software design specifications and the technical know-how of its engineers.  1998 WL 661465 at*7.

Here, the Complaint specifically identifies the architectural drawings and sequence flow charts shared with Defendants during their joint pitch to MetroPCS and its detailed statistical data regarding pricing and instances of fraud in the market shared during the two potential acquisition attempts.  The Complaint also alleges that these trade secrets were the result of years of work, Cmp., ¶ 51, and that Amdocs could not bring a product to market in the time that Amdocs did without having access to such information, Cmp., ¶ 48.

Defendants also cite a number of other cases in support of their position that Vesta's trade secret allegations are insufficient.  These cases are inapposite here because they either apply inapplicable law, arise under a different procedural posture, or are plainly factually distinguishable.

First, Defendants improperly rely on a string of cases based on California law[7] regarding the standards for identifying a trade secret.  This reliance is misplaced.  There is no argument (and no basis for arguing) that California law should apply.  And notably, California trade secret law is unique in that imposes a heightened pleading requirement beyond that which Oregon law requires (and that of most states that have adopted the UTSA).  *See* Cal. C. Civ. P. § 2019.210 ("before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.")  California's heightened pleading standard has been specifically rejected by district courts in states outside of California. *See BioD*, 2014 WL 268644 at *7 (refusing to apply California's pleading standard in Arizona);

---

[7] Defendants improperly rely on the following cases applying California law: *S. Cal. Inst. Of Law v. TCS Educ. Sys.*, No. 10-cv-8026-PSG, 2011 WL 1296602 (C.D. Cal. April 5, 2011); *Silvaco Data Sys. V. Intel. Corp.*, 184 Cal. App. 4th 210 (2010); and *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Cobalt Flux, Inc. v. Positive Gaming AS*, No. 2:08-cv-185-TS, 2008 WL 4534182, at *3 (D. Utah Oct. 6, 2008) (refusing to apply California's pleading standard in Utah).

Similarly, New York case law is not applicable because New York is one of two states that has not adopted the UTSA and, as a result, its trade secret standards are different from those of Oregon and the UTSA.[8] *See* Gurnick & Grinblat, *When is it Lawful to Use Other People's Intellectual Property in Franchising*, 33 Franchise L.J. 481, n.39 (Spring, 2014). This misplaced reliance on inapplicable law leads Defendants to cite cases for points that are directly contradicted by Oregon trade secret law. For example, Defendants cite *Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62, 67 (App. Div. 2003) for the proposition that "'Pricing data and market strategies' do not constitute trade secrets." Def. Mtn., p. 21. This statement of law is wrong in Oregon. *IKON Office Solutions, Inc. v. American Office Products, Inc.*, specifically states "pricing information and marketing strategy can be a trade secret." 178 F. Supp. 2d 1154, 1169-70 (D. Or. 2003) (internal citation omitted).

Second, many of the cases cited by Defendants arose in different procedural contexts with different and more rigorous adjudicative standards. For example, cases dismissed at summary judgment are inapplicable because the burden on the plaintiff at summary judgment is higher than it is at a motion to dismiss stage.[9] *See Cobalt Flux,* 2008 WL 4534182, at *3 (refusing to rely on certain cases because they were decided at the summary judgment stage rather than the motion to dismiss stage); *Cinebase*, 1998 WL 661465, *8 (refusing to rely on a case because it was decided at the summary judgment stage and therefore the burden on plaintiff

---

[8] Defendants improperly rely on the following cases applying New York law: *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-cv-5023-CBA, 2010 WL 889799 (E.D.N.Y. Mar. 8, 2010); and *Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62 (App. Div. 2003).

[9] Defendants improperly reply on the following cases decided under a summary judgment standard or after a bench trial: *Jamison*, 2005 WL 72113837 (summary judgment); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002) (summary judgment); and *W. Med. Consultants, Inc. v. Johnson*, 80 F.3d 1331 (9th Cir. 1996) (bench trial).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

was "much higher."). Defendants also rely on cases resolving discovery disputes[10] and motions for preliminary injunctions[11] which also apply different standards. These cases are all inapposite.

Setting aside all the cases that apply different law or arise in a different procedural posture, defendants are left with only four cases on which to rely in support of their contention that the trade secret claim should be dismissed (*Medafor*, *Lycoming*, *American Registry* and *Jacobs*). Each of these cases is readily distinguishable.

In *Medafor, Inc. v. Starch Med. Inc.*, the plaintiff merely asserted a trade secret in "business methodologies, formulas, devices, and compilations of information, including suppliers and customers . . ." No. 09-cv-0441-PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009). In *Lycoming Engines v. Superior Air Parts, Inc.*, the plaintiff alleged a trade secret in "drawings, process, specifications, procurement specifications and other technical knowhow." *Lycoming Engines v. Superior Air Parts, Inc.*, No. 13-cv-1162-L, 2014 WL 1976757, at *8 (N.D. Tx. May 15, 2014). Vesta has identified its trade secrets with far great specificity than the plaintiffs in *Medafor* and *Lycoming*. Specifically, Vesta has alleged a trade secret in the architecture and design of its payments solutions, proprietary payment routines, sequence flow diagrams, methods to optimize customer retention, data regarding fraud instances in the market and Vesta's methods for using the fraud data to price services. Cmp., ¶¶ 21, 32, 51. In the remaining two cases, *American Registry, LLC v. Hanaw* and *Jacobs Vehicle Sys. Inc. v. Yang*, the plaintiffs threw in the kitchen sink when alleging trade secrets rather than specifically defining them. No. 13-cv-352-FtM, 2013 WL 4833058, at *3 (M.D. Fla. Dec. 5, 2013) (alleging customer lists, system architecture, research, development, and information

---

[10] Defendants improperly reply on *Compuware Corp. v. Health Care Serv. Corp.*, No. 01-cv-0873, 2002 WL 485710 (N.D. Ill. April 1, 2002) which addresses a discovery dispute.

[11] Defendants improperly rely on *Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62 (App. Div. 2003) because it addresses an issue at the preliminary injunction stage and not the motion to dismiss stage.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

relating to products offered by the plaintiff among other general categories of information); No.
1:12-cv-00181, 2013 WL 4833058, at*9 (M.D.N.C. Sept. 10, 2013) (alleging customer
specifications, formulas, devices, and compilations of information among other general
categories of information).  Again, these sweeping allegations stand in sharp contrast to the
limited and defined trade secrets claimed by Vesta.

> **4.      The Complaint fairly and sufficiently alleges misappropriation by
> Defendants.**

The Complaint alleges that Vesta shared its Confidential Solution Methods and
Confidential Risk Information with Defendants while both parties were operating under specific
NDA's.  Cmp., ¶¶ 33, 41, 42.  Vesta also alleges that after this information was disclosed,
Defendants brought to market a similar product in a timeframe that would not have been possible
without using the information and at price point that was set using Vesta's information.  Cmp.,
¶ 48.  That conduct constitutes misappropriation under Oregon law.

ORS 646.461(2)(d)(B) defines "misappropriation" as "[d]isclosure or use of a trade secret
of another without express or implied consent by a person, who at the time of disclosure or use,
knew or had reason to know that the knowledge of the trade secret was acquired under
circumstances giving rise to a duty to maintain its secrecy or limit its use."  Vesta's allegation
meet both prongs—the information was acquired under various NDA's, giving rise to a duty to
maintain its secrecy, and was then used by Defendants to bring a product to market in an
expedited timeframe, determine what functionalities it should include (and exclude), and to price
the product.

At this time, Vesta is not required to articulate with any further granularity any specific
source code, or other specific component of technology, that Defendants misappropriated.  As
courts have acknowledged, the details of trade secret litigation are often clarified outside of the
public pleadings, and through the process of discovery and expert reports.  *See, e.g., Flow Valve*,
2014 WL 3567814, at *4; *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 771 (N.D. Ill.

2009). The cases relied on by Defendants to support their position to the contrary are misquoted and misapplied.

For example, Defendants cite *MedioStream, Inc. v. Microsoft Corp.* as dismissing a claim because "MedioStream has failed to identify which, if any, of the trade secrets described in the complaints were encompassed in the products and technology . . . ." 896 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012). By ending the quote where they do, Defendants erroneously imply that MedioStream was required to identify where in the defendant's technology the trade secrets were being used. That is not so. The whole quote reads "While such material may contain trade secrets, MedioStream has failed to identify which, if any, of the trade secrets described in the complaint were encompassed in the 'products and technology' obtained by Apple in 2001.'" *Id.* The court continued its analysis by stating, "the MedioStream-Apple NDA convers only 'MPEG2 bit-streams compressed using Medio Systems MVision MPEG2 encoder,'" which were not included in the trade secrets alleged by the plaintiff. *Id.* Thus, when read in full and in context, the case stands for proposition that a plaintiff must identify which of its alleged trade secrets were shared under the protections of an NDA when (unlike here) there is a question about whether certain shared information was protected. Here, Vesta alleges that all of the trade secrets alleged were shared while the parties were acting pursuant to one or more NDA's.

The other case relied on by Defendants, *Giftango, LLC v. Rosenberg*, is not applicable because it is a preliminary injunction case in which the court was weighing the evidence in the record to determine the ultimate likelihood of success on the merits. 925 F. Supp. 2d 1128, 1139 (D. Or. 2013). It would be improper for this Court to consider the ultimate likelihood of success on the merits in the present posture. *Twombly*, 550 U.S. at 556 ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

In short, Vesta identifies trade secrets that were shared with Defendants pursuant to an NDA, and sufficiently alleges that Defendants have now used those trade secrets to design and price their competing product.

### 5.    The Complaint fairly and sufficiently alleges secrecy.

Defendants argue that Vesta has failed to sufficiently plead that it has maintained secrecy in its trade secrets as required by the law.  Defendants' argument focuses on only certain aspects of Vesta's trade secrets that are known to the general public—the process for making mobile payments, customer notification of a payment, and the text-to-pay option.  But this ignores the actual allegations in the Complaint,  Cmp., ¶¶ 32, 46, and 51, and misstates the standard for secrecy in Oregon.

Under Oregon law, "information that consists entirely of publicly available material that is reorganized and repackaged can, at times, qualify as a 'trade secret'.  When someone expends considerable time, effort, and expense to compile information, that information in its compiled form can, in some circumstances, meet the statutory definition of a trade secret.'"  *Seal Source, Inc.* 2011 WL 5041275, at *9 (D. Or. Sept. 29, 2011) (citing *Kaib's Roving R. Ph. Agency, Inc. v. Smith*, 237 Or. App. 96, 239 P.3d 247 (2010)).  The holding *of Seal Source* is supported by Ninth Circuit precedent generally interpreting various states' trade secrets laws.  In *Clark v. Bunker*, the court, applying Nevada trade secrets law, held that the plaintiff, a mortician, held a trade secret encompassing "all of the forms, information, and techniques for formulating, promoting, financing, and selling contracts for 'prepaid' funeral services in the continuous operation of the mortician's business."  453 F.2d 1006, 1009 (1972).  Although a competitor could, in time, ferret out all of the necessary details to eventually copy the plaintiff's business model, the court reasoned that "whether such a degree of secrecy existed in a particular case is a question of fact.  It is not negated because the defendant by an expenditure of effort might have collected the same information from sources available to the public."  *Id.* at 1010.  In *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996), the court, interpreting Washington's trade secret

30- PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

35302-0026/LEGAL123828122. 3

act, echoed *Clark* in stating that "[t]rade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets." The court took care to distinguish *Clark* in upholding the district court's ruling for the defendant by finding that "there is no indication that the 'defendant by an expenditure of effort might have collected the same information from sources available to the public;' rather, the alleged secrets here at issue were found to be so obvious that very little effort would be required to 'discover' them." *Id.*

Applying this law to Vesta's trade secrets, it is clear that Vesta has adequately pled that it maintained secrecy. In their argument, Defendants mischaracterize Vesta's trade secrets as the "process for making mobile payments, customer notification of a payment, or a text-to-pay option" and therefore imply that all of the claimed trade secrets could easily be identified through reverse engineering. Def. Mtn., p. 23. But a review of the Complaint demonstrates that Vesta's trade secrets involve both customer-facing and behind-the-scenes components of its payments solution. Vesta alleges that as part of its Confidential Solution Methods, it developed a compilation of systems architecture, optimization strategies for customer retention, and step-by-step processes for processing payments. Cmp., ¶ 32. Not all of these processes are seen by a customer. For example, a customer would not know what systems need to communicate to complete the payment process, or how the complex computer system that manages those communications might be optimized to leverage customer retention and, ultimately, revenue. Vesta also alleged that it has spent 20 years collecting data on instances of fraud and characteristics of fraudulent transactions that they use to enhance their product and to price specific products for customers, which it has gone to great lengths to keep confidential. Cmp., ¶ 51. These are not customer-facing applications that can be easily replicated.

The cases relied on by Defendants are only applicable if one accepts Defendant's vastly oversimplified mischaracterization of Vesta's trade secrets. *Hudson Hotels Corp. v. Choice Hotels Int'l*, involved a claimed trade secret in the idea of small-sized but upscale hotel rooms. 995 F.2d 1173, 1174 (2d Cir. 1993). The court overturned a jury verdict for the plaintiff because

31- PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

"[o]nce Hudson marketed the Mircotel concept . . . it could not constitute a protectable trade secret because, from that time forward, it could not be used secretly and continuously in its business." *Frink Am., Inc. v. Champion Road Mach. Ltd.*, involved engineering and production drawings for a snow plow which plaintiff admitted was capable of full reverse engineering once the product was put to the market. 48 F. Supp. 2d 198, 201, 206-08 (N.D.N.Y. 1997). Neither of these components—obviousness or the ability to be reverse engineered—are present in the facts alleged by Vesta. As discussed above, Vesta alleges that it possesses a trade secret in a compilation of factors, only some of which are customer-facing. Vesta also alleges that it took extensive steps to protect this information including entering into NDA's before sharing any information with Defendants and requiring all individuals who enter its facilities in Oregon to sign NDA's before they are even allowed to walk through the door. (Cmp., ¶ 83).

In short, Vesta has adequately alleged all aspects of a claim for misappropriation of trade secrets. It has alleged that it possessed trade secrets in its Confidential Solution Methods and Confidential Risk Information, that it generally safeguarded this information from public knowledge, that it shared these trade secrets with Defendants only pursuant to NDA's, and that Defendants misappropriated this information to create and price its new product.

## C.      Fraud Claim (Count III):  Vesta's Claim for Fraud is Proper.

Defendants argue that Vesta's fraud claim is precluded either by the trade secrets claim or the contract claim. These arguments are not persuasive. The Court should allow Vesta's fraud claim to stand for two reasons.[12]

First, Defendants overstate the effect that Oregon's Trade Secret Act has on tort claims such as fraud. Oregon's Trade Secrets Act "supersede[s] conflicting tort, restitution or other law

---

[12] Defendants also make a third argument that Vesta has not sufficiently pled the "who, what, where, when and how" of the fraud. While the Complaint does allege numerous particulars with respect to the fraud claim, *e.g.*, ¶¶ 102-110, the complaint was drafted for filing in the Washington County Circuit Court and without reference to Fed. R. Civ. P. 9(b). Vesta is willing to amend its complaint to comply with the heightened pleading requirements for common law fraud required by the federal rules of procedure.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

of Oregon providing civil remedies for misappropriation of a trade secret." ORS 646.473(1). This provision, however, "shall not affect: . . . Other civil remedies that are not based upon misappropriation of a trade secret." ORS 646.473(2)(b). By its plain language, the statute allows tort claims that are "not based upon misappropriation" and that are not in "conflict" with the Trade Secrets Act.

Defendants rely exclusively on *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204 (D. Or. 2004) to support their position that the fraud claim is preempted here, but do not acknowledge the other decisions of this Court that disagree with the reasoning of *Acrymed* and cut against their position. As discussed in *Acrymed*, at the time of the decision Oregon courts had not addressed "the extent to which the Act preempts civil remedies." 317 F. Supp. 2d at 1217. Instead, the court in *Acrymed* looked to other states that had "extended the preemptive effect of the same language to claims that are based on the same operative facts as a claim for trade secret misappropriation under the Act," concluding that "[w]here the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Act." *Id.*

Other, subsequent decisions of this Court have rejected this reasoning and allowed plaintiffs to proceed with claims under the Oregon Trade Secrets Act and tort claims, which involved the alleged misappropriation of trade secrets. *See Diversified Marine, Inc. v. JT Marine, Inc.*, Civ. No. 10-664-JE, 2010 WL 3210848, at *4 (D. Or. Aug. 10, 2010); *Stockamp & Assoc., Inc. v. Accretive Health*, cv 04-1443-BR, 2005 WL 1864298, at *2 (D. Or. Aug. 4, 2005). In those cases, the court has examined whether the "essential element of the tort is the defendant's improper motivation rather than the actual misappropriation." *Stockamp*, 2005 WL 1864298, at *2.

Here, the essential element of a fraud claim is a material, false misrepresentation. *See, e.g., Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 351-352, 258 P.3d 1199 (2011) (listing the five elements of a fraud claim, which all revolve around the misrepresentation and reliance).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

While OTSA prohibits acquiring trade secrets by "improper means," which includes a "misrepresentation," the heart of Vesta's trade secrets claim is misappropriation through use of a trade secret that was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  ORS 646.461.  As in *Diversified* and *Stockamp*, the motive for the misrepresentation was to obtain the trade secrets, but the actual misappropriation is not an element of the fraud claim.

Second, Defendants claim that the contract claim bars the fraud claim, again citing only one case, *Hill Meat Company v. Sioux-Preme Packing Co.*, Civ. No. 08-1062-SU, 2009 WL 1346606 (D. Or. May 13, 2009).  That case, however, is not as broad as they contend.  While a promise to perform an act in the future and a breach of that promise may be actionable through breach of contract, it is also actionable as fraud if "there is either a present intent not to perform or reckless disregard regarding the ability to perform."  *Id.* at \*6.  In *Hill Meat*, the court allowed the plaintiff leave to amend to "identify the specific content of [defendant's] actionable statements and allege facts that show [defendant] made those statements either with a present intent not to perform or a reckless disregarding regarding the ability to perform."  *Id.* at \*7. Here, the Complaint pleads facts to show that the Defendants made the misrepresentations about their interest in acquiring Vesta without an intent to actually acquire Vesta.  (*See* Cmp., ¶¶ 27, 44, 107.)  *Hill Meat* also does not stand for the other proposition Defendants cite it for, that the damage from the fraud has to be a separate harm from a breach of contract claim or the fraud claim cannot stand.  Def. Mtn., p. 25.  Rather, in *Hill Meat*, the plaintiff failed to allege damages that accrued from the misrepresentation.  The damage alleged has to be the result of the reliance on the misrepresentation.  This is precisely what Vesta alleges in its Complaint.  Vesta relied on Defendants' misrepresentations of a potential acquisition, and shared its trade secrets with them in reliance on these misrepresentations.

Lastly, Defendants appear to argue that a provision of the 2012 NDA squarely forecloses any reasonable reliance on their misrepresentations.  This argument both misstates the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

35302-0026/LEGAL123828122. 3

misrepresentations and misleadingly quotes from the 2012 NDA. In any event, whether the 2012 NDA provides a sufficient "disclaimer" of Amdocs' true intentions, when weighed against its misrepresentations concerning its intent to acquire Vesta, gives rise to a fact issue for the jury and is not a basis to dismiss this action.

## CONCLUSION

Defendants' motion is unsupported by facts or law. The Complaint plainly sets forth factual allegations that Defendants, acting under false pretenses, obtained access to some of Vesta's most confidential and proprietary business and technology information. Defendants then improperly used that information to create and sell a competing product that unfairly undercuts Vesta's prices. These allegations establish valid claims in both contract and tort. Defendants' reliance on inapplicable and miscited cases, hearsay documents and self-serving inferences are all misplaced and provide no basis for dismissal.

For the foregoing reasons, Amdocs' motion should be denied. Alternatively, should the Court find that any component of Vesta's claim requires clarification or additional detail, Vesta requests leave to amend.


DATED: October 16, 2014                s/ Stephen F. English
                                       **Stephen F. English**, OSB No. 730843
                                       SEnglish@perkinscoie.com
                                       **Erick J. Haynie**, OSB No. 982482
                                       EHaynie@perkinscoie.com
                                       **Joanna T. Perini-Abbott**, OSB No. 141394
                                       JPeriniAbbott@perkinscoie.com
                                       **Perkins Coie LLP**
                                       1201 Third Avenue, Suite 4900
                                       Seattle, WA 98101-3099
                                       Telephone: 206.359.8000
                                       Facsimile: 206.359.9000

                                       Attorneys for Plaintiff