IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VESTA CORPORATION,

                    Plaintiff,

    v.

AMDOCS MANAGEMENT
LIMITED et al.,

                   Defendants.

No. 3:14-cv-1142-HZ

OPINION & ORDER

Erick J. Haynie
Joanna T. Perini-Abbott (*pro hac vice*)
Stephen F. English
PERKINS COIE, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209

      Attorneys for Plaintiff

Bruce G. Vanyo (*pro hac vice*)
Yonaton M. Rosenzweig
KATEEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

1 – OPINION & ORDER

Joshua L. Ross
Robert A. Shlachter
Timothy S. DeJong
STOLL STOLL BERNE LOKTING & SHLACHTER, PC
209 S.W. Oak Street, Fifth Floor
Portland, OR 97204

     Attorneys for Defendants

HERNÁNDEZ, District Judge:

     Plaintiff Vesta Corporation brings this action against Defendants Amdocs Management Limited and Amdocs, Inc. (collectively, "Defendants"), alleging breach of contract, trade secret misappropriation, and fraud. Defendants move to dismiss the Complaint for failure to state a claim. For the reasons that follow, Defendants' motion to dismiss is denied in part and granted in part.

## BACKGROUND

     Plaintiff is an electronic payments and fraud prevention technology company. Compl. Intro. Defendants are telephone billing software and services companies. Id. Both Plaintiff and Defendants provide services to national and international mobile phone network operators (MNOs). Compl. ¶ 9. Payment solutions, such as those provided by Plaintiff; and billing platforms, such as those provided by Defendants; "are distinct in the MNO support services marketplace." Id. ¶ 11. Payment solutions facilitate an MNO's receipt of payments from the end-users of mobile devices, whereas billing platforms maintain account status and account information for the MNO and its customers. Id. Until recently, Defendants were not providers of payment solutions. Id. ¶ 12. Because MNOs generally require both payment solutions and billing platforms to serve their customers, Plaintiff and Defendants collaborated with one another to

integrate their services and platforms in order to appeal to their shared customer base. Id. ¶¶ 13, 14.

Plaintiff alleges that, beginning in 2006, Plaintiff and Defendants entered into a series of Non-Disclosure/Confidentiality Agreements (NDAs) to preserve confidentiality while sharing information in their effort to develop joint services and products. Id. ¶¶ 13-15. Plaintiff further alleges that, in 2009, the parties executed an NDA to capture their understanding that "all of their meetings and discussions after June 24, 2009, would remain confidential and not be used or disclosed by the other party[.]" Id. ¶ 19. In addition, every time one of Defendants' employees visited Plaintiff's headquarters, the employee had to sign-in and agree that all of the information acquired while on the premises was confidential. Id. ¶ 20 (describing the "Sign-In NDAs"). On July 3, 2012, the parties executed an additional NDA. Id. ¶ 41.

Plaintiff alleges that from 2010 to 2012, the parties worked together to market their products to Metro PCS, a large MNO, and explored the possibility of Defendants acquiring Plaintiff. Id. ¶¶ 24, 28-35. In 2010, Defendants' employees made several trips to Plaintiff's headquarters and Plaintiff's Chief Executive Officer traveled to Tel Aviv to meet with Defendants' Chief Executive Officer. Id. ¶¶ 25-27. In 2012, the parties worked through a third-party investment banking firm to explore the possibility of acquisition. Id. ¶ 38.

In the course of jointly collaborating on marketing and the possibility of acquisition, Plaintiff shared information with Defendants including "proprietary information about [Plaintiff's] payment solution" and "confidential and proprietary business and financial information." Id. ¶ 17. Specifically, Plaintiff alleges that Defendants obtained two types of confidential information from Plaintiff: 1) "Solutions Methods," which include "detailed information about the architecture and design of the solutions, including proprietary payment

routines, methodologies and processes"; and 2) "Risk Information," which includes detailed statistical information about "the prevalence of fraudulent payment transactions in the prepaid mobile device market place" and how Plaintiff "uses fraud data to price its payment solutions." Id. ¶¶ 22, 51.

Additional facts relevant to particular claims are discussed below.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Am. Family Ass'n, Inc. v. City & Cnty. of S.F., 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" Id. at 679.

## DISCUSSION

Plaintiff brings three claims: (1) breach of contract, (2) trade secret misappropriation, and (3) fraud. Defendants move to dismiss the claims. The Court denies Defendants' motion to dismiss the breach of contract and trade secret misappropriation claims, but grants the motion to dismiss the fraud claim.

## I.    Incorporation by Reference

The doctrine of incorporation by reference allows "a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." In re Silicon Graphics, Inc. Sec. Litig. (SGI), 183 F.3d 970, 986 (9th Cir. 1999) (internal quotation omitted). Because these documents have essentially been adopted as part of the complaint, the Court may consider them without converting the motion to dismiss into a motion for summary judgment. United States v. Richie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

The parties ask the Court to incorporate by reference nondisclosure agreements (NDAs). Costley Decl. Ex. A, J; Haynie Decl. Ex. A. Defendants submit the 2012 NDA and a page of a

2006 NDA, and Plaintiff submits the 2009 NDA. Because the NDAs are referred to extensively in the Complaint and are the basis of Plaintiff's breach of contract claim, the Court incorporates them by reference.

## II.    Judicial Notice

Courts may take judicial notice of information "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice of SEC filings, press releases, or contents of a website, when they are "matters of public record." See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see also Nw. Pipe Co. v. RLI Ins. Co., No. 3:09-CV-01126-BR, 2014 WL 1406595, at *5 (D. Or. Apr. 10, 2014). When a court takes judicial notice of a public record, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." Klein v. Freedom Strategic Partners, LLC, 595 F. Supp. 2d 1152, 1157 (D. Nev. 2009) (quoting Lee, 250 F.3d at 690)

Defendants submit four forms reflecting Defendants' financial statements, downloaded from the SEC's publicly available electronic data gathering and retrieval database; two of Defendants' press releases; and two printouts from Plaintiff's website. Costley Decl. Exs. B-I. The Court takes judicial notice of the SEC filings, press releases, and website pages, not for the truth of the facts recited therein but for the existence of the records.

///

III.    **Breach of Contract**

A.  Choice of Law

As an initial matter, New York law governs the substantive merits of Plaintiff's breach of

contract claim. The 2009 and 2012 NDAs contain the following clauses:

> 2009 NDA: "This Agreement shall be governed by and construed under the laws of New
> York, without giving effect to such laws' provisions regarding conflict of laws.

> 2012 NDA: "This letter agreement . . . shall be governed by, and construed in accordance
> with, the laws of the State of New York without giving effect to the conflict of laws
> principles thereof.

This language makes clear that the parties intended for New York law to apply in a dispute

regarding an alleged breach of these NDAs. Both Oregon and New York law follow the principle

that the parties may choose the law that is to govern their contracts. See, e.g., Young v. Mobil

Oil Corp., 85 Or. App. 64, 68 (1987); A.S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369 (1957).

Furthermore, there is no material difference between the elements of a breach of contract claim

in Oregon and New York.[1]

In their briefing[2], Defendants erroneously assert that Oregon law applies because they are

challenging Plaintiff's ability to state a claim, which they characterize as an issue of "pleading

standards" instead of a substantive legal issue. See Defs.' Mot. Dismiss 16 ("Although the

pleading standards are governed by Oregon law, under the terms of the NDAs the substantive

legal issues regarding the breach of contract claim are governed by New York law."). However,

any challenge to Plaintiff's ability to state a claim and satisfy "pleading standards" is governed

---

[1] Because the elements for breach of contract are the same in Oregon and New York, in the next
section of this Opinion the Court discusses Oregon cases that both parties rely on in support of
their arguments, even though New York law governs this claim.
[2] Defendants did not raise this point at oral argument and instead focused their argument on the
federal pleading standards established in cases such as Iqbal, 556 U.S. 662, and Twombly, 550
U.S. 544.

by federal law, which controls procedural matters in diversity cases. See 2 Moore's Federal Practice § 9.03[1][e] (3d ed.2003); see also Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639, 647 (E.D.N.Y. 2012).

    B.  12(b)(6) Motion Regarding the Breach of Contract Claim

    At issue in this case are NDAs signed by the parties in 2009 and 2012. In addition, Plaintiff alleges that Defendants' employees signed NDAs every time they visited Plaintiff's headquarters, binding them to keep confidential any information they learned from Plaintiff. Compl. ¶ 20. Plaintiff alleges that Defendants breached the terms of the parties' NDAs by using confidential information to develop and sell a competing product and enter the payments marketplace; using confidential information about Plaintiff to gain a competitive advantage; using or disclosing information learned while at Plaintiff's facility; and hiring away key employees. Id. ¶ 68. Plaintiff contends that Defendants breached their agreement under the NDAs "not to make competitive use of any of [Plaintiff's] proprietary information." Id. ¶ 60.

    To state a claim for breach of contract under New York law, a plaintiff must allege: "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages." JP Morgan Chase v. J.H. Elec. of New York, Inc., 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010). Defendants argue that Plaintiff does not identify the governing contracts, the relevant contractual provisions Defendants allegedly violated, or facts that support finding breach or damages. In short, Defendants challenge Plaintiff's ability to allege each of the required elements of a breach of contract claim except for the element of plaintiff's full performance and lack of breach.

    First, Defendants argue that Plaintiff's claims lack specificity because Plaintiff has not identified the governing contracts or the relevant contractual terms at issue. The Complaint

alleges that Defendants breached "the 2009 NDA and/or the 2012 NDA" and the "Sign-In

NDAs." Compl. ¶¶ 68(a), 75(a). Defendants argue that the use of "and/or" makes it difficult to

determine what contract provisions Defendants allegedly breached.

In Fleshman v. Wells Fargo Bank, N.A., No. 3:13-cv-2062-HZ, 2014 WL 2772508, at *8

(D. Or. June 17, 2014), this Court dismissed a plaintiffs' third amended complaint when three

separate deeds of trust were at issue and plaintiffs failed to "specify which deeds of trust

defendant allegedly violated and which provision(s) were violated by what specific conduct."

The Court instructed the plaintiffs to specify which deeds of trust were at issue because the Court

could not find support for the plaintiffs' arguments that the contract provisions at issue

incorporated certain statutory schemes. Id.

Unlike Fleshman, here Plaintiff specifies which contracts Defendants allegedly violated.

According to Plaintiff, Defendants breached the 2009, 2012, and Sign-In NDAs. Compl. ¶¶ 68,

75. Although the NDAs were not attached to the Complaint, the parties have now submitted the

2009 and 2012 NDAs and they are incorporated by reference, as discussed above.[3] Defendants

correctly point out that the Complaint states that Defendants breached the "2009 and/or 2012

NDA" while Plaintiff's Memorandum in Opposition states that Defendants breached the "2009

and 2012 NDAs." However, the difference between "and/or" and "and" is not significant enough

to suggest, as Defendants do, that they do not know which contracts are at issue in the case.

Furthermore, Plaintiff identifies specific provisions in the NDAs at issue that it alleges

Defendants breached. Id. ¶¶ 61, 65. The Complaint, as written, sufficiently identifies the NDAs

and the specific provisions that it alleges Defendants violated.

---

[3] A complaint should not be dismissed for failure to include specific provisions of the contract
when the district court is directed to those provisions in the briefing of a motion to dismiss. See
Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010).

Defendants next argue that Plaintiff fails to allege Defendants breached the NDAs.

Plaintiff presents the following facts in support of its allegation of breach stemming from

Defendants' use of Plaintiff's "Solution Methods" information. By late April of 2010, Metro

PCS was using Defendants' billing platform, but its payment solution was "old and poorly

implemented." Compl. ¶ 29. Defendants reached out to Plaintiff and proposed that the parties

work together to pitch a payment solution proposal to Metro PCS. Id. ¶ 29. The arrangement

would be mutually beneficial because Plaintiff's payment solution would help stabilize and

increase Metro PCS' customer base, which would in turn generate more income for Defendants.

Id. ¶ 30. Plaintiff's and Defendants' representatives met on numerous occasions to "prepare pitch

materials and otherwise collaborate on the project." Id. ¶ 32. Plaintiff also provided Defendants

with "detailed information about its most updated Confidential Solution Methods and best

practices," which included, among other things, "detailed architectural drawings and sequence

flow diagrams that depicted, on a step-by-step basis, how [Plaintiff] would design and implement

its payment solution for Metro PCS." Id. According to Plaintiff, these "Solution Methods" and

best practices "form the basis of virtually all of [Plaintiff's] revenue from existing customers."

Id. ¶ 34.

Plaintiff alleges that Defendants used Plaintiff's proprietary information to create a

"copycat payments solution" which Defendants sold to Metro PCS shortly after the parties' joint

pitch to Metro PCS failed. Id.¶ ¶ 36, 45. According to Plaintiff, Defendants had never launched a

payment solution and could not have done so on the timeline required or at the price bargained

for by Metro PCS, without using "some significant portion of the confidential information

provided to Defendants by Plaintiff in connection with the Metro PCS collaboration project." Id.

¶ 36.

Defendants argue that Plaintiff fails to provide facts to support the allegation that Defendants used information from Plaintiff in building its payment platform. According to Defendants, the payment solution they developed had different components and functionality than Plaintiff's and there are no facts explaining why Plaintiff's draft drawings and diagrams would have been useful to Defendants. Defendants contend that Plaintiff fails to allege that Defendants' system mirrors Plaintiff's in any way and that Plaintiff instead rests on a conclusory assertion that Defendants must have used Plaintiff's "Solution Methods," given the timeline and cost of the Metro PCS project. Defendants argue that conclusory allegations should not be presumed to be true, especially when an "obvious alternative explanation exists." See Twombly, 550 U.S. at 566. Here, the explanation would be that Defendants developed the platform using their own resources.

Although the Court is obliged to presume that all factual allegations in Plaintiff's Complaint are true, the Court does not "have to accept every allegation in the complaint as true in considering its sufficiency; rather . . . [the Court] will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citations omitted). However, while a complaint must contain enough factual matter to "raise a right to relief above the speculative level," the Court "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 555-556.

Therefore, the issue is whether Plaintiff's allegation that Defendants used proprietary information, the "Solutions Methods," to create a "copycat" product follows from Plaintiff's description of the facts and whether Plaintiff alleges sufficient facts to establish a plausible entitlement to relief. The Court finds that it does.

Taking all of Plaintiff's factual allegations as true, Defendants had never produced a payment platform; they collaborated extensively with Plaintiff and gained access to detailed information providing guidance on creating a solution for a specific client, Metro PCS; and then Defendants created their own product for Metro PCS on a tight timeline without including Plaintiff in the deal. While Plaintiff is unable at this point to provide extensive detail about Defendants' payment platform, Plaintiff pleads enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Moss v. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Plaintiff also alleges that Defendants breached the NDAs by their use of "Risk Information." Compl. ¶ 75. The "Risk Information" encompasses data about the prevalence of fraud in the marketplace, is used by Plaintiff to price its payment solutions, and was developed by Plaintiff "using fraud detection algorithms and software technologies that [Plaintiff] has spent nearly 20 years developing." Id. ¶ 51. Plaintiff does not allege that Defendants replicated Plaintiff's fraud functionality, but rather, that Defendants relied on Plaintiff's data when deciding not to add fraud functionality to Defendants' payment solution and when deciding how to price its payment solution platform in a way that would undercut Plaintiff. Id. ¶ 75.

Both parties cite Jamison v. Olin Corp-Winchester Div., No. 03-1036-KI, 2005 WL 7213837, at *5-6 (D. Or. Oct 4, 2005) report and recommendation adopted, No. 03-1036-KI, 2005 WL 2897036 (D. Or. Nov. 3, 2005), in support of their argument. In Jamison, two gun manufacturers entered into an agreement to explore the possibility of jointly producing a short magnum cartridge/firearm system. Id. at *3. The parties signed a confidentiality agreement, stating that the plaintiff would provide certain ammunition and ballistics data, and the defendant would only use the data for evaluation purposes. Id. Ultimately, the parties terminated the

12 – OPINION & ORDER

project. Id. Shortly thereafter, the defendant began working with another manufacturer on "the exact same concept." Id. at *5. The court held that the plaintiff had consented to sharing the data with the defendant when they explored forming a joint venture and that the data had merely "motivated" the defendant to pursue further exploration of the same concept.

Similarly here, Defendants consulted the "Risk Information," which it had obtained from Plaintiff during their joint exploration of a collaborative project that ultimately fell through, in order to determine how to structure and form their new business line. However, unlike Jamison, Plaintiff's allegation is not that Defendants were merely motivated by Plaintiff's data to develop a payment solution platform, but rather, that Defendants relied on Plaintiff's data to decide whether to enter the market and to determine a price point that would undercut Plaintiff's price point. Furthermore, Plaintiff alleges that the terms of the NDAs were stricter than the limited agreements that existed between the gun manufacturers. Plaintiff alleges that Defendants took proprietary information and used it in their decision to enter the payments solution marketplace in a way that undercut Plaintiff, in breach of the NDAs. Taking all of the alleged facts as true, Plaintiff sufficiently states a claim.

Finally, Defendants argue that the damages Plaintiff pleads are too speculative. According to Defendants, Plaintiff cannot show that Defendants played any role in Metro PCS' decision not to contract with Plaintiff. However, Defendants' argument is essentially one that goes to the question of breach and should be determined by the factfinder. Plaintiff alleges that it has "lost revenue on the Metro PCS account, which amounts to no less than $300,000,000 in damages" and has suffered "other damages as a direct result of Defendants' breach of contract, including lost revenue on other accounts." Compl. ¶ 70. Taking all of Plaintiff's factual allegations as true, Plaintiff sufficiently claims damages.

13 – OPINION & ORDER

**IV.    Trade Secret Misappropriation**

   A.  Choice of Law

Unlike the breach of contract claim, Plaintiff's trade secret misappropriation claim is not governed by the NDAs' choice of law provisions. The Ninth Circuit has stated that, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision" but "are decided according to the law of the forum state." Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401, 407 (9th Cir. 1992) (citing Consolidated Data Terminals v. Applied Digital Data Systems, 708 F.2d 385, 390 n. 3 (9th Cir.1983). Therefore, Plaintiff's claim is evaluated under Oregon law.

Several cases from the Ninth Circuit and this district support the conclusion that Oregon law governs this claim. In Consolidated Data Terminals, the Ninth Circuit affirmed the district court's decision to apply New York law to the contract issues in the case because the parties had included a choice of law provision in their contract reflecting their intent for New York law to govern. 708 F.2d at 390, n.3. However, the court stated that "other issues in this case, which involve tort law and the law of punitive damages, are not controlled by the contract choice of law provision." Id. The court determined that the district court correctly concluded that, under the forum law, "California law should govern all non-contractual issues in this case." Id.

Similarly, in Sutter, the parties' agreement stated: "Except as otherwise required by applicable law, this Agreement shall be governed by the law of the State of California." 971 F.2d at 406. The Ninth Circuit found that this provision did not apply to the defendant's tort claims. Instead, the court applied Arizona law, the law of the forum state.

In a case from this district, the court ruled on a choice of law provision similar to the one here. See Superior Leasing, LLC v. Kaman Aerospace Corp., No. CIV. 04-3099-CO, 2006 WL

3756950 (D. Or. Dec. 19, 2006) <u>report and recommendation adopted,</u> No. CIV.04 3099 CO,

2007 WL 593580 (D. Or. Feb. 21, 2007). The choice of law provision stated: "This Agreement

shall be governed by and construed in accordance with the applicable laws in the State of

Connecticut." <u>Id.</u> at *8. The court considered whether this provision governed plaintiff's tort

claims and found that it did not. <u>Id.</u> The court construed the provision as "a narrow choice-of-law

provision which does not apply to related non-contract claims." <u>Id.</u> at *9. Therefore, the court

declined to apply the provision to plaintiff's tort claims and instead applied the choice of law

rules from the forum state, Oregon, in order to determine which state's substantive law applied.

<u>Id.</u>

Defendants argue that New York law applies to the trade secret misappropriation claim

because the 2009 and 2012 NDAs provided that the agreements would be "governed by and

construed" in accordance with New York law and the contract here is a predicate for the tort

claim. Defendants cite <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.,</u> 858 F.2d 509, 514 (9th Cir.

1988) and its progeny in support of its argument. However, <u>Manetti-Farrow</u> is a case about a

forum selection clause, not a choice of law provision. While Defendants stated at oral argument

that there are numerous cases that apply <u>Manetti</u> to choice of law provisions, Defendants do not

cite any such cases in their briefing nor has this Court found any from the Ninth Circuit Court of

Appeals or this district. [4]

If the parties intended for New York law to apply to all disputes between the parties, they

could have made that clear in the NDAs by including a broader choice of law provision. As

---

[4] Defendants also cite <u>Don Rasmussen Co. v. BMW of N. Am., LLC,</u> No. 02-1504-KI, 2003 WL
26076846, at *10 (D. Or. Nov. 20, 2003), which states that <u>Manetti-Farrow</u> held that choice of
law provisions in contracts apply equally to contract and tort claims. However, <u>Don Rasmussen
Co.</u> misstates the language of <u>Manetti-Farrow</u>. <u>Manetti-Farrow</u> only addresses a forum selection
clause, not a choice of law provision. <u>See Manetti-Farrow</u>, 858 F.2d at 514.

written, the narrow provision only establishes that New York law will govern interpretation and

construction of the contract, not that it controls non-contractual claims that are related to the

contract. See Med. Instrument Dev. Labs. v. Alcon Labs., No. C 05-1138 MJJ, 2005 WL

1926673, at *3 (N.D. Cal. Aug. 10, 2005) (contract provision that the "Agreement is to be

performed in accordance with the laws of the State of Texas and shall be construed and enforced

with the laws of the State of Texas" did not explicitly control non-contractual claims related to

the contract); see also Thompson & Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d

429, 432-33 (5th Cir. 1996) (tort claims were not governed by a choice of law clause providing

that the chosen law applied to the "agreement and its enforcement"). Therefore, the Court finds

that because Plaintiff's trade secret misappropriation claim is a non-contractual "claim[] arising

in tort," it is not contemplated by the NDAs' choice of law provisions and should be "decided

according to the law of the forum state." See Sutter, 971 F.2d 407.

On choice of law issues, Oregon applies a two-step analysis. Frosty v. Textron, Inc., 891

F. Supp. 551, 556 (D. Or. 1995):

> Under Oregon law, the court must determine whether there is an actual conflict of law on
> the disputed issue; if not, Oregon law applies. Next, the court must determine whether
> both states have substantial interests in having their laws applied. If not, there is no
> choice of law issue, and the court applies the law of the one state with substantial
> interests. If both states have substantial interests, the Oregon Supreme Court has adopted
> the "most significant relationship" approach of the Restatement (Second) Conflicts of
> Law [sic].

Rice v. United Parcel Serv. Gen. Servs. Co., 43 F.Supp.2d 1134, 1140-41 (D. Or. 1999) (internal

citations omitted).

Defendants do not put forth any argument, apart from their assertion that the choice of

law provision applies, that the law from a state other than Oregon should apply to Plaintiff's

trade secret misappropriation claim. Rather, they state in a footnote in their Motion to Dismiss

that "the law of the state of the alleged misappropriation should govern [and] [t]he Complaint

does not definitively identify that location . . . If [Plaintiff] is given leave to amend, and

identifies the location of the alleged misappropriation, [Defendants] may assert that the law of

that state or nation governs." Defs.' Mot. to Dismiss 17 n. 11. At this point, therefore, there is no

disputed issue as to the fact that Oregon law applies to Plaintiff's claim. Therefore, the Court

conducts the analysis of the sufficiency of the allegations based on Oregon law.

    B.  12(b)(6) Motion Regarding the Trade Secret Misappropriation Claim

    To establish a claim under Oregon's Uniform Trade Secrets Act, ORS 646.460, a plaintiff

must demonstrate that (1) the subject of the claim qualifies as a statutory trade secret; (2) the

plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the

conduct of the defendants constitutes statutory misappropriation. W. Med. Consultants, Inc. v.

Johnson, 835 F. Supp. 554, 557 (D. Or. 1993) aff'd, 80 F.3d 1331 (9th Cir. 1996).

      1.   Identification of a Trade Secret

    Defendants argue that Plaintiff fails to clearly identify any specific information it shared

with Defendants that qualifies for trade secret protection. Under Oregon law, a trade secret is:

> Information, including a drawing, cost data, customer list, formula, pattern, compilation,
> program, device, method, technique or process that:
> (a) Derives independent economic value, actual or potential, from not being generally
> known to the public or to other persons who can obtain economic value from its
> disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to
> maintain its secrecy.

ORS 646.461(4). Plaintiff identifies two types of trade secrets it alleges that Defendants

misappropriated: (1) Method Solutions, and (2) Risk Information. The Complaint defines

Method Solutions as :

Detailed architectural drawings and sequence flow diagrams that depicted, on a step-by-step basis, how [Plaintiff] would design and implement its payment solution for Metro PCS . . . [and] detailed information about how [Plaintiff] implements its system of direct customer notifications to optimize payments and customer retention, including detailed information about [Plaintiff's] proprietary "Text-to-Pay" system . . . [and] detailed information about [Plaintiff's] customer relationship management tools, and how those tools serve to optimize customer loyalty and MNO revenues.

Compl. ¶ 32. The Complaint defines Risk Information as including:

Detailed statistical information about: (a) the prevalence of fraudulent payment transactions in the prepaid mobile device marketplace; and (b) how Vesta uses fraud data to price its payment solutions.

Compl. ¶ 51.

Plaintiff must "identify its alleged trade secrets with sufficient particularity so that defendants are able to determine whether the information in question was in fact secret and whether it was in fact not readily ascertainable through appropriate means." Jamison, 2005 WL 7213837 at *9. The parties disagree about whether Plaintiff provided sufficient particularity in the Complaint.

The following cases provide examples of descriptions of trade secrets in a complaint that courts have held to be too broad, meaningless, or not specific enough to enable the defendant to understand what it has been accused of stealing:

- "business methodologies, formulas, devices, and compilations of information, including suppliers and customers...." Medafor, Inc. v. Starch Med. Inc., No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1-2 (D. Minn. July 16, 2009)

- "customer lists, customer identity, customer contact information and confidential information about each customer's business, purchase and credit information, sales and operation procedures, software, system architecture, financial data, sales and marketing strategies and data, lists, statistics, programs, research, development, employee, personnel and contractor data, information and records, and information relating to products offered by [Plaintiff]." Am. Registry, LLC v. Hanaw, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013) (noting that this list is "nearly identical to the list of confidential and proprietary information contained in the parties' agreement")

18 – OPINION & ORDER

- "drawings, process, specifications, procurement specification and other technical knowhow . . . " <u>Lycoming Engines v. Superior Air Parts, Inc.</u>, No. 3:13-CV-1162-L, 2014 WL 1976757, at *8 (N.D. Tex. May 15, 2014)

In contrast, these descriptions were held to be sufficient to survive a motion to dismiss:

- "When someone expends considerable time, effort, and expense to compile information, that information in its compiled form can, in some circumstances, meet the statutory definition of a trade secret." <u>Kaib's Roving R.PH. Agency, Inc. v. Smith</u>, 237 Or. App. 96, 102-03, 239 P.3d 247, 250 (2010) (citing <u>IKON Office Solutions v. American Office</u>, 178 F.Supp.2d 1154, 1167 (D.Or.2001), <u>aff'd</u>, 61 Fed. App'x. 378 (9th Cir.2003) (list of customers can constitute a trade secret when considerable time and money has been expended to compile it).

- "[plaintiff's] software design and specifications . . . technical know-how of its engineers, and [] various marketing materials and strategies." <u>Cinebase Software, Inc. v. Media Guar. Trust, Inc.</u>, No. C98-1100 FMS, 1998 WL 661465, at *7 (N.D. Cal. Sept. 22, 1998) (explaining that while plaintiff would have to identify its alleged trade secrets with much greater particularity in order to prevail on the claim, these "categories of trade secrets it seeks to protect and the places where those secrets are found" were sufficient to survive a motion to dismiss).

In addition, the Oregon Court of Appeals has offered the following guidance in defining a trade secret:

"[A] trade secret is one of the most elusive and difficult concepts in the law to define. In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances. For this reason, the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side."

<u>Kaib's Roving R.PH. Agency, Inc.</u>, 237 Or. App. at 103-04 (citing <u>Learning Curve Toys, Inc. v. PlayWood Toys, Inc.</u>, 342 F.3d 714, 723 (7th Cir. 2003) (internal quotation marks and citation omitted).

Here, Plaintiff's Complaint defines its trade secrets with sufficient particularity to survive a motion to dismiss. For example, Plaintiff does not just allege the existence of "drawings" as in <u>Lycoming</u>, but rather alleges "detailed architectural drawings and . . . diagrams that depicted on a step-by-step basis" how Plaintiff would design and implement its payment solution for Metro

19 – OPINION & ORDER

PCS—the exact same client to whom Defendants provided a payment solution. Rather than the Medafor descriptions of "business methodologies, formulas, [and] devices," Plaintiff's Complaint describes specific systems such as "direct customer notification" systems and Plaintiff's "Text-to-Pay" system. Furthermore, Plaintiff's Risk Information description of "detailed statistical information" about the "prevalence of fraudulent payment transactions in the prepaid mobile device marketplace" that Plaintiff had compiled over 20 years reflects the kind of compilation that courts in this district and in Oregon state court have recognized as a trade secret. See Kaib's Roving R.PH Agency, Inc., 237 Or. App. at 102-03; Ikon Office Solutions, 178 F. Supp. 2d at 1167.

     2.   Secrecy

Defendants argue that Plaintiff fails to allege that it maintained the secrecy of the information because the methods and processes that Defendants allegedly misappropriated were disclosed publicly to consumers when they subscribed to mobile network operators. Defendants' argument rests on its assertion that Plaintiff's descriptions of trade secrets are "alleged at such a high level of abstraction" that the "secrets" would be seen by consumers when they make payments—such as "process for making mobile payments," "customer notification of a payment," or "Text-to Pay option."

Defendants' argument is unavailing because the actual allegations in the Complaint are far more specific than the "high level of abstraction" than Defendants argue exists. As discussed above, Plaintiff sufficiently alleges a statutory trade secret. Furthermore, Plaintiff alleges that it developed its "Risk Information" over nearly twenty years and the information is "highly proprietary." Compl. ¶ 51. The Complaint also alleges that Plaintiff attempted to maintain the secrecy of its compiled data and "Risk Information" through the use of the NDAs; maintaining

locked facilities, computers, and networks; requiring Sign-in NDAs; and enforcing access and badge policies. Id. ¶ 52, 83, 93. Plaintiff sufficiently alleges that it maintained the secrecy of its information by safeguarding the information from public knowledge.

       3.  Misappropriation

ORS 646.461(2)(d)(b) defines "misappropriation" as "[d]isclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]"

Defendants' arguments that Plaintiff fails to state a misappropriation claim are similar to their arguments regarding Plaintiff's ability to allege a contractual breach. As to the "Solution Methods" information, Defendants argue that Plaintiff fails to identify any aspect or feature of Defendants' payment solutions platform that uses information from Plaintiff. As to the "Risk Information," Defendants argue that the claim fails because Plaintiff does not allege that Defendants used Plaintiff's fraud data when creating Defendants' payment solution. Defendants' arguments rely on the assumption that Plaintiff fails to identify a statutory trade secret in the first place. In addition, Defendants argue that Plaintiff consented to Defendants' use of the fraud data in determining whether to enter the payments market through the consensual disclosure of the information during merger discussions.

At issue is what amount of particularity is required for Plaintiff to plead misappropriation. As with the breach of contract claim, Defendants' basic argument is that Plaintiff does not meet the Iqbal and Twombly pleading standards and, therefore, the Complaint must be dismissed.

21 – OPINION & ORDER

Taking Plaintiff's alleged facts as true, Plaintiff alleges that Defendants acquired trade secrets pursuant to various NDAs, giving rise to a duty to maintain their secrecy, and then Defendants used the secrets to bring a product to market in an expedited timeframe, to determine what functionalities it should include (and exclude), and to price the product. Plaintiff alleges that "[b]ut for its theft of the Confidential Solutions Methods, [Defendants] would not have been able to develop, sell and launch its own payment solution platform for Metro PCS on the timeline required by Metro PCS or at the price bargained for with Metro PCS" and that Plaintiff "would have never provided confidential information to [Defendants] had it known that [Defendants were] going to use this information to develop a competing product[.]" Compl. ¶¶ 48-49.

Neither party cites any case from the Ninth Circuit or from Oregon state court to support their argument.[5] Defendants point to a case from the Northern District of California, where a court dismissed a trade secret misappropriation claim because the plaintiff failed to identify which, if any, of the trade secrets described in the complaint were encompassed in the "products and technology" that the defendant obtained. MedioStream, Inc. v. Microsoft Corp., 869 F. Supp. 2d 1095 (N.D. Cal. 2012). The issue was whether defendants would have reasonable notice of the issues in the case and scope of discovery. The complaint described a range of trade secret material, most of which was alleged to be misappropriated by other defendants in the case; therefore, it was unclear which trade secrets were allegedly misappropriated by one particular defendant. Here, all of the trade secrets described in Plaintiff's Complaint are alleged to have

---

[5] Defendants attempt to use a case from this Court, Giftango, LLC v. Rosenberg, 925 Supp. 2d 1128 (D. Or. 2013), to support their argument. However, in that case the Court denied a motion for preliminary injunction because the plaintiff could not show that any disclosure or use of confidential information had taken place or would take place. Id. at 1138-39. Here, Plaintiff specifically alleges that Defendants used confidential information to develop their own payment solutions product.

been misappropriated by the named Defendants. Therefore, the court's concern in <u>MedioStream</u> about reasonable notice to the defendants is inapplicable here.

Plaintiff cites two cases for the proposition that "details of trade secret litigation are often clarified outside of the public pleadings, and through the process of discovery and expert reports. Pl.'s Opp. 28 (citing <u>Flow Valve, LLC v. Forum Energy Techs., Inc.,</u> No. CIV-13-1261-F, 2014 WL 3567814, at *4 (W.D. Okla. July 18, 2014); <u>Motorola, Inc. v. Lemko Corp.</u>, 609 F. Supp.2d 760, 771 (N.D. Ill. 2009)). Neither of these cases changes the fundamental rule that the Complaint must sufficiently state a claim to survive a motion to dismiss. However, they do support this Court's finding that, while Plaintiff may need to provide more support for its allegations in order to ultimately prevail, the Complaint as written sufficiently alleges misappropriation.

**V.     Fraud**

In briefing and at oral argument, Plaintiff conceded that its fraud claim is not pled with the particularity required by Federal Rule of Civil Procedure 9(b). <u>See</u> <u>Lopez v. Fed. Hous. Fin. Agency</u>, 578 F. App'x 701 (9th Cir. 2014) ("In order to successfully plead claims grounded in fraud, a complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.") (citations omitted). Therefore, the Court grants Defendant's motion to dismiss the fraud claim but allows Plaintiff leave to amend.[6]

///

---

[6] Because Plaintiff asks for leave to amend the fraud claim in accordance with the specificity requirements of Rule 9(b), the Court declines to address Defendants' additional argument that the Court should dismiss Plaintiff's fraud claim because it is duplicative of and barred by the trade secret and contract claims.

**CONCLUSION**

Defendants' motion to dismiss [25] is granted in part and denied in part. Defendants'

request for judicial notice [26] is granted. If Plaintiff chooses to amend the complaint, it must be

done within 14 days of the date below.

IT IS SO ORDERED.

Dated this ____13____ day of ____Jan____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge