IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VESTA CORPORATION,

                    Plaintiff,

     v.

AMDOCS MANAGEMENT
LIMITED and AMDOCS, INC.,

                Defendants.

No. 3:14-cv-1142-HZ

OPINION & ORDER

Erick J. Haynie
Daniel T. Keese
Joanna T. Perini-Abbott
Stephen English
Julia E. Markley
PERKINS COIE, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209

Indra Neel Chatterjee
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

       Attorneys for Plaintiff

1 – OPINION & ORDER

Andrew G. Klevorn
Bruce G. Vanyo
Yonaton M. Rosenzweig
Christina Lucen Costley
Jeffrey A. Finn
KATTEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

Kristin J. Achterhof
Meegan I. Maczek
Richard H. Zelichov
KATTEN MUCHIN ROSENMAN, LLP
525 West Monroe Street
Chicago, IL 60661

Joshua L. Ross
Robert A. Shlachter
Timothy S. DeJong
STOLL STOLL BERNE LOKTING & SHLACHTER, PC
209 SW Oak Street, Fifth Floor
Portland, OR 97204

        Attorneys for Defendants

HERNÁNDEZ, District Judge:

        This is a breach of contract and misappropriation of trade secrets case. The parties are in a dispute over discovery. Defendants ask for a protective order to excuse them from responding to any discovery requests relating to the "Confidential Solutions Methods," until such time as Plaintiff provides full and complete responses identifying its trade secrets with reasonable particularity. Defendants also seek an order compelling Plaintiff to amend its responses to Interrogatory Nos. 1 and 16 (and the responses incorporating those Interrogatories' responses) to identify with reasonable particularity the trade secrets that it disclosed to Defendants, an order striking various objections and answers to Interrogatory Nos. 15 and 16, and an order requiring Plaintiff to identify all trade secrets it disclosed to Defendants.

For the reasons stated below, Defendants' motion is granted in part. Most importantly, the Court grants Defendants' motion for a protective order excusing them from responding to any discovery related to the "Confidential Solutions Methods," until such time as Plaintiff identifies with reasonable particularity the trade secrets it allegedly disclosed to Defendants.

## BACKGROUND

Plaintiff Vesta, an electronic payments and fraud prevention technology company, has sued Defendants Amdocs Management Limited and Amdocs, Inc. (collectively, "Defendants"), telephone billing software and services companies, for breach of contract and misappropriation of trade secrets. First Am. Compl. (FAC) Intro., ECF 52. Beginning in 2006, the parties collaborated with one another to integrate their services and platforms in order to appeal to their shared customer based. FAC ¶ 13. In 2009, the parties' relationship became more strategic in nature as they worked to jointly market their respective services. Id. at ¶ 14. In addition, since 2010, Defendants twice approached Plaintiff about the possibility of Defendants acquiring Plaintiff. Id. Plaintiff and Defendants entered into a series of Non-Disclosure/Confidentiality Agreements (NDAs) to preserve confidentiality while sharing information in their effort to develop joint services and products. Id. at ¶¶ 13-15. Now, Plaintiff alleges that Defendants breached these NDAs and stole trade secrets that were shared in the course of the collaboration.

Specifically, Plaintiff alleges that in the course of jointly collaborating on marketing and the possibility of acquisition of Plaintiff by Defendants, Plaintiff shared information with Defendants including "proprietary information about [Plaintiff's] payment solution" and "confidential and proprietary business and financial information." Id. at ¶ 17. Plaintiff alleges that Defendants obtained two types of confidential information from Plaintiff:

1) "Solutions Methods," which include "detailed information about the architecture and design of the solutions, including proprietary payment routines, methodologies and processes," and

2) "Risk Information," which includes detailed statistical information about "the prevalence of fraudulent payment transactions in the prepaid mobile device market place" and how Plaintiff "uses fraud data to price its payment solutions."

Id. at ¶¶ 22, 51.

The alleged stolen information "relates generally to proprietary software and fraud prevention technologies, consumer behavior analyses and service techniques created by [Plaintiff] and used to provide its electronic payment services to the national and international mobile phone industry." FAC Intro. Plaintiff's First Amended Complaint alleges, among other things, that Defendants stole a compilation of "Confidential Solution Methods," defined as:

Detailed architectural drawings and sequence flow diagrams that depicted, on a step-by-step basis, how [Plaintiff] would design and implement its payment solution for Metro PCS . . . [and] detailed information about how [Plaintiff] implements its system of direct customer notifications to optimize payments and customer retention, including detailed information about [Plaintiff's] proprietary "Text-to-Pay" system . . . [and] detailed information about [Plaintiff's] customer relationship management tools, and how those tools serve to optimize customer loyalty and MNO revenues.

Id. at ¶¶ 32, 164-73.

On May 15, 2015, this Court entered a stipulated scheduling order providing that, by June 5, 2015, Plaintiff would answer Defendants' interrogatories regarding the trade secrets allegedly misappropriated by Defendants. Scheduling Order, May 15, 2015, ECF 62. Throughout the summer, the parties communicated about the interrogatories and responses through meet and confer letters and discussions. Defs.' Mot. Compel 8, ECF 105. On September 21, 2015, Defendants filed the present motion. Id. The Court heard oral argument on Defendants' motion on November 6, 2015.

4 – OPINION & ORDER

## STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Among the limitations stated in Rule 26(b)(2)(C) is the direction that the court must limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). This is known as the "rule of proportionality." In addition, Rule 26 provides that the court may, for good cause, issue an order to protect a party or person from oppression or undue burden, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

## DISCUSSION

The parties' dispute centers on whether Plaintiff has identified its trade secrets with sufficient particularity for Defendants to be obligated to respond to Plaintiff's discovery requests. A careful review of the many cases presented by both parties makes clear that there is no bright-line answer as to the degree of particularity that must be disclosed in order for discovery to proceed in a trade secrets case. Rather, the Court's analysis in each case is fact-intensive and the outcome is fact-specific.

At issue in this case are Defendants' Interrogatory Nos. 1, 15, and 16.[1] Defendants do not dispute that Plaintiff's Response to Interrogatory No. 15 sufficiently identifies trade secrets— Defendants only challenge Response No. 15's "reservation of rights" language and reliance upon oral discussions. As to Plaintiff's Response to Interrogatory No. 16, Defendants challenge it for the same reasons as No. 15 and on the basis that Plaintiff fails to identify its trade secrets with reasonable particularity.

I.    **Plaintiff must identify its trade secrets with "reasonable particularity"—(Response to Interrogatory Nos. 1, 16)**

As an initial matter, the parties disagree about which standard controls the Court's resolution of this motion. According to Defendants, Plaintiff must identify with reasonable particularity its "Solutions Methods" trade secrets that it alleges Defendants stole before Defendants are obligated to respond to discovery requests on the same topic. Plaintiff argues that Defendants erroneously rely on a standard based on a California state statute that does not apply in this case. According to Plaintiff, no court in Oregon has adopted the "reasonable particularity" standard and the two District of Oregon cases to address this question have resolved it in favor of discovery without such initial disclosures.

The discovery impasse presented by this case "is not is not uncommon in trade secret cases, and brings into conflict many competing policies." DeRubeis v. Witten Technologies, Inc., 244 F.R.D. 676, 680 (N.D. Ga. 2007). "These competing policies can make resolving this type of dispute difficult" and, as a result, courts have developed different approaches to the problem. Id. ("Unfortunately, there is no talismanic procedure the Court may apply in order to obtain the best result in any given case . . . [i]n other words, "the 'proper' approach is clearly fact-dependent.") (citation omitted). Hon. Michael Simon appears to be the only judge within the District of

---

[1] Plaintiff's Response to Interrogatory No. 1 refers the reader to the information outlined in its Responses to Interrogatory Nos. 15 and 16.

Oregon who has issued written opinions on the issue of sequencing discovery in a trade secrets case. Accordingly, this Court looks to Judge Simon's opinions for guidance in this case.

In <u>Nike, Inc. v. Enter Play Sports, Inc.</u>, 305 F.R.D. 642, 645 (D. Or. 2015), the defendant, Enter Play Sports, Inc., argued that NIKE should be required to further describe with particularity its alleged trade secrets before proceeding with discovery. <u>Id.</u> Judge Simon acknowledged that district courts reached conflicting conclusions as to whether a plaintiff must identify its alleged secrets before being allowed to conduct discovery. Judge Simon found a case out of the District of Arizona to be "particularly instructive for identifying the criteria that a district court should consider in deciding this question." <u>Id.</u> (citing <u>BioD, LLC v. Amnio Tech., LLC</u>, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014). In <u>BioD</u>, that court noted:

> [d]etermining whether a trade secret has been misappropriated usually involves examining things that the other party considers its own trade secrets. There is no privilege excepting trade secrets from discovery, but courts must exercise discretion to avoid unnecessary disclosures of such information. [P]laintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.

2014 WL 3864658, at *4 (alterations in original) (quoting <u>Dura Global Technologies, Inc. v. Magna Donnelly, Corp.</u>, 2007 WL 4303294, at *2 (E.D. Mich. Dec. 6, 2007)). The court in <u>BioD</u> continued, however, by observing: "A plaintiff also might not be required to identify its trade secrets with reasonable particularity prior to discovery." <u>Id.</u> at *5. As explained by the court:

> [C]ourts have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets. First, courts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure. Second, the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating. Finally, if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a "Catch–22" [because] [i]f the list is too general, it will encompass material that the

defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

Id. (alterations in original) (quoting DeRubeis, 244 F.R.D. at 680).

Judge Simon applied the considerations raised in BioD and concluded that NIKE's descriptions of the trade secrets at issue were sufficient to permit discovery to proceed. Judge Simon cited the fact that Enter Play Sports answered the Complaint and "asserted in its first counterclaim that NIKE's alleged trade secrets either were not disclosed in EPS's patent Applications or, to the extent they were, then they were not subject to the protections of the NDA based on the NDA's express exclusions." NIKE, 305 F.R.D. at 646. Accordingly, Judge Simon explained that NIKE's claimed trade secrets must have been sufficiently clear to Enter Play Sports to permit Enter Play Sports to make those assertions. Id.

Judge Simon employed the same analysis in St. Jude Med. S.C., Inc. v. Janssen-Counotte, 305 F.R.D. 630 (D. Or. 2015) reconsideration denied, No. 3:15-MC-00099-SI, 2015 WL 2359568 (D. Or. May 18, 2015). In St Jude, Judge Simon considered the circumstances under which a plaintiff alleging misappropriation of trade secrets may proceed with formal discovery, notwithstanding the assertion by a third-party subpoena recipient that the plaintiff has failed to describe with particularity the trade secrets at issue. Id. The St. Jude defendant was a high-ranking officer and employee of the plaintiff who, before leaving her employment to become the president of operations of one of the plaintiff's primary competitors, allegedly copied, emailed, and downloaded trade secrets. Id. at 633. The defendant allegedly inserted 41 separate "thumb drives" into her computer and emailed contracts and benefits information to her personal email address. Id.

As in Nike, Judge Simon applied the considerations from BioD and concluded that the plaintiff did not need to identify its trade secrets with any greater particularity before taking

discovery from the third-party. Id. at 641. The St Jude plaintiff had a "broad right to discovery." Id. In addition, the plaintiff had "numerous trade secrets but . . . 'no way of knowing what trade secrets ha[d] been misappropriated until it receive[d] discovery on how the defendant is operating.'" Id. (quoting BioD, 2014 WL 3864658, at *5). Finally, requiring the plaintiff to identify its trade secrets without first knowing which had been misappropriated by the defendant and placed into use at defendant's subsequent employer would have placed the plaintiff in the "Catch-22" situation posed by BioD. Id.

Neither of Judge Simon's opinions adopted the rule applied by many federal courts across the country requiring the party alleging a claim for misappropriation of trade secrets to identify its alleged trade secrets with reasonable particularity before compelling discovery of its adversary's trade secrets.[2] However, Judge Simon did not reject the rule either. Instead, Judge Simon considered the rule, as well as additional policy considerations. Judge Simon found that those policies weighed against requiring the Nike or St. Jude plaintiffs to provide further specificity as to their trade secrets.

As in Nike and St. Jude, this Court applies the BioD analysis to resolve the present case. In doing so, the Court recognizes the "growing consensus" of courts from around the country who have applied the "reasonable particularity" standard to determine whether a party alleging a claim for misappropriation of trade secrets has sufficiently identified its trade secrets before it

---

[2] Numerous courts have held that a party alleging a claim for misappropriation of trade secrets is required to identify its alleged trade secrets with reasonable particularity before it will be allowed to compel discovery of its adversary's trade secrets. See, e.g. Engelhard Corp. v. Savin Corp., 505 A.2d 30, 12 Del. J. Corp. L 249 (Del.1986), citing Xerox Corp. v. International Business Machines Corp., 64 F.R.D. 367, 371–72 (S.D.N.Y. 1974); DeRubeis v. Witten Technologies, Inc., 244 F.R.D. 676, 680–81 (N.D. Ga. 2007); Automed Techs., Inc. v. Eller, 160 F .Supp. 2d 915, 925 (N.D. Ill. 2001); Dura Global Technologies, Inc. v. Magna Donnelly, Corp., 2007 WL 4303294 (E.D. Mich. 2007); Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 148 F.Supp.2d 1322 (S.D. Fla. 2001); and Ikon Office Solutions v. Konica Minolta Business Solutions, 2009 WL 4429156, *4–*5 (W.D.N.C. 2009). This list is not exhaustive.

may compel discovery of its adversary's trade secrets. See StoneEagle Servs., Inc. v. Valentine,
No. 3:12-CV-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013) ("The growing
consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret
misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue."). It
is clear to this Court that such a requirement is not limited to cases applying California's unique
statutory requirement, as Plaintiff contends.[3] Rather, the "reasonable particularity" standard
reflects the Court's authority, pursuant to the Federal Rule of Civil Procedure 26 requirements of
early disclosure of evidence, and the Court's authority to control the timing and sequencing of
discovery in the interests of justice.[4]

Requiring Plaintiff in this case to make pre-discovery disclosures of its alleged
misappropriated trade secrets is supported by strong practical and policy reasons, including the
goal of assisting this Court in "in determining relevancy and the scope of discovery." See Ikon
Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc., No. 3:08-CV-539-RLV-DCK, 2009
WL 4429156, at *4 (W.D.N.C. Nov. 25, 2009). The requirement also prevents a "fishing
expedition" into Defendants' trade secrets, see, e.g., Ray v. Allied Chemical Corp., 34 F.R.D.
456, 457 (S.D.N.Y.1964) (observing that without pre-discovery identification, "it would be a
simple matter to obtain one's trade secret by the mere assertion of a claim"), and denies Plaintiff
the opportunity to craft a trade secret claim to fit the evidence from the Defendants, see, e.g.,
Switch Commc'ns Grp. v. Ballard, No. 2:11-CV-00285-KJD, 2012 WL 2342929, at *4 (D. Nev.
June 19, 2012) ("[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in

---

[3] California Code of Civil Procedure § 2019.20 provides that "[i]n any action alleging the
misappropriation of a trade secret under the Uniform Trade Secrets Act . . ., before commencing
discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret
with reasonable particularity[.]" Oregon has not enacted any such rule.
[4] The Judicial Conference of the United States approved several significant proposed changes to the
Federal Rules of Civil Procedure, including changes to Rule 26(b). These proposed changes will become
effective December 1, 2015. This ruling is based on the Rules that are now in effect.

discovery ensures that it will not mold its cause of action around the discovery it receives."
Finally, the requirement prevents "needless exposure of the defendant's trade secrets," see, e.g.,
DeRubeis, 244 F.R.D. at 680–81, and allows well-investigated claims to proceed while
discouraging meritless trade secret claims. United Servs. Auto. Ass'n v. Mitek Sys., Inc., 289
F.R.D. 244, 248 (W.D. Tex. 2013) aff'd, No. CIV.A. SA-12-CA-282, 2013 WL 1867417 (W.D.
Tex. Apr. 24, 2013) ("[pre-discovery identification] allows the Court to utilize its resources more
effectively by exposing the viable claims, permitting early dismissal of the nonviable claims, and
allowing the case to proceed unfettered by needless discovery disputes pertaining to
unquestionably relevant information central to the parties' claims and/or defenses").

    At the same time, the policy considerations that weight against this requirement, while
important, weigh less heavily in this case than in other cases like Nike and St. Jude. As in every
case, Plaintiff has a broad right to discovery under the Federal Rules of Civil Procedure. See,
e.g., Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995) ("The Federal Rules of Civil
Procedure creates a 'broad right of discovery' because 'wide access to relevant facts serves the
integrity and fairness of the judicial process by promoting the search for the truth.'") (citation
omitted). However, this case differs from other cases where plaintiffs may face an inherent
difficulty identifying what portions of trade secrets have been misappropriated prior to receipt of
discovery from defendants. See, e.g., DeRubeis, 244 F.R.D. at 680 ("[T]he trade secret plaintiff,
particularly if it is a company that has hundreds of thousands of trade secrets, may have no way
of knowing what trade secrets have been misappropriated until it receives discovery on how the
defendant is operating."). Unlike the plaintiff in St. Jude, for example, Plaintiff here should know
exactly what trade secrets were shared with Defendants because such disclosures took place in a
discreet number of joint meetings and exchanges of information over a defined time frame. See

Pl.'s Memo. Opp. Mot. Compel 14 (noting that Plaintiff has details "regarding when and how the information was shared"). This is not a case where Defendants stole large volumes of documents or secrets from Plaintiff without Plaintiff's knowledge. Similarly, Plaintiff fails to provide any argument that premature trade secret identification in this case risks encompassing non-trade secret information or may be too specific to capture all misappropriated trade secrets. See, e.g., DeRubeis, 244 F.R.D. at 680 ("If the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret ... If instead it is too specific, it may miss what the defendant is doing.").

The Court must strike a balance in assessing these considerations and determining the appropriate sequence of discovery where misappropriation of trade secrets has been alleged. See Microwave Research Corp. v. Sanders Assocs., Inc., 110 F.R.D. 669, 672 (D. Mass. 1986) ("In cases involving the disclosure of confidential information and/or trade secrets, the Court must strike a balance."). Assessing these various considerations in the context of the facts here, the Court is persuaded by the reasoning in cases requiring pre-discovery disclosure of trade secrets. Plaintiff is required to identify the trade secrets it claims Defendants misappropriated with reasonable particularity before Defendants are required to produce their confidential information and trade secrets to Plaintiff in discovery.

## II.    Plaintiff has not identified its trade secrets with "reasonable particularity" — (Response to Interrogatory No. 1, 16)

Plaintiff argues that, even if this Court applies the "reasonable particularity" standard, Plaintiff has met that standard. The Court disagrees.

Ultimately, whether a plaintiff has sufficiently disclosed its trade secrets is "a fact-specific question to be decided on a case-by-case basis." L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc., No. 10-CV-02868-MSK-KMT, 2011 WL 10858409, at *2 (D. Colo. Oct. 12, 2011)

12 – OPINION & ORDER

(citations omitted). The Ninth Circuit has not defined "reasonable particularity" in the context of

identification of trade secrets. Therefore, the Court looks to the standard outlined in BioD.

"Reasonable particularity" is defined as:

> a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice
> of the nature of the plaintiff's claims and (b) enable the defendant to determine the
> relevancy of any requested discovery concerning its trade secrets.

BioD, 2014 WL 3864658, at *5 (quoting Hill v. Best Medical Int'l, Inc., Case No. 09–1194, 2010

WL 2546023, at *3 (W.D. Pa. June 24, 2010). A "working definition" from the District Court of

the Southern District of Florida is helpful as well:

> The court in Del Monte Fresh Produce Co. set forth a working definition of "reasonable
> particularity" in identifying allegedly misappropriated trade secrets. As that court noted,
> it is insufficient to describe the trade secrets by generic category, such as the components
> of the night vision devices to which the alleged trade secrets relate. Rather, [the party]
> must identify the specific characteristics of each trade secret, such as a particular
> drawing, process, procedure or cost/pricing data. It must also describe with reasonable
> particularity all of its trade secrets, including those involving "business methods, know-
> how, machines, manufacturing process and procedure, marketing information, pricing
> data, product designs and manufacturing information, ... [and] supplier and vendor lists"
> as alleged in the amended counterclaim.

Knights Armament Co. v. Optical Sys. Tech., Inc., 254 F.R.D. 463, 467 (M.D. Fla.) aff'd, 254

F.R.D. 470 (M.D. Fla. 2008) (citing Del Monte Fresh Produce Co. v. Dole Food Co. Inc., 148 F.

Supp. 2d 1322, 1324 (S.D. Fla. 2001). To ensure that plaintiffs adequately disclose their trade

secrets, courts commonly order a list of trade secrets at the outset of the litigation. Dura Glob.

Techs., 2007 WL 4303294, at *2.

Plaintiff's Amended Complaint and Interrogatory Responses offer lengthy narrative

descriptions of the alleged trade secrets at issue. In addition, Plaintiff provides "architectural

drawings" and "sequence flow diagrams" for Plaintiff's payment solution. Eads Decl. Ex. 4, ECF

104. In response to Defendants' Interrogatory No. 16, Plaintiff provides additional information

about the trade secrets it believes that Defendants misappropriated. Plaintiff's Supplemental

Responses to First Set of Interrogatories 37, ECF 103. Plaintiff alleges that it provided Defendants with "a complete, high-level explanation of how to design and implement a comprehensive payment services solution" and "a compilation of several of [Plaintiff's] key methodologies, business rules and best practices." Id. at 36-37. Plaintiff lists the following categories of information that were included in this "compilation": omni-channel payment processing methods, mobile user fingerprinting, channel-specific credential and authentication management strategies, idempotent communications protocols, bifurcated funds capture, edge-case management strategies, best practices scorecard and recommendations, text-to-pay strategies, and proprietary management tools. Id. at 37-43.

However, the actual trade secret descriptions Plaintiff offers are broadly stated and lack particularity. Defendants' expert, Professor Michael Shamos, summarizes Plaintiff's responses as either identifying trade secrets that are not, in fact, trade secrets at all, or identifying trade secrets with such a lack of particularity that Defendants or any expert in the field would be unable to compare and determine whether the alleged trade secret is contained within Defendants' proprietary system. Shamos Decl. ¶ 14, ECF 107. The Court similarly finds that Plaintiff's responses are too general and generic to satisfy the reasonable particularity standard. Plaintiff's disclosures do not specify any trade secrets, "but rather reveal[] the end results of, or functions performed by, the claimed trade secrets." See Switch Commc'ns Grp., 2012 WL 2342929, at *4-6.

Plaintiff contends that Defendants erroneously "nitpick" each component of Plaintiff's trade secret claim, ignoring that the claim is that of a "compilation trade secret." Pl.'s Memo. Opp. Mot. Compel 9, ECF 121. Plaintiff's expert, Charles Abbey, explains that "the particular manner in which individual technologies or methods are used, or assembled with other

technologies or methods or how they are applied to a particular use [] to form a comprehensive

payments solution can constitute highly proprietary information." Abbey Decl. ¶ 13. However,

Plaintiff may not claim that a particular method or process is a trade secret at this stage of the

litigation "without identifying the steps in the process and explaining how those steps make [the]

method or process unique." BioD, 2014 WL 3864658 at *5. As the BioD court stated:

> Plaintiffs must explain how the combination of much of what appears to be generally
> known information can constitute a trade secret. It is simply not sufficient for plaintiffs to
> identify a trade secret as a "method" without some explanation of why that "method"
> could be considered a legally protectable trade secret. Plaintiffs must provide some basis
> for their contention that their methods and processes are unique and thus legally
> protectable. Contrary to their contention, plaintiffs are not being asked to prove their
> trade secret claim prior to being able to take discovery. But, they must provide enough
> detail about their alleged trade secrets to at least suggest that the alleged trade secrets
> might be legally protectable. To date, they have not done so. In short, plaintiffs must
> identify their trade secrets with more specificity than they have done so far.

Id.; see also Switch Commc'ns Grp., 2012 WL 2342929, at *5; Struthers Sci. & Int'l Corp. v.

Gen. Foods Corp., 51 F.R.D. 149, 153 (D. Del. 1970) ("If [the plaintiff] is, in fact, relying for its

trade secret allegations on a unique combination of known components disclosed to [the

defendant], [the plaintiff] should be required to specifically describe what particular combination

of components it has in mind, how those components are combined, and how they operate in a

unique combination. This matter cannot be left to pure speculation and conjecture."); see

generally DeRubeis, 244 F.R.D. at 681.

    In sum, the Court finds that Plaintiff fails to identify its alleged trade secrets with

reasonable particularity, as required. See Stoneeagle Servs., 2013 WL 9554563, at *3 ("By

requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to

more accurately determine relevant responses and appropriate objections. Plaintiffs will not be

required to sift through mounds of irrelevant information produced by Defendants because they

15 – OPINION & ORDER

were uncertain as to what information was relevant. And Defendants will not be required to waste time guessing at the basis of Plaintiffs' claims.")

### III.   Whether Plaintiff should be prevented from amending its trade secret disclosure as discovery progresses—(Response to Interrogatory Nos. 1, 15, 16)

Defendants argue that Plaintiff should be barred, absent a showing of good cause, from supplementing or changing what it claims to be the trade secrets it disclosed to Defendants. Plaintiff responds that Defendants' argument is "overreaching."

Plaintiff's responses to Interrogatory Nos. 15 and 16 both contain the following "reservation of rights" language:

> Vesta specifically reserves the right to complete its investigation and discovery of the facts, and to rely at trial or in other proceedings on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. Additional discovery and investigation may lead to additions to, changes in, or modifications of these Responses.

Pl.'s Supp. Resp. 30, 36; ECF 103. Defendants cite six cases for the proposition that Plaintiff should not be allowed to "leave the door open to 're-construct' what it claims it disclosed" after seeing Defendants' discovery responses. Defs.' Mot. Compel 22, ECF 105. In addition, Defendants allege that Plaintiff has structured its responses in a vague manner to provide a "backdoor" reservation of rights to supplement its responses after it receives discovery. Id. at 23.

The cases cited by Defendants do not, in fact, foreclose the possibility of Plaintiff reserving the right to amend its responses.[5] The only case cited by Defendants that is on point is

---

[5] Five of the six cases cited by Plaintiff do not directly address whether or not a plaintiff may reserve the right to supplement its trade secret identification after receiving discovery from a defendant. See DeRubeis v. Witten Technologies, Inc., 244 F.R.D. 676, 681 (N.D. Ga. 2007); Switch Commc'ns Grp. v. Ballard, No. 2:11-CV-00285-KJD, 2012 WL 2342929, at *2 (D. Nev. June 19, 2012); Avago Technologies, Inc. v. IPtronics Inc., No. 5:10-CV-02863-EJD, 2015 WL 2395941, at *5 (N.D. Cal. May 19, 2015); Jobscience, Inc. v. CVPartners, Inc., No. C 13-04519 WHA, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014); Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp. 3d 224, 265 (S.D.N.Y. 2014) aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co., 610 F. App'x 69 (2d Cir. 2015).

Soc. Apps, LLC v. Zynga, Inc., No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *5 (N.D. Cal. June 14, 2012). However, in Soc. Apps, the court provided no explanation for why amendment should not generally be allowed. Therefore, it has limited persuasive value in this case.

Plaintiff cites one case that expressly holds that a plaintiff may supplement a trade secret identification according to Federal Rule of Civil Procedure 26(e). See StoneEagle Servs., 2013 WL 9554563, at *5. The other case cited by Plaintiff, Dura Global Technologies, 2011 WL 4527576, at *9, allowed the plaintiff to present additional trade secrets added during the plaintiff's proposed pretrial order. However, the court allowed this supplementation after a finding of good cause, which is the standard that Defendants request the Court apply in this case.

In sum, the Court does not find that either party cites controlling authority to provide a definitive answer as to whether Plaintiff should be allowed to reserve the right to supplement its trade secret identification. In the absence of such authority, the Court grants Defendants' motion that Plaintiff be required to show good cause for such supplementation.

**IV.    Whether Plaintiff may identify oral trade secrets in this case--(Response to Interrogatory Nos. 15, 16)**

Defendants contend that, because of the express terms of the parties' 2009 Non-Disclosure Agreement (NDA), any information that Plaintiff shared with Defendants orally but not in writing cannot constitute a trade secret. Defendants ask the Court to compel Plaintiff to remove any purported "oral" discussions from its Response to Interrogatory Nos. 15 and 16. Plaintiff responds that Defendants are effectively seeking summary judgment that all information shared in a non-written manner between the parties cannot be a trade secret because it was purportedly shared non-confidentially. The Court agrees that Defendants' argument is premature and denies their request.

The 2009 NDA provides that "[d]isclosure of the disclosing party's Proprietary Information to the receiving party may <u>only</u> be made in writing or other tangible or electronic form that is marked as proprietary and/or confidential information of the disclosing party, or occur by demonstration of any product within the AMDOCS product." Rosenzweig Decl. Ex. F ¶ 6 (emphasis added), ECF 112-2. Defendants argue, therefore, that any information that was not shared in writing and marked proprietary and/or confidential cannot constitute a trade secret because the parties did not have a duty to maintain the secrecy of the information.

Plaintiff disputes Defendants' interpretation of the text of the 2009 NDA. Plaintiff argues that Defendants' construction of the contract gives rise to an absurd result: "the parties could not share any trade secret information orally or in face-to-face meetings without waiving the confidentiality of such information." Pl.'s Memo. Opp. Mot. Compel 17, ECF 121. Second, Plaintiff argues that, at the very least, the 2009 NDA is ambiguous with respect to orally shared confidential and trade secret information. Third, Plaintiff argues that there is an open question as to whether the parties expressly or impliedly waived any contractual provision during their face-to-face meetings.

The Court finds Plaintiff's arguments persuasive. While Defendants may have a compelling argument at summary judgment, granting the motion at this point would be inappropriate because it requires resolving a disputed issue of contract interpretation.


///


///

## CONCLUSION

Defendants' motion for a protective order [105] is granted in part. Defendants do not have to respond to any of Plaintiff's discovery relating to the "Confidential Solutions Methods" until Plaintiff has identified, with reasonable particularity, the trade secrets which Plaintiff contends it disclosed to Defendants. Within 21 days of this Order, Plaintiff must amend its responses to Defendants' Interrogatory Nos. 1, 15 and 16, consistent with this Opinion & Order.

IT IS SO ORDERED.

Dated this _____30_____ day of _____November_____, 2015.


_____
MARCO A. HERNÁNDEZ
United States District Judge