**Robert A. Shlachter**, OSB No. 911718
Email: rshlachter@stollberne.com
**Joshua L. Ross**, OSB No. 034387
Email: jross@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Bruce G. Vanyo** (admitted *Pro Hac Vice*)
Email: bruce@kattenlaw.com
**Richard H. Zelichov** (admitted *Pro Hac Vice*)
Email: richard.zelichov@kattenlaw.com
**Christina L. Costley** (admitted *Pro Hac Vice*)
Email: christina.costley@kattenlaw.com
**Yonaton M. Rosenzweig** (admitted *Pro Hac Vice*)
Email: yoni.rosenzweig@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

**Attorneys for Defendants Amdocs Management Limited; Amdocs, Inc.,**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VESTA CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**AMDOCS MANAGEMENT LIMITED; AMDOCS, INC.,**<br><br>Defendants. | Case No.: 3:14-cv-01142-HZ<br><br>**DEFENDANTS' MOTION TO QUASH SUBPOENA TO NON-PARTY SPRINT CORPORATION OR, ALTERNATIVELY, FOR A PROTECTIVE ORDER; MEMORANDUM IN SUPPORT THEREOF**<br><br>**REQUEST FOR ORAL ARGUMENT** |

**MOTION**

Pursuant to Local Rule 7-1(a), counsel for defendants Amdocs Management Limited and Amdocs, Inc. (collectively, "Amdocs"), hereby certify that they made a good-faith effort to resolve the issues raised in this Motion, but were unable to do so. On October 30, 2015, Amdocs sent a letter to plaintiff Vesta Corporation ("Vesta") asking that Vesta withdraw its subpoena to Sprint Corporation ("Initial Subpoena") for the grounds articulated herein. (*See* Declaration of Christina Costley ("Costley Decl.") ¶ 6, Ex. D.) When Vesta did not respond to the letter, Amdocs sent a further email to Vesta on November 6, 2015. (Costley Decl. ¶ 7, Ex. E.) Vesta responded to the email on November 9, 2015, stating that Amdocs did not have standing to object to the Initial Subpoena and that Vesta would not withdraw it. (Costley Decl. ¶ 8, Ex. F.)

On November 13, 2015, Amdocs responded by email to Vesta's November 9th letter and asked that Vesta make itself available either that day, or early the following week, for a telephonic conference. (Costley Decl. ¶ 10, Ex. H.) The parties met and conferred on November 18, 2015. (Costley Decl. ¶ 10.) During the meeting, Amdocs indicated that, if Vesta wished to add allegations regarding Sprint Corporation ("Sprint") to an amended complaint, it would defer this Motion until after Vesta had done so. Vesta asked that Amdocs give it time to discuss the proposal with co-counsel and Amdocs agreed, subject to a further agreement by Vesta that it would not seek to enforce the Initial Subpoena in the interim. On November 20, 2015, Vesta also asked Amdocs to agree that, if Vesta filed a Second Amended Complaint, Amdocs would not oppose it. (Costley Decl. ¶ 10, Ex. H.) Amdocs responded by asking Vesta to provide a copy of the proposed amended complaint. (Costley Decl. ¶ 12, Ex. J.)

On November 24, 2015, Amdocs learned that Vesta had continued to meet and confer with Sprint regarding the production of documents, and had served an amended subpoena (the

"Subpoena") that rectified a procedural error in the Initial Subpoena and which called for the production of documents by December 15, 2015. (Costley Decl. ¶¶ 11-12, Exs. I, J.) On November 25, 2015, Amdocs notified Vesta that it had learned that Vesta had continued its efforts to enforce the Subpoena, in violation of the November 18th agreement, and asked that Vesta advise Sprint that it was not required to respond to the Subpoena until further notice. (Costley Decl. ¶ 13, Ex. J.) Vesta responded on November 25, 2015 that it believed the parties' agreement extended only to efforts by Vesta to enforce the Subpoena through the Court and that Vesta would not modify or delay the production date specified by the Subpoena. (*Id*.) On November 30, Amdocs advised Vesta that it intended to file the instant Motion. (*Id.*)

Non-party Sprint served objections to the Initial Subpoena on October 28, 2015. (Costley Decl. ¶ 5, Ex. C.) Sprint's objections noted, *inter alia*, that the Initial Subpoena: (1) had been served on the wrong Sprint entity; (2) was overbroad and unduly burdensome; (3) sought information from a third party that was in the possession, custody, or control of parties to the lawsuit; and (4) sought information protected from disclosure by the attorney-client, work product, or other applicable privileges. (*See id.*) On November 24, 2015, Vesta served an amended Subpoena that identified the correct Sprint entity, and called for production by December 15, 2015, but that was otherwise substantively identical to the Initial Subpoena. (Costley Decl. ¶ 11, Ex. I.)

Pursuant to Federal Rules of Civil Procedure 26 and 45, Amdocs, by and through its attorneys, respectfully moves for an order quashing Vesta's Subpoena to produce documents, information, or objects to non-party Sprint/United Management Company, Inc. or, alternatively, a protective order excusing Sprint from any obligation to respond to the Subpoena. Vesta's Subpoena is unduly burdensome on Sprint because it does not seek information relevant to

Vesta's remaining claims in the lawsuit and is not narrowly tailored. Vesta's Subpoena is also improper because it improperly attempts to circumvent the Court's November 30, 2015 order (the "November 30th Order") requiring Vesta to identify its Solution Methods with reasonable particularity. (Dkt. No. 141.)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

## INTRODUCTION

The Sprint Subpoena is Vesta's latest attempt to find evidence supporting its theory that Amdocs used Vesta's Risk Information and Solution Methods to enter the prepaid cell phone payments market. After more than a year of litigation, Vesta has remained unwilling (or unable) to articulate the "trade secrets" that it disclosed to Amdocs. Now, faced with a motion and subsequent court Order requiring Vesta to identify its Solution Methods with reasonable particularity, Vesta has dragged Amdocs's longtime customer, Sprint, into this lawsuit by serving a Subpoena on Sprint that encompasses nineteen categories of documents. Vesta asserts that it needs this information to pursue a new theory, not pled in the Complaint or the Amended Complaint, that *Sprint* provided Amdocs with Vesta's proprietary information so that Amdocs could build its payment solution for MetroPCS. (*See* Costley Decl., Ex. F; First Amended Complaint ("FAC") ¶ 129.)

This theory, however, appears nowhere in either the Complaint or Amended Complaint. Vesta's claims for trade secret misappropriation and breach of contract are based on allegations that Amdocs used information obtained when considering an acquisition of Vesta in 2010 and 2012, and during a joint pitch to *MetroPCS* in 2010 to 2011, to create a payment solution for *MetroPCS* between 2012 and 2014. (FAC ¶¶ 24-25, 31-32, 48, 147-148, 180; Complaint ¶¶ 24-25, 31-32, 48, 64-65, 96.)[1] The complaints do not, at any point, allege that Amdocs obtained Vesta's trade secrets from Sprint. In fact, the Complaint mentions Sprint only once in connection with a joint pitch on which Vesta and Amdocs partnered in 2006—*four years before the acts at*

[1] Vesta initially brought suit for breach of contract, trade secret misappropriation, and fraud. After the Court dismissed the fraud claim on January 13, 2015 (Dkt. No. 42), Vesta filed an Amended Complaint that added three claims for antitrust violations, which the Court dismissed on September 3, 2015 (Dkt. No. 97).

*issue in this lawsuit*. (Complaint ¶ 13; *see also* FAC ¶ 13.)[2] Nor is Vesta's new theory—that Amdocs used proprietary information obtained from *Sprint* in *mid-2014* to build a payment solution for *MetroPCS* in *2013*—facially plausible. (FAC ¶¶ 36-37.) Since Vesta's theory is neither alleged in a complaint certified under Rule 11, nor sufficiently plausible to survive a motion to dismiss, Vesta is not entitled to discovery regarding it.

Furthermore, even if Vesta had included these allegations in a complaint, the vast majority of the documents sought by the Subpoena would still be irrelevant. Many of the document requests do not even mention Amdocs. Further, nearly all of the requests relate solely to Vesta's antitrust claims, which the Court dismissed with prejudice on September 3, 2015. Thus, even if Vesta was able to state facts plausibly supporting its theory, because of the Subpoena's overbreadth, it should still be quashed.

The Subpoena is also improper because Vesta appears to be using it to avoid its obligation to identify its Solution Methods trade secrets with reasonable particularity. On September 21, 2015, Amdocs brought a motion to compel and for a protective order requiring Vesta to identify the Solution Methods that it claims it disclosed to Amdocs. (*See* Dkt. No. 105.) On October 13, the Court notified the parties that it intended to set oral argument on the motion, and on October 15, the Court set the hearing for November 6 at 10:00 a.m. (Dkt. No. 129.) *The next day, October 16, Vesta served the Initial Subpoena and set the date of production for November 6 at 9:00 a.m., an hour before the hearing*. (Costley Decl., Ex. B.) On November 30, the Court issued its order requiring Vesta to identify its Solution Methods with reasonable particularity before taking discovery from Amdocs regarding them. (*See* Dkt. No. 141.)

Vesta should not be permitted to use a third party to satisfy its own discovery obligations.

---

[2] The Amended Complaint added further allegations regarding Sprint in support of the antitrust claims that the Court dismissed with prejudice. (*See, e.g.*, FAC ¶¶ 128-132.)

Amdocs respectfully requests that the Court quash the Subpoena in its entirety or, alternatively, issue a protective order excusing Sprint's obligation to respond to the Subpoena.

**LEGAL STANDARD**

Before subpoenaing documents from a third party, Vesta had a duty to "take reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. Proc. 45(d)(1); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071, 1074 (9th. Cir. 2004) (those parties "who invoke [the subpoena power] have a grave responsibility to ensure it is not abused"). The Court is empowered to "enforce this duty and impose an appropriate sanction" on any party, or counsel, who fails to comply with this obligation. Fed. R. Civ. Proc. 45(d)(1); *see also* Fed. R. Civ. Proc. 45(d)(3)(iv) (requiring court to quash or modify a subpoena which subjects a person to undue burden). "A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation." *Hampton v. Steen*, No. 12-470, 2014 U.S. Dist. LEXIS 154654, at *14 (D. Or. Oct. 28, 2014) (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003)).

**ARGUMENT**

**I. AMDOCS HAS STANDING TO QUASH THE SUBPOENA**

Vesta's primary justification for the Subpoena's overbreadth appears to be that "Amdocs has no standing to object to the subpoena to Sprint based on relevance grounds." (*See, e.g.*, Costley Decl., Ex. F.) It is well settled, however, that Rule 26(c) "expressly gives" a party standing to challenge subpoenas. *Portland GE v. U.S. Bank Trust N.A.*, 38 F. Supp. 2d 1202, 1206 n.3 (D. Or. 1990), *rev'd on other grounds*, 218 F.3d 1085 (9th Cir. 2000); *see also* Fed. R. Civ. Proc. 26(c) & 45(d)(3); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005) (granting defendants' motion to quash non-party subpoena because it was overbroad, sought

irrelevant information, and imposed an undue burden on the non-party); *In re REMEC, Inc. Sec. Litig*., No. 04-1948, 2008 U.S. Dist. LEXIS 47412, at *4 (S.D. Cal. May 30, 2008) (party has "standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information"); *Novak & Gose, LLC v. Allstate Ins. Co*., No. 06-322, 2007 U.S. Dist. LEXIS 102142, at *26-27 (D. Ariz. Nov. 26, 2007). Indeed, if a party cannot object to a subpoena on relevance grounds, then it is unlikely that a relevancy objection would ever be litigated as a subpoenaed party is unlikely, in most instances, to know enough about a lawsuit to identify what is relevant and what is not.

In addition, Sprint itself objected to the Initial Subpoena, and refused to produce the documents Vesta seeks, on the grounds that, *inter alia*, it did not seek discovery from the correct Sprint entity, was overbroad and unduly burdensome, sought proprietary information, including information subject to nondisclosure agreements, and failed to provide contact information for Amdocs's counsel. (*See* Costley Decl., Ex. D.) While Vesta corrected the first issue in the Subpoena, it has continued to seek the exact same overbroad and unduly burdensome discovery that it sought in its Initial Subpoena. (*Compare* Costley Decl., Ex. B, *with id*., Ex. I.)

Based on Sprint's objections, and on its inherent powers, the Court also may issue an order quashing the Subpoena. *See* Fed. R. Civ. Proc. 45(d)(1) (empowering the Court to enforce the duty of parties to avoid undue burden); *see also* Fed. R. Civ. Proc. 45(d)(3)(iv) (requiring court to quash or modify a subpoena that imposes undue burden).

## II. THE SUBPOENA SEEKS IRRELEVANT INFORMATION FROM A NON-PARTY

In a letter sent on November 9, 2015, Vesta asserted that the material sought in the Initial Subpoena was relevant because Amdocs may have acquired Vesta's proprietary information from Sprint. Vesta wrote: "any information Sprint may have provided to Amdocs that relates to

Amdocs' misappropriation of Vesta's trade secrets—relating specifically to payment solution technology—is relevant to the case, particularly given Sprint's prior long-standing relationship with, and intimate knowledge of, Vesta's payment solution technology." (Costley Decl., Ex. F.)

Vesta did not plead this theory in either the Complaint or the Amended Complaint, both of which allege that Amdocs obtained Vesta's confidential information either when considering an acquisition of Vesta in 2010 and 2012 and when working on a joint pitch for MetroPCS in 2010 and 2011. Vesta has, however, indicated that it may seek leave to file a Second Amended Complaint that adds these allegations. (*See* Costley Decl., Exs. H, J.)

Vesta cannot state a facially plausible claim for relief based on this theory. Vesta has never alleged (nor does it now claim) that Amdocs used Vesta's proprietary information to build a payment solution for *Sprint*. Instead, Vesta seems to be asserting that Amdocs used information it acquired from Sprint in mid-2014 (*see* FAC ¶¶ 128-129) to build a solution for *MetroPCS* that launched in January of 2014 (*see* FAC ¶¶ 44-45). This theory, however, lacks a plausible factual basis: Amdocs could not have used information it did not acquire until mid-2014 to build a payment solution for MetroPCS the prior year; Vesta has not explained why Sprint would have given Amdocs information to build a solution for a competitor; and Vesta has not explained why information from Sprint would have been helpful, or even relevant, when building a solution for MetroPCS. Since Vesta has not pled, and cannot plead, facts plausibly supporting any theory of misappropriation involving Sprint, it is not entitled to take discovery regarding it. *See Moon*, 232 F.R.D. at 637-38 (quashing subpoena which was not limited to products at issue in the lawsuit); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (the courts will "not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions”).[3]

Moreover, even if Vesta could allege facts plausibly supporting a theory that Amdocs obtained Vesta’s proprietary information from Sprint, much of the information sought by the Subpoena still would be irrelevant. *See Cabell v. Zorro Prods.*, 294 F.R.D. 604, 609 (W.D. Wash. 2013) (granting protective order on third-party requests to produce “all contracts, agreements and sales data related in any way to [defendant]”); *Hampton*, 2014 U.S. Dist. LEXIS 154654 at *14, *19 (quashing subpoena seeking “large amount of material, much of which is irrelevant”). The Subpoena does not limit production to communications reflecting “Amdocs’ [purported] misappropriation of Vesta’s trade secrets.” In fact, many of the requests do not pertain to Amdocs at all. (*See, e.g.*, Costley Decl., Ex. I, Request Nos. 1-3 (Sprint’s development of its own payment solution), Nos. 9, 14, 15 (Sprint’s decision to terminate its agreement with Vesta), No. 16 (comparisons between different payment solutions), No. 17 (all suppliers that bid for the Sprint project), and Nos. 18-19 (Sprint’s users and subscribers).)

In addition, many of Vesta’s requests relate solely to the antitrust claims, which this Court has already dismissed. (*Compare* FAC ¶¶ 128-132 (Vesta’s allegations concerning purported antitrust violations), *with* Costley Decl., Ex. I.) For example, Vesta’s request for documents regarding payment for billing and payment solutions mirrors a section in the Amended Complaint, entitled “Amdocs’s Predatory Pricing to Exclude Vesta from Sprint,” in which Vesta alleges that Amdocs attempted to dominate the market by “bundling” payment and

[3] In the eDiscovery stipulation filed on October 28, 2015, Amdocs and Vesta agreed that “the amendments to Rules 1, 26, and 37 of the Federal Rules of Civil Procedure, which are set to take effect on December 1, 2015 and govern all actions then pending, shall apply retroactively and shall govern all disputes, motions, hearings or other matters in this action.” (Dkt. No. 133, ¶ G.) The amendment to Rule 26 strikes the Rule’s prior language permitting discovery of matters “reasonably calculated to lead the discovery of admissible evidence.” Thus, Vesta cannot rely on this language to argue that it needs to obtain discovery regarding Sprint prior to seeking leave to amend.

billing service. (*Compare* Costley Decl., Ex. I, Request Nos. 11-13, *with* FAC ¶¶ 130-132, 139, 193-194, 206-207, 219-220.) Vesta's request for documents related to Sprint's market share likewise mirrors allegations in the Amended Complaint regarding market domination. (*Compare* Costley Decl., Ex. I, Request Nos. 18-19, *with* FAC ¶¶ 60, 79, 82, 86, 88, 107, 111-112, 140, 195, 208.) Similarly, Vesta's request for information regarding Sprint's termination of its agreement with Vesta, and selection of Amdocs, mirrors the Amended Complaint's unfair competition allegations. (*Compare* Costley Decl., Ex. I, Request Nos. 6-10, 14-17 *with* FAC ¶¶ 128-132, 138, 191, 204, 217.)

Vesta "is not permitted to use the discovery process as a fishing expedition to try and resuscitate dismissed claims." *Bever v. CitiMortgage, Inc.*, No. 11-1584, 2014 U.S. Dist. LEXIS 67856, at *9-10 (E.D. Cal. May 15, 2014); *see also In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-1737, 2014 U.S. Dist. LEXIS 108505, at *4 (S.D. Cal. Aug. 6, 2014) ("Plaintiffs are not entitled to discovery relating only to dismissed claims."). And, indeed, Vesta has itself acknowledged that it is not entitled to take discovery on the antitrust claims, but nonetheless asserts that the information is relevant for a reason that Vesta has yet to articulate. (Costley Decl., Ex. G at 2.)[4]

Because Vesta cannot plead a plausible factual basis for its supposition that Sprint shared Vesta's confidential information with Amdocs, and because the vast majority of the documents Vesta seeks would not be relevant even if it had, this Motion should be granted.

## III. THE SUBPOENA VIOLATES THE NOVEMBER 30TH ORDER

Vesta's Subpoena also should be quashed because it is an improper attempt to avoid the Court's November 30th Order. Vesta served the Initial Subpoena *the day after* the Court set oral

[4] Vesta has admitted that "the parties have no discovery obligations with respect to the antitrust claims." (Costley Decl., Ex. G at 2.)

argument on Amdocs's motion to compel and for a protective order, and set the time for production *one hour before the hearing*. Instead of producing documents, Sprint served objections. On November 24, Vesta served the operative Subpoena, which corrected a procedural error in the Initial Subpoena and moved the date of production to December 15, 2015. On November 30, the Court issued its Order excusing Amdocs from responding to any discovery regarding Solution Methods until Vesta identifies them with particularity. Despite this Order, Vesta has continued to seek discovery from Sprint. Vesta's efforts are improper for several reasons.

*First*, Vesta has failed to make reasonable efforts to obtain the information it seeks from parties to the lawsuit (or to produce the documents it seeks itself). *See Moon*, 232 F.R.D. at 638 (quashing subpoena where plaintiffs failed to show any effort to obtain documents from defendant). Vesta has served 85 document requests on Amdocs; only three of these requests relate to Sprint in any way, and *none* of them seeks the range of discovery Vesta has demanded in its Subpoena. (*See* Costley Decl., Ex. A, Request No. 31 (documents showing when Amdocs offered its payment solution to MetroPCS, Sprint, and T-Mobile), No. 35 (documents relating to development of a payment solution for MetroPCS and Sprint), and No. 51 (communications between Amdocs and Sprint regarding the payment solution).)[5] This disparity suggests that Vesta is trying to exploit Sprint's lack of familiarity with the case to fish for documents about subjects—*i.e.*, Vesta's speculation that Sprint shared Vesta's Solution Methods with Amdocs, and the already-dismissed antitrust claims—that are not a proper subject for discovery. In addition, as this Court has already held, *Vesta* is itself the best source of information regarding its

5 Amdocs in no way concedes that Vesta is entitled to such information from Amdocs. Further, since these categories of documents have no apparent relationship to Vesta's Risk Information claims, any discovery regarding them is stayed until Vesta identifies its Solution Methods with reasonable particularity.

trade secret claims, "because such disclosures took place in a discreet number of joint meetings and exchanges of information over a defined time frame." (Dkt. No. 141 at 11 (finding that "Vesta should know exactly what trade secrets were shared with Defendants").)

*Second*, and relatedly, Vesta's Subpoena conflicts with the Court's November 30th Order. In the order, the Court was "persuaded by the reasoning in cases requiring pre-discovery disclosure of trade secrets" (Dkt. No. 141 at 12), and found that Vesta had failed "to identify its alleged trade secrets with reasonable particularity" as required by those cases (*id.* at 15). Based on these findings, the Court held that Amdocs was excused "from responding to any discovery related to the 'Confidential Solutions Methods,' until such time as Plaintiff identifies with reasonable particularity the trade secrets it allegedly disclosed to Defendants." (*Id.* at 3.) This reasoning applies with even greater force to discovery sought from a third-party.[6]

*Third*, Vesta's Subpoena seeks almost unlimited discovery. *See* Fed. R. Civ. Proc. 45(d)(1); *Theofel*, 359 F.3d at 1074. Vesta has not imposed any time limits on its Subpoena. *See Moon*, 232 F.R.D. at 637 (quashing subpoena that sought information for period of ten years or greater). In addition, sixteen of Vesta's nineteen requests seek "all documents." *See NML Capital, Ltd. v. Republic of Argentina*, No. 14-492, 2015 U.S. Dist. LEXIS 34043, at *39 (D.

---

[6] To the extent that any of the categories in the Subpoena have any relevance at all to any aspect of this case (which is certainly far from clear), it is to the Solution Methods counts. Vesta has asserted that the documents requested in the Subpoena are relevant because Sprint shared information about Vesta's "payment solution technology" with Amdocs. "Payment solution technology" falls within Vesta's definition of Solution Methods, *i.e.*, "information about the architecture and design of the solutions, including proprietary payment solution routines, methodologies, and processes." (FAC ¶ 22). This is consistent with Vesta's acknowledgement that it shared its Risk Information ("detailed statistical information about fraud in the payment market") only as part of the acquisition process. (*See* FAC ¶¶ 25, 32, 44, 45-50.) In addition, Vesta has seemingly acknowledged that the Court's November 30th Order relates to its Subpoena because it provided Sprint's counsel with a copy of it (though Vesta did not extend Sprint's deadline to respond to the Subpoena until after Vesta identifies its Solution Methods with reasonable particularity, nor did it inform Sprint that its obligations to respond to the Subpoena were suspended until Vesta complied with this Court's order).

Nev. Mar. 16, 2015) ("[S]ubpoenas requesting 'all documents' are routinely deemed unduly burdensome."). Vesta also has made no effort to tailor the requests to avoid disclosure of Sprint's or Amdocs's proprietary or confidential business information or trade secrets. *See* Fed. R. Civ. Proc. 45(d)(3)(B)(i); *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-3393, 2014 U.S. Dist. LEXIS 165231, at *5-6 (N.D. Cal. Nov. 25, 2014) (denying defendants' motion to compel where documents sought were "not narrowly tailored to furnish [the] information").

Any of these issues would, standing alone, be a sufficient basis to quash the Subpoena.

## CONCLUSION

For the foregoing reasons, Amdocs respectfully requests that the Court quash Vesta's Subpoena to Sprint or, alternatively, enter a protective order excusing Sprint from any obligation to respond to the Subpoena.

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.

KATTEN MUCHIN ROSENMAN LLP

By: /s Christina L. Costley

CHRISTINA L. COSTLEY (*Pro Hac Vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
christina.costley@kattenlaw.com

*Attorneys for Defendants*