**I. Neel Chatterjee** (*pro hac vice*)
nchatterjee@orrick.com
**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650.614.7400

Attorneys for Plaintiff
Vesta Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VESTA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AMDOCS MANAGEMENT LIMITED; AMDOCS, INC.,<br><br>Defendants. | Case No. 3:14-cv-01142-HZ<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH SUBPOENA TO NON-PARTY SPRINT CORPORATION OR, ALTERNATIVELY, FOR A PROTECTIVE ORDER**<br><br>ORAL ARGUMENT REQUESTED |

# I. INTRODUCTION

Plaintiff Vesta Corporation ("Vesta") respectfully requests that the Court deny Defendants Amdocs Management Limited and Amdocs, Inc.'s ("Amdocs") motion to quash Vesta's subpoena to third party Sprint/United Management, Inc. ("Sprint") or, in the alternative, for a protective order. The Court should deny Amdocs' motion for at least the following reasons:

(1) Sprint has already agreed to produce responsive documents. Prior to Amdocs' interference, Vesta and Sprint had met and conferred regarding the subpoena, and Vesta made substantial efforts to minimize the burden on Sprint as a non-party to this case. As a result of the cooperation between Vesta and Sprint, Sprint agreed to produce an initial set of responsive documents by December 15, 2015, a point Amdocs fails to mention in its motion. Given Sprint's prior agreement, neither Sprint nor Amdocs can demonstrate any undue burden, oppression, or other harm to Sprint that the Court needs to protect.[1] *See* Fed. R. Civ. P. 26(c)(1); Fed. R. Civ. P. 45(d)(3).

(2) The discovery Vesta seeks from Sprint is relevant. Vesta alleges in the Second Amended Complaint that "Amdocs is actively marketing its copycat payment solution to other potential buyers" (Dkt. No. 147 ("SAC") ¶ 48), and that, "unless [Amdocs] ceases its conduct, after April 2015, Amdocs is likely to displace Vesta and take over payment processing services for all of Sprint's prepaid brands (Sprint, boostmobile, and Virgin mobile)" (*id.* ¶ 68). The subpoena seeks discovery relating to these allegations, including, for example, information relating to Sprint's decision to displace Vesta and instead go with Amdocs. Given the

[1] On December 15, 2015, Sprint filed a notice of joinder to Amdocs' motion. *See* Dkt. No. 155. Sprint did not meet and confer with Vesta before filing this notice of joinder, nor did Sprint ever retract its prior agreement to produce documents. Vesta has not received any substantive communications from Sprint regarding the subpoena since November 23, 2015.

allegations in the operative complaint, there can be little question that the subpoena seeks relevant discovery and is likely to lead to the discovery of admissible evidence.

(3) Vesta's subpoena does not violate the Court's November 30 order. Amdocs failed to meet and confer with Vesta regarding the impact of the Court's order on the Sprint subpoena and instead simply filed its motion. Vesta has agreed with Sprint to suspend production pending resolution of the trade secrets identification dispute. This issue is moot.

Accordingly, Vesta respectfully requests that the Court deny Amdocs' motion.

## II. STATEMENT OF FACTS

### A. Vesta's Allegations Relating To Sprint

On April 7, 2015, Vesta filed its First Amended Complaint against Amdocs, with causes of action for, *inter alia*, trade secrets misappropriation and breach of contract. *See* Dkt. No. 52. On December 9, 2015, pursuant to the Court's order (*see* Dkt. No. 146), Vesta filed a corrected Second Amended Complaint that addressed an error in the earlier complaint and also removed the antitrust claims that the Court had dismissed from the case. *See* Dkt. No. 147. Vesta did not add any new allegations relating to Sprint in the Second Amended Complaint.

In the operative Second Amended Complaint, Vesta details the illicit actions that Amdocs took over the course of its business relationship with Vesta in order to steal trade secrets relating to Vesta's proprietary payment solution technology, which "Vesta [] spent nearly 20 years, and over $60 million dollars, to develop …." SAC ¶ 44. The actions that Amdocs took to induce Vesta to provide its confidential and valuable information included: (1) forming a strategic relationship with Vesta (SAC ¶¶ 11-12); (2) inducing Vesta, under false pretenses, to enter broad non-disclosure agreements (*id.* ¶¶ 13-21); (3) asking Vesta "to jointly pitch a Vesta-based payment solution proposal for MetroPCS" that ultimately was not successful (*id.* ¶¶ 26-35); and (4) engaging in phony acquisition discussions even though Amdocs knew it would never purchase Vesta (*id.* ¶¶ 36-42).

Vesta learned in July 2013 that Amdocs' duplicity had culminated in "Amdocs [using] Vesta's proprietary information to create a copycat payments solution" and selling "its payments solution to MetroPCS." SAC ¶ 43. Further, "Amdocs [was] actively marketing its copycat payment solution to other potential buyers." *Id.* ¶ 48. As alleged, such "other potential buyers" expressly included Sprint, a long-time Vesta customer. *Id.* ¶¶ 66-68. Amdocs' actions resulted in Sprint indicating in or about June 2014 that it had "selected Amdocs to replace Vesta as Sprint's vendor for prepaid wireless payment processing." *Id.* ¶ 67. At that time, "unless [Amdocs] cease[d] its conduct, after April 2015, Amdocs [was] likely to displace Vesta and take over payment processing services for all of Sprint's prepaid brands (Sprint, boostmobile, and Virgin mobile)." *Id.* ¶ 68. Vesta has subsequently lost Sprint as a customer to Amdocs, which has contributed to the damages that Vesta has suffered. *See* Ex. 1 at 63 (Vesta Supp. Resp. to Amdocs Interrog. No. 33). Amdocs' actions as related to creating and selling a payment solution to Sprint have always been relevant to this case.

**B. <u>Vesta's Meet And Confer With Sprint</u>**

In an effort to obtain discovery relevant to its claims, Vesta served its initial third-party subpoena on Sprint on October 16, 2015. *See* Dkt. No. 144-2 (10/16/15 subpoena). Sprint responded to Vesta's subpoena with a letter on October 28, 2015, noting, among other things, that the specific entities identified in the subpoena were unlikely to have responsive documents and that it had concerns producing confidential information without a protective order. *See* Dkt. No. 144-3 (10/28/15 letter from S. Bundy to N. Chatterjee). On November 9, 2015, Vesta provided a letter response to Sprint that: (1) identified the specific entities it believed would have responsive information; (2) attached the Court's protective order to alleviate Sprint's confidentiality concerns; and (3) requested a meet and confer to address any other concerns. *See* Ex. 2 (11/9/15 letter from A. Ong to S. Bundy).[2]

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Andrew S. Ong ("Ong Decl.") submitted herewith.

After several email exchanges, Vesta met and conferred telephonically with Sprint's in-house and outside counsel on November 23, 2015. *See* Ong Decl. ¶ 4. During the call, Vesta expressly noted that it was not seeking to create an undue burden on Sprint as a non-party to the case and that it was willing to work with Sprint to make collecting documents a manageable process. *Id.* Sprint was also cooperative on the call, indicating that it was willing to produce responsive documents so long as Vesta served an amended subpoena directed to the proper entity, Sprint/United Management Company, Inc., and with an extended production date of December 15, 2015. *Id.* Sprint further identified the general categories of documents that it intended to produce as part of its initial production. *Id.* Per Sprint's request, Vesta served an amended subpoena on November 24, 2015. *Id.* ¶ 5; Dkt. No. 144-9 (11/24/15 subpoena).

The Court subsequently issued its order on Amdocs' motion for a protective order on November 30, 2015. *See* Dkt. No. 141. That same day, Vesta provided a courtesy copy of the Court's order to Sprint. *See* Ex. 3 (11/30/15 email from A. Ong to Sprint counsel). Vesta thereafter informed Sprint on December 3, 2015 that, in light of the Court's order, Vesta believed it was appropriate to suspend Sprint's obligations under the subpoena at least until Vesta supplemented its trade secrets identification on December 21. *See* Ex. 4 (12/3/15 email from A. Ong to Sprint counsel). Sprint served its objections on December 15, 2015. *See* Ex. 5 (12/15/15 objections). Sprint also filed a notice of joinder to Amdocs' motion on December 15, 2015. *See* Dkt. No. 155. This filing came as a surprise to Vesta given Sprint's prior agreement to produce documents. Indeed, Sprint never sought to meet and confer with Vesta before filing its motion and never indicated that it was no longer agreeing to produce documents. *See* Ong Decl. ¶ 8.

**C. <u>Vesta's Meet And Confer With Amdocs</u>**

Amdocs sent its own letter regarding the Sprint subpoena on October 30, 2015. *See* Dkt. No. 144-4 (10/30/15 letter from C. Costley to N. Chatterjee). Amdocs demanded that Vesta withdraw the Sprint subpoena because, according to Amdocs, the requested discovery was not relevant and was improper in light of Amdocs' then-pending motion for a protective order

relating to Vesta's identification of trade secrets. *Id.* Vesta provided a written response on November 9, 2015, noting that the discovery is relevant to Vesta's claims in this case and that Amdocs has no standing to object to the subpoena. *See* Dkt. No. 144-6 (11/9/15 letter from A. Ong to C. Costley).

The parties met and conferred on November 18, 2015. *See* Ong Decl. ¶ 9. During the call, Vesta noted that a party typically does not have standing to quash a third-party subpoena absent an identified right or privilege, but Amdocs never sought to address the issue. *Id.* The parties were unable to reach any resolution regarding Vesta's subpoena and Amdocs' proposed motion. *Id.* Amdocs did indicate that it would reconsider filing a motion to quash if Vesta agreed to amend its complaint; Amdocs noted, however, that it would oppose any attempt by Vesta to amend the complaint. *Id.* ¶ 10. Vesta requested a few days to consider Amdocs' proposal, during which time it agreed not to take any actions to compel Sprint to comply with the subpoena. *Id.* Vesta did not agree, however, that Sprint's obligations under the subpoena would be completely stayed. *Id.*; *see also* Ex. 6 (11/25/15 email from A. Ong to C. Costley). Indeed, prior to the meet and confer with Amdocs, Vesta had already scheduled the November 23 call with Sprint to discuss the subpoena. *See* Ong Decl. ¶ 10.

After learning that Vesta had spoken to Sprint and that Sprint had agreed to produce documents by December 15, Amdocs indicated on November 30 that it would move forward with a motion to quash. *See* Dkt. No. 144-10 (11/30/15 email from C. Costley to A. Ong). Amdocs proceeded to file its motion without ever contacting Vesta to discuss the impact of the Court's November 30 order on Sprint's obligations under the subpoena. *See* Ong Decl. ¶ 11.

## III. ARGUMENT

### A. Sprint Has Already Agreed To Produce Documents.

Neither Amdocs nor Sprint can meet the burden necessary to quash the subpoena or to get a protective order.[3] Federal Rule of Civil Procedure 45(d)(3) provides, in part, that a court upon motion must quash or modify a subpoena that "subjects a person to undue burden." Federal Rule of Civil Procedure 26(c)(1) similarly permits "[a] party or any person from whom discovery is sought" to move for a protective order. Upon such motion, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." *Id.* Amdocs and Sprint seek relief from this Court by arguing that "Vesta's Subpoena is unduly burdensome on Sprint …." Mot. at 2.

This position, however, is meritless because there is no undue burden or other harm to Sprint. Sprint already agreed to produce documents after a detailed meet and confer with Vesta, even prior to Amdocs filing its motion. *See* Ong Decl. ¶ 4. Amdocs knew this fact but did not mention it in the motion; Sprint also failed to acknowledge its own prior agreement in the notice of joinder. Given Sprint's prior agreement, there is no "annoyance, embarrassment, oppression, or undue burden or expense" to Sprint. *See* Fed. R. Civ. P. 26(c); *see also* Fed. R. Civ. P. 45(d)(3). The Court should deny the motion.

### B. The Discovery From Sprint Is Relevant To Vesta's Claims.

The discovery that Vesta seeks from Sprint is directly relevant to Vesta's claims as pled in the Second Amended Complaint, and Vesta is therefore entitled to seek such discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that

---

[3] Amdocs itself has no standing to quash the subpoena. Courts in this District recognize that a party generally has no standing under Rule 45 to quash a subpoena issued to a third party unless the party can establish a personal right or privilege in the materials sought. *See, e.g.*, *Kadant Johnson Inc. v. D'Amico*, No. 3:12-MC-00126, 2012 WL 1576233, at *4 (D. Or. May 4, 2012); *Malbco Holdings, LLC v. Patel*, No. 6:14-CV-00947-PK, 2015 WL 4773202, at *2 (D. Or. Aug. 12, 2015). Amdocs' motion does not mention any purported right or privilege it has in the documents requested from Sprint.

is relevant to any party's claim or defense and proportional to the needs of the case ….").  To be clear, the discovery Vesta seeks from Sprint is not for purposes of prosecuting any antitrust claims, contrary to Amdocs' assertion.  *See* Memo. at 6.  Vesta has already filed a Second Amended Complaint that removes the antitrust allegations.  *See* Dkt. No. 147.  The remaining allegations, however, address Amdocs' activities that allowed Amdocs to develop a competing payment solution and to take Vesta's actual and potential customers, including MetroPCS and Sprint.  *See, e.g.*, SAC ¶¶ 43-48; 64-71; 80-86; 95-98; *see also* Section II.A, *supra*.

Amdocs argues that the requested Sprint discovery is irrelevant by attempting to construe narrowly the allegations in Vesta's complaint such that the only customer Vesta lost due to Amdocs' improper conduct is MetroPCS.  *See* Memo. at 5.  But Vesta's allegations are not so limited.  While MetroPCS was the first customer that Amdocs stole using Vesta's confidential information (*see* SAC ¶¶ 43-47), Vesta further alleges that "Amdocs is actively marketing its copycat payment solution to *other potential buyers*" (*id.* ¶ 48) (emphasis added), and that, "unless [Amdocs] ceases its conduct, after April 2015, Amdocs is likely to displace Vesta and take over payment processing services for all of Sprint's prepaid brands (Sprint, boostmobile, and Virgin mobile)" (*id.* ¶ 68).[4]  Indeed, Vesta has in fact lost Sprint as a customer to Amdocs since the filing of this action.

In light of these well-pled allegations, Vesta seeks discovery from Sprint that would relate to any improper actions leading to Amdocs acquiring Sprint as a customer.  For example:

[4] Amdocs apparently has taken the position that the only theory of relevance that Vesta has set forth with respect to Sprint is that "any information Sprint may have provided to Amdocs that relates to Amdocs' misappropriation of Vesta's trade secrets—relating specifically to payment solution technology—is relevant to this case, particularly given Sprint's prior long-standing relationship with, and intimate knowledge of, Vesta's payment solution technology."  Memo. at 4-5 (citing letter from Vesta).  While the Sprint discovery may be relevant for this reason, Vesta never intended this to be *the only* theory of relevance, and the allegations in the Second Amended Complaint make clear that such is not the case.

- Some requests seek information relating to Sprint's interactions with Amdocs and its selection of Amdocs' payment solution, which Vesta alleges was created from information stolen from Vesta. *See, e.g.*, Dkt. No. 144-9 at Request Nos. 4-8.
- Other requests seek information relating to Sprint's decision to terminate its agreement with Vesta, which again was a direct result of Amdocs' illegal activities. *See, e.g.*, *id.* at Request Nos. 9, 14, 15, 16.
- Two other requests seek information relating to customers' usage of Sprint's wireless services, which is relevant to the amount of damages suffered by Vesta after Amdocs took Sprint as a customer. *Id.* at Request Nos. 18-19.

In sum, the requested discovery is relevant to Vesta's claims. Vesta should thus be permitted to seek such discovery in light of the liberal standard under Federal Rules, and the Court should deny Amdocs' motion.

### C. <u>Vesta's Subpoena Does Not Violate The Court's November 30 Order.</u>

Amdocs lastly argues that Vesta's subpoena violates the Court's November 30 order because Vesta has not yet supplemented its identification of trade secrets. *See* Memo. at 7-9. Had Amdocs bothered to meet and confer on this issue with Vesta before filing its motion, the parties could easily have addressed this concern. Vesta has already informed Sprint that it need not produce documents at least until December 21, the date by which Vesta will supplement its trade secrets identification. *See* Ex. 4 (12/3/15 email from A. Ong to Sprint counsel). Amdocs' argument regarding the Court's order is therefore moot.

Amdocs makes two further arguments that do not appear to be related to the Court's November 30 order, but Vesta addresses them here for sake of completeness. *See* Memo. at 8-10. Amdocs first argues that Vesta has failed to make reasonable efforts to obtain information from the parties to the case (*i.e.*, Amdocs). *Id.* at 8. This is simply untrue. As Amdocs concedes in its motion, Vesta has already served document requests relating to Sprint and will pursue this discovery at the appropriate time. *Id.* (citing Dkt. No. 144-1 at Request Nos. 31, 35, 51). That

the Sprint subpoena is not identical in scope to Vesta's requests to Amdocs is unremarkable—and certainly not evidence of gamesmanship, as Amdocs suggests—given the fact that many of the Sprint requests seek documents that are likely to be in Sprint's sole possession. *See, e.g.*, Dkt. No. 144-9 at Request Nos. 7, 9, 15 (documents relating to Sprint's decision to terminate its agreement with Vesta and to move to Amdocs); Request No. 4 (covering internal documents relating to Sprint's efforts to use, develop, or assist Amdocs in developing a payment solution).

Amdocs also argues that the subpoena should be quashed as unduly burdensome because it "seeks almost unlimited discovery." Memo. at 9. This argument completely ignores the fact that Vesta has negotiated in good faith with Sprint to narrowly tailor the subpoena and to limit the burden on non-party Sprint and that Sprint itself had previously agreed to produce documents as a result of such negotiations. *See* Section II.B, *supra*.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Vesta respectfully requests that the Court deny Amdocs' motion to quash Vesta's subpoena.

DATED: December 18, 2015

By: /s/ *I. Neel Chatterjee*

**I. Neel Chatterjee** (*pro hac vice*)
nchatterjee@orrick.com
**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650.614.7400
Facsimile: 650.614.7401

Attorneys for Plaintiff Vesta Corporation