IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VESTA CORPORATION,

            Plaintiff,

    v.

AMDOCS MANAGEMENT LIMITED and AMDOCS, INC.,

            Defendants.

No. 3:14-cv-1142-HZ

OPINION & ORDER

Erick J. Haynie
Daniel T. Keese
Joanna T. Perini-Abbott
Stephen English
Julia E. Markley
Meredith Price
PERKINS COIE, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209

Indra Neel Chatterjee
Andrew Ong
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

    Attorneys for Plaintiff

1 – OPINION & ORDER

Andrew G. Klevorn
Bruce G. Vanyo
Yonaton M. Rosenzweig
Christina Lucen Costley
KATTEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

Kristin J. Achterhof
Meegan I. Maczek
Richard H. Zelichov
KATTEN MUCHIN ROSENMAN, LLP
525 West Monroe Street
Chicago, IL 60661

Joshua L. Ross
Robert A. Shlachter
Timothy S. DeJong
STOLL STOLL BERNE LOKTING & SHLACHTER, PC
209 SW Oak Street, Fifth Floor
Portland, OR 97204

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Vesta Corporation brings this motion to compel Defendants Amdocs Management Limited and Amdocs, Inc. to conduct discovery related to Plaintiff's Confidential Solutions Methods. Defendants contend they are not required to respond because Plaintiff has failed to identify with reasonable particularity the trade secrets that it allegedly disclosed to Defendants. In addition, Defendants move for sanctions due to Plaintiff's failure to comply with this Court's order to identify its trade secrets with reasonable particularity. For the reasons that follow, the Court denies both motions.

## STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

2 – OPINION & ORDER

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit." It specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

- (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
- (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
- (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

In addition, Rule 26 provides that the court may, for good cause, issue an order to protect a party or person from oppression or undue burden, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Federal Civil Procedure Rule 37(a)(3)(B)(iii) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection. "

## DISCUSSION

Plaintiff brings this motion to compel. The parties' dispute centers on whether Plaintiff has identified with reasonable particularity the "Confidential Solutions Methods" trade secrets that it allegedly disclosed to Defendants. Until Plaintiff does so, Defendants are not required to

3 – OPINION & ORDER

respond to any discovery related to the Confidential Solutions Methods. See Opinion & Order, November 30, 2015, ECF 141 (hereinafter, "O&O") (ordering Plaintiff to amend its responses to Defendants' Interrogatory Nos. 1, 15, and 16). Defendants oppose the motion and, in addition, move for (1) an evidentiary sanction striking Plaintiff's response to Interrogatory No. 16 and entering certain preclusive orders, or, alternatively (2) an order compelling Plaintiff to describe anything unique in its responses.

The adequacy of Plaintiff's identification of its trade secrets has been the subject of extensive debate in this case. Because the parties are already familiar with the arguments and this Court's decisions up until this point, the Court does not repeat the background information and, instead, addresses only the merits of the motions currently at issue.

I.    Plaintiff's Motion to Compel

Plaintiff is required to identify the trade secrets it claims Defendants misappropriated with reasonable particularity before Defendants are required to produce their confidential information and trade secrets to Plaintiff in discovery.

   a.    Reasonable Particularity Standard

The Ninth Circuit has not defined "reasonable particularity" in the context of identification of trade secrets. However, in a prior opinion, this Court adopted the standard outlined in BioD, LLC v. Amnio Tech., LLC, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014). O&O at 9. This standard was also adopted by the Hon. Michael Simon in two 2015 cases. See Nike, Inc. v. Enter Play Sports, Inc., 305 F.R.D. 642, 645 (D. Or. 2015), and St. Jude Med. S.C., Inc. v. Janssen-Counotte, 305 F.R.D. 630 (D. Or. 2015) reconsideration denied, No. 3:15-MC-00099-SI, 2015 WL 2359568 (D. Or. May 18, 2015).

In BioD, "reasonable particularity" is defined as:

> a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.

2014 WL 3864658, at *5.

Plaintiff applies the BioD definition to argue that it has described its trade secrets with reasonable particularity because Defendants have sufficient notice of the nature of Plaintiff's claims and sufficient disclosures to determine the relevance of the requested discovery. Pl.'s Mot. Compel 5-6, ECF 177. However, Plaintiff fails to acknowledge that this Court's prior opinion provided additional guidance, beyond BioD, about what satisfies the reasonable particularity standard. For example, this Court noted that requiring Plaintiff to make pre-discovery disclosures of its alleged misappropriated trade secrets is supported by strong practical and policy reasons, such as (1) assisting this Court in determining relevancy and the scope of discovery; (2) preventing a "fishing expedition" into Defendants' trade secrets; and, (3) preventing needless exposure of the defendant's trade secrets. O&O at 10-11.

In addition, this Court provided examples from numerous other court opinions to illustrate what is required to satisfy the standard. "It is insufficient to describe the trade secrets by generic category" and, instead, the party "must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data, . . . and must also describe with reasonable particularity [those trade secrets] involving business methods, know-how, machines, manufacturing process and procedure, marketing information, pricing data, product designs and manufacturing information and supplier and vendor lists." Id. at 13. It is insufficient for Plaintiff to merely reveal the "end results of, or functions performed by, the claimed trade secrets." Id. at 14.

As to a "compilation trade secret" claim, Plaintiff may not allege that a particular method or process is a trade secret at this stage of the litigation "without identifying the steps in the process and explaining how those steps make [the] method or process unique." Id. at 15 (quoting BioD, 2014 WL 3864658 at *5). As the BioD court stated:

> Plaintiffs must explain how the combination of much of what appears to be generally known information can constitute a trade secret. It is simply not sufficient for plaintiffs to identify a trade secret as a "method" without some explanation of why that "method" could be considered a legally protectable trade secret. Plaintiffs must provide some basis for their contention that their methods and processes are unique and thus legally protectable.

Id.

### b. Plaintiff's Supplemental Response and the Reasonable Particularity Standard

At issue in this dispute is whether Plaintiff's response to Defendants' Interrogatory No. 16 satisfies the reasonable particularity standard. Each party submits a declaration from an expert in support of their argument. The Court concludes that Plaintiff's response does not satisfy the reasonable particularity standard.

Defendants' Interrogatory No. 16 states:

> Identify with precision and specificity (by document, file, and/or line of computer code, as appropriate) all of YOUR trade secrets or other confidential information that YOU disclosed to AMDOCS comprising "detailed architectural drawings and sequence flow diagrams that depict, on a step-by-step basis, how Vesta would design and implement its payment solution for MetroPCS", as alleged in paragraph 32 of the Complaint.

Price Decl. Ex. 1, at 19, ECF 179. Plaintiff's initial response to this interrogatory did not identify any trade secrets with reasonable particularity. Pursuant to this Court's order, Plaintiff submitted a "First Supplemental Response" on December 21, 2015.

Plaintiff's First Supplemental Response divides its alleged confidential and trade information into two broad categories, "Technical Diagrams, Documents and Schematics," and "Methods, Procedures and Know-How." Price Decl. Ex. 1, ECF 179. Plaintiff further divides

each category into multiple sub-categories. The Court addresses each category and sub-category in turn.

>  i. Technical Diagrams, Documents and Schematics

Plaintiff divides this section into the following sub-categories:

(A)   Executive Presentation Materials
(B)   Scope of Services White Paper
(C)   Architectural Drawings
(D)   Sequence Flow Diagrams
(E)   API Protocols
(F)   Best Practices Scorecard and Recommendations
(G)   Other Technical Documents (including Single-Sign on Code and Tokenization Solution and Code)

Id. Plaintiff submits the declaration of Professor Steven R. Kursh, who reviewed the response to the interrogatory as well as Plaintiff's document production. Kursh Decl., ECF 180. Mr. Kursh sets out a chart where he identifies specific documents that correspond to each of the categories of information described by Plaintiff. Id. at 8. Mr. Kursh declares that "there should be little question that Amdocs is on notice of the nature of Vesta's claim that these documents contain confidential and trade secret information. A knowledgeable person in the field should also be able to determine the relevancy of any discovery bearing on these specifically-identified documents by reviewing the subject matter of these documents." Id. at 9.

>  1. Executive Presentation Materials

Plaintiff contends that it provided documents and information to Defendants in preparation of sales presentation documents for use by the parties in making a joint pitch to MetroPCS. Price Decl. Ex. 1 at 29. The information included "key business metrics" and "executive-level descriptions of the solution technology and general information flow." Id. Plaintiff also provided technical input to Defendants to prepare these documents.

The Court agrees with Defendants' expert, Professor Michael Shamos, who declares that "key business metrics" and "executive-level descriptions" are not sufficiently particular, without a disclosure as to what exactly the metrics and descriptions are. Shamos Decl. 9-10, ECF 183. The materials that Mr. Kursh identifies as connected to this sub-category are primarily slides that will be used in a sales presentation and emails between the parties' representatives regarding the preparation and content of the slides. It is not clear which trade secrets, if any, Plaintiff identifies. Plaintiff's disclosures appear, at best, to reveal the functions performed by the trade secrets, rather than the secrets themselves.

2. Scope of Services White Paper

Plaintiff prepared a white paper and provided it to Defendants on or about September 14, 2010. Kursh Decl. Ex. B at 3, ECF 180-12. The paper discusses how Plaintiff recommends building the MetroPCS payment solution, the solution's platform and network requirements, and how the payments platform will interface with the "Centralized Payments Repository." The paper also contains diagrams of the proposed system's architecture. Plaintiff's expert, Mr. Kursh, declares that the white paper contains information that is "commercially valuable and also provides particularity regarding several of Vesta's asserted trade secrets." Kursh Decl. 15. In addition, Mr. Kursh declares that much of the functionality described relates to several of Plaintiff's alleged conceptual trade secrets. Id. As an example, Mr. Kursh points to paragraphs that describe the actions needed to enroll or dis-enroll a customer in Auto-Pay. Id. at 17.

Defendants' expert, Mr. Shamos, analyzes the white paper and concludes that it does not contain trade secrets. Mr. Shamos addresses each of the topics within the white paper and declares that they were already well-known in the industry and, thus, could not be trade secrets.

This is a closer call than the executive presentation materials. The white paper contains much more detailed information and explains the technology that Plaintiff would use to develop the MetroPCS payments solution. Mr. Shamos primarily disputes whether or not the identified information constitutes a trade secret, rather than contending that he cannot determine what alleged trade secrets Plaintiff identifies. As Plaintiff notes, the ultimate question of whether an alleged trade secret is, in fact, a trade secret is different than whether Plaintiff identifies the alleged trade secret with reasonable particularity. See, e.g., StorageCraft Tech. Corp. v. Symantec Corp., No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah, Jan. 16, 2009) ("The procedures for challenging the merits of a trade secret claim prior to trial are set out in Rules 12 and 56 of the Federal Rules of Civil Procedure and are not properly challenged under discovery rules, including the requirement that the trade secret be identified with particularity."). Accordingly, the Court concludes at this point that, as to the white paper, Plaintiff is not required to disclose any trade secrets with further particularity.

### 3.  Architectural Drawings

Plaintiff identifies architectural drawings of Plaintiff's payment solution for MetroPCS and Boost Mobile that it disclosed to Defendants. Price Decl. Ex. 1 at 30-31. Plaintiff also contends that it provided Defendants with "oral discussions and explanations" of the concepts set forth in the architectural drawings.

Mr. Kursh declares that such drawings "show the technical design for how to provide the functionality specified in the sequence flow diagrams." Kursh Decl. at 14. According to Mr. Kursh, the drawings provide a road map for a skilled person to create functional requirements documents needed to create a working software application. Id.

9 – OPINION & ORDER

However, Mr. Kursh does not identify what exactly are the trade secrets allegedly contained within these drawings. As Mr. Shamos notes, without access to the oral discussions it is impossible to determine whether they contained any trade secrets. As to the drawings themselves, Mr. Kursh does not identify any trade secrets, but rather, describes what the drawings show. Id. Such a description is insufficient.

### 4. Sequence Flow Diagrams

Plaintiff contends that it disclosed to Defendants sequence flow diagrams for Plaintiff's proposed payment solution for MetroPCS. Price Decl. Ex. 1 at 31. According to Plaintiff, such diagrams "illustrate the technical solution for the sequence in which billing, payment and database components will communicate with one another in order to accomplish a payment and goods delivery transaction under particular payment scenarios in the pre-paid wireless market." Id. Mr. Kursh's declaration repeats his arguments made regarding the architectural drawings. As Mr. Shamos notes, Mr. Kursh does not say that any of the information contained in the diagrams "would not be readily ascertainable from the many such diagrams and processes well known to those skilled in the art." Shamos Decl. 24. The Court cannot tell from Plaintiff's disclosures or Mr. Kursh's declaration what trade secrets these diagrams allegedly contain.

### 5. API Protocols

Plaintiff asserts that it disclosed information relating to Plaintiff's application programming interface (API) protocols, which establish the methodology by which disparate elements of a computer system communicate and perform tasks. Plaintiff does not identify any specific APIs that it shared. This does not meet the reasonable particularity standard.

### 6. Best Practices Scorecard and Recommendations:

Plaintiff provided Defendants with a table entitled "Best Practices Scorecard and Recommendations." Kursh Decl. Ex. B at 15. The copy provided to this Court is illegible and, accordingly, the Court offers no opinion as to whether it is sufficiently particular to meet the standard.

### 7. Other Technical Documents

Plaintiff contends that it provided Defendants with technical information and source code for Plaintiff's single sign-on (SSO) solution, and its tokenization solution for Payment Card Information remediation. Plaintiff discloses a SSO technical guide and slides from presentations given about tokenization (a process by which the consumer's credit card or debit card account number is replaced with a surrogate or proxy value called a "token"). Kursh Decl. 8.

Mr. Shamos' discussion about these technical documents focuses on his contention that the information contained is not a trade secret. However, as discussed above, it is premature to determine the merits of Plaintiff's trade secret allegations. Plaintiff's SSO and tokenization solutions categories are identified with enough particularity.

### ii. Methods, Procedures and Know-How

Plaintiff also contends that it disclosed additional confidential and trade secret information that can be grouped into eight categories:

1. Omni-Channel Payment Processing Methods
2. Mobile User Fingerprinting
3. Channel-specific Credential and Authentication Management Strategies
4. Idempotent Order Management Protocols
5. Bifurcated Funds Capture
6. Edge-Case Management Strategies
7. Text-to-Pay Strategies
8. Proprietary Management Tools & Payments CRM System

These are the same categories of information that were included in Plaintiff's previous interrogatory response and which this Court found to be "broadly stated" and lacking in

11 – OPINION & ORDER

particularity. O&O at 14. Therefore, Plaintiff has added additional detail to each of the categories. However, Plaintiff's additional information still does not explain how the combination of each of these categories (that individually appear to be generally known information) is unique and constitutes a trade secret. Mr. Kursh does not provide an explanation either, stating only:

> The Disclosure states that "Vesta believes that its compilation of solution methods are unique in the industry" and that, by using its claimed solutions methods, Vesta has "positioned itself as a unique service provider in this space." Although my investigation in this matter is in its preliminary stages, it is my view that solely viewing the trade secrets asserted by Vesta in isolation misses what appears to me, based on my investigation to date, to be Vesta's synergistic combination of business and technical functionalities. It takes an array of functionalities to allow a system to integrate securely data from multiple sources and provide services across multiple channels, devices, and software systems.

Kursh Decl. ¶¶ 57-58.

Mr. Shamos points out that Mr. Kursh does not identify what exactly the synergy or combination is that converts these eight categories into a trade secret. Shamos Decl. 30. Mr. Shamos declares that these functions were "well known in the field" and that "there is no trade secret to picking and choosing among well-known techniques." Id. at 31.

After reviewing Plaintiff's descriptions of each category, the Court concludes that they largely describe what various systems and strategies are designed to do, not how they do it. While Plaintiff certainly added details to its supplemental response, its responses still suffer from the defects this Court identified in the November 30, 2015 Opinion & Order.

## II.    Defendants' Motion for Imposition of Sanctions

Defendants ask this Court for sanctions due to Plaintiff's failure, again, to identify its trade secrets with reasonable particularity. Defendants move for evidentiary sanctions which (1) strike Plaintiff's Initial and Supplemental Responses to Defendants' Interrogatory 16; (2)

preclude Plaintiff from introducing any evidence in this action supporting the contention or argument that any of its information, methods, processes, or combinations are unique; and (3) preclude Plaintiff from contending that specific documents, listed in Defendants' motion, contain any unique information, methods, processes, or combinations. Defs.' Mot. Sanctions 3-4, ECF 182. Alternatively, Defendants seek an order compelling Plaintiff to provide an explanation as to what in its Responses is unique from what is generally known in industry and limiting the case solely to the information that Plaintiff is able to identify without supplement or further description.

    The Court declines to award sanctions at this time. However, the Court directs Plaintiff to ensure compliance with this Opinion & Order, so that discovery can proceed and this case can move forward. Plaintiff must identify its trade secrets with reasonable particularity, as defined above. To this end, Plaintiff may want to provide a list, rather than narrative, of its trade secrets. Each item in the list should contain a specific reference to concrete documents, and should not contain general references to categories of information. In addition, rather than submit a second set of supplemental responses to Interrogatory 16, Plaintiff should amend its response to Interrogatory No. 16 and provide one complete response to Defendants. This will enable Defendants and the Court to look at a single response (rather than a response and two supplements) to find Plaintiff's trade secrets. To the extent that Plaintiff is arguing that its trade secret was a compilation trade secret, it must identify why its methods and processes are unique and thus legally protectable. Plaintiff must identify how it combined the alleged methods and processes into a unique comprehensive payments solution. Conclusory statements from an expert declarant are not enough. Finally, absent a future showing of good cause, Plaintiff's next submission will constitute a binding representation of its trade secrets.

## CONCLUSION

The Court denies Plaintiff's Motion to Compel [177] and Defendants' Motion for Imposition of Sanctions [182].

IT IS SO ORDERED.

Dated this \_\_\_1\_\_\_ day of \_\_\_April\_\_\_, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge