IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VESTA CORPORATION,

                        Plaintiff,

        v.

AMDOCS MANAGEMENT
LIMITED and AMDOCS, INC.,

                    Defendants.

No. 3:14-cv-1142-HZ

OPINION & ORDER

Erick J. Haynie
Daniel T. Keese
Joanna T. Perini-Abbott
Stephen English
Julia E. Markley
Meredith Price
PERKINS COIE, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209

Andrew Ong
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

        Attorneys for Plaintiff

Andrew G. Klevorn
Bruce G. Vanyo
Yonaton M. Rosenzweig
Christina Lucen Costley
KATTEN MUCHIN ROSENMAN, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

Kristin J. Achterhof
Meegan I. Maczek
Richard H. Zelichov
KATTEN MUCHIN ROSENMAN, LLP
525 West Monroe Street
Chicago, IL 60661

Joshua L. Ross
Robert A. Shlachter
Timothy S. DeJong
STOLL STOLL BERNE LOKTING & SHLACHTER, PC
209 SW Oak Street, Fifth Floor
Portland, OR 97204

  Attorneys for Defendants

HERNÁNDEZ, District Judge:

  Defendants Amdocs Management Limited and Amdocs, Inc. move to dismiss Plaintiff

Vesta Corporation's Third Amended Complaint. Defendants' motion is denied.

## FACTUAL BACKGROUND

  Plaintiff is an electronic payments solution and fraud prevention technology company.

TAC   Intro, ECF 222. Defendants are telephone billing software and services companies. Id.

Both Plaintiff and Defendants provide services to national and international mobile phone

network operators (MNOs). Id. at ¶¶ 7-8. Until recently, Defendants were not providers of

payment solutions. Id. at ¶ 10.

  Over the years, the parties have shared many of the same customers because MNOs

generally require both a payment solution and a billing platform to serve their end-users. Id. at ¶

2 – OPINION & ORDER

11. Beginning in 2009, the parties' relationship became more strategic. Id. at ¶ 12. The parties began working together to integrate their services and platforms in order to appeal to their shared customer base. Id. In addition, since 2010, Defendants twice approached Plaintiff about the possibility of Defendants acquiring Plaintiff. Id.

In the course of jointly collaborating on marketing and the possibility of acquisition, the parties shared detailed technical information with each other. Id. at ¶ 13. Plaintiff shared information with Defendants including proprietary information about Plaintiff's payment solution (the "Confidential Solutions Methods") and detailed financial, pricing, profitability, and statistical information about the prevalence of fraudulent payment transactions in the prepaid mobile device marketplace and how Plaintiff uses fraud data to price its payment solutions (the "Confidential Risk Information"). Id. at ¶¶ 20, 49.

Given the proprietary nature of such information, the parties entered into a series of confidentiality and non-disclosure agreements (the "NDAs"). Id. at ¶ 13. The first such NDA was signed on or about October 18, 2006. Id. at ¶ 14. Additional NDAs were entered into on June 24, 2009; March 31, 2010; and July 3, 2012. Id. In addition, every time one of Defendants' employees visited Plaintiff's headquarters, the employee had to sign-in and agree that all of the information acquired while on the premises was confidential and proprietary to Plaintiff. Id. ¶ 18 (describing the "Sign-In NDAs").

The first round of acquisition discussions took place in 2010. Id. at ¶ 25. In connection with these discussions, Plaintiff shared proprietary information, including detailed financial, pricing, and profitability data that had not been previously shared. Id. at ¶ 23. While the initial acquisition attempt fell apart in early April 2010, the parties continued to work together on jointly pitching Plaintiff's payment solution proposal to MetroPCS, a large MNO now affiliated

with T-Mobile. Id. at ¶ 27. The parties collaborated on a joint proposal providing for Plaintiff to supply a payment solution to MetroPCS that would be integrated into Defendants' billing platform, which MetroPCS was already using. Id. at ¶¶ 27, 29. Ultimately, the joint pitch to MetroPCS was not successful in adding Plaintiff's payment solution. Id. at ¶ 33.

In the spring of 2012, the parties again discussed the possibility of acquisition. Id. at ¶ 36. Once again, Plaintiff shared confidential information with Defendants but the acquisition effort was not successful. Id. at ¶¶ 40-41.

In July of 2013, Plaintiff learned that, during or shortly after the failed joint pitch to MetroPCS, Defendants sold MetroPCS an integrated payment solution and billing platform, thereby excluding Plaintiff from the sale. Id. at ¶ 34. Plaintiff claims that Defendants used Plaintiff's Confidential Solutions Methods and Confidential Risk Information to enter into an exclusive contract to become the provider of the payment processing solution for the prepaid wireless services of MetroPCS. Id. at ¶ 56. According to Plaintiff, there is no way that Defendants could have built a payment solution for MetroPCS in such a short time frame without using some significant portion of the confidential information provided to Defendants by Plaintiff in connection with the MetroPCS collaboration project. Id. at ¶ 35.

Plaintiff further alleges that Defendants are actively marketing their "copycat payment solution" to other potential buyers. Id. at ¶ 48. In March or April of 2014, Sprint (another MNO) indicated to Plaintiff that it was considering migrating its prepaid wireless payment processing solution from Plaintiff to an in-house solution. Id. at ¶ 58. However, in or about September 2014, Plaintiff learned from Sprint that Sprint had changed its decision and, instead, selected Defendants as Plaintiff's replacement. Id. at ¶¶ 58-59. According to Plaintiff, Defendants used their knowledge of Plaintiff's Confidential Solutions Methods and Confidential Risk Information

to displace Plaintiff and take over payment processing services for all of Sprint's prepaid brands (Sprint, Boost Mobile, Virgin Mobile, and Assurance). Id. at ¶ 60.

Plaintiff also alleges that Defendants used the confidential information they learned from Plaintiff in order to underbid Plaintiff in a proposal to provide a single payment processing solution for all of T-Mobile's wireless services. Id. at ¶ 61. While Plaintiff ultimately won the bid, it had to significantly lower its price to compete with Defendants and avoid being foreclosed from the marketplace. Id. at ¶ 63.

## PROCEDURAL BACKGROUND

Plaintiff filed this action in state court in June of 2014 and Defendants removed the case to federal court on July 17, 2014. Notice of Removal, ECF 1. The original complaint brought claims of breach of contract, theft of trade secrets, and fraud. Compl., ECF 1-1. On January 13, 2015, this Court dismissed Plaintiff's fraud claim. Opinion & Order, Jan. 13, 2015, ECF 42.

On April 7, 2015, Plaintiff filed a First Amended Complaint (FAC), in which Plaintiff made several changes to the original complaint. FAC, ECF 52.  Plaintiff omitted the fraud claim, added three antitrust claims, and made changes to the damages allegations. Id. In September of 2015, this Court granted Defendants' motion to dismiss Plaintiff's antitrust claims. Opinion & Order, Sept. 3, 2015, ECF 97.

On December 2, 2015, this Court granted Plaintiff leave to file an amended complaint to remove an inaccurate statement in the First Amended Complaint. Order, Dec. 2, 2015, ECF 146. In that order, the Court noted:

> Plaintiff's proposed complaint still includes claims which were dismissed by this Court on September 3, 2015. . . Plaintiff is directed to file an amended complaint which accurately reflects the claims that remain in this case within 7 days of this Order.

Id.

On December 9, 2015, Plaintiff filed a Second Amended Complaint (SAC) in which Plaintiff removed the inaccurate statement in ¶ 40 of the FAC and removed all of the antitrust claims. However, Plaintiff did not remove all of the factual allegations relating to the antitrust claims, which spurred Defendants to file a motion to strike allegations in the SAC. Mot. Strike, Dec. 21, 2015, ECF 159.

On December 29, 2015, the Court entered an order striking several paragraphs of the SAC because Plaintiff did not have leave of Court or consent of Defendants to convert its prior antitrust allegations into trade secret misappropriation allegations. Order, Dec. 29, 2015, ECF 162. Plaintiff was directed to file an amended complaint within 10 days that complied with the order and removed "factual allegations and claims that were included in Plaintiff's First Amended Complaint as part of Plaintiff's now-dismissed antitrust claims." Id. Plaintiff was further directed that, if it wished to amend its complaint in any other way, it must seek leave to amend pursuant to Rule 15. Id. Pursuant to the Court's order, Plaintiff filed a Corrected Second Amended Complaint (CSAC) on January 8, 2015. CSAC, ECF 166.

On April 1, 2014, the Court granted Plaintiff leave to amend to file a Third Amended Complaint (TAC). Plaintiff filed the TAC, which expands the allegations of damages to include lost profits and royalties stemming not only from the MetroPCS deal, but also Sprint and T-Mobile accounts. Defendants now move to dismiss the TAC to the extent it includes new allegations regarding Sprint, T-Mobile, and Vodafone.

## STANDARDS

### I.    Rule 10(b)

Where a plaintiff's claims are founded upon separate transactions or occurrences, they are properly "stated in a separate count ... [because] a separation facilitates the clear presentation of

the matters set forth." <u>Bautista v. Los Angeles Cty.</u>, 216 F.3d 837, 840-41 (9th Cir. 2000) (quoting Fed. R. Civ. P. 10(b) and citing James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 10.03(2)(a) (3d ed. 1997)). "Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." Moore, <u>supra</u>, § 10.03 (2)(a). "Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation." <u>Id.</u> (citing 5 Charles Alan Wright & Arthur R. Miller, <u>5A Federal Practice and Procedure</u> § 1324 (3d ed.)).

"In such cases, separate counts permit pleadings to serve their intended purpose to frame the issue and provide the basis for informed pretrial proceedings." <u>Id.</u> "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." <u>Id.</u> (quoting <u>Anderson v. District Bd. of Trustees</u>, 77 F.3d 364, 367 (11th Cir. 1996)).

## II.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." <u>Am. Family Ass'n, Inc. v. City & Cnty. of S.F.</u>, 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. <u>See</u> <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of

factual allegations.") (internal quotation marks, citation, and alterations omitted). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" <u>Id.</u> (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" <u>Id.</u> at 679.

## III.    Rule 12(b)(1)

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A motion to compel arbitration is appropriately raised pursuant to Rule 12(b)(1). <u>See</u> <u>Geographic Expeditions. Inc. v. Estate of Lhotka ex rel. Lhotka</u>, 599 F.3d 1102, 1104 (9th Cir. 2010). In considering a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes. <u>Robinson v. United States</u>, 586 F.3d 683, 685 (9th Cir. 2009).

## DISCUSSION

Defendants argue that this Court should dismiss the TAC because (1) the TAC fails to comply with Federal Rule of Civil Procedure 10(b); (2) the TAC fails to state a claim for breach of contract or theft of trade secrets in connection with the parties' dealings with Sprint and T-Mobile; and (3) Plaintiff's allegations regarding Sprint, T-Mobile, and Vodafone are subject to arbitration. For the reasons that follow, Defendants' arguments are unavailing.

Before delving into the specifics of each of Defendants' arguments, the Court notes a fundamental difference between how Defendants and this Court characterize Plaintiff's TAC. Defendant contends that Plaintiff has added "new claims" related to Sprint, T-Mobile, and Vodafone. Defs.' Mot. Dismiss 6, ECF 236. The Court disagrees. While Plaintiff's complaints have evolved over the course of almost two years of litigation, the essential claims of breach of contract and theft of trade secrets have remained the same. When the case was filed in June of 2014, Plaintiff alleged that Defendants had obtained confidential solution methods and risk information over the course of acquisition discussions and collaborating on a joint pitch to MetroPCS, and then had used such information, in violation of the parties' NDAs, to secure the MetroPCS business without involving Plaintiff. The complaint pled damages as to the lost revenue on the MetroPCS account as well as "other damages . . . including lost revenue on other accounts." Compl. ¶¶ 70, 77, 86, 97, ECF 8.

During the course of litigation, the business dealings with Sprint and T-Mobile at issue in the present complaint developed. Now, Plaintiff adds allegations that Defendants used their knowledge of this confidential information to replace Plaintiff's provision of services to Sprint and to threaten Plaintiff's business with T-Mobile. Thus, Plaintiff contends that it has now suffered damages not only due to lost business with MetroPCS but also due to lost profits and royalties on the Sprint and T-Mobile accounts.

As this Court explained in its Opinion & Order granting Plaintiff leave to file the TAC, Plaintiff is now, for the first time, expressly seeking to include the Sprint and T-Mobile allegations as part of the breach of contract and theft of trade secrets claims. Opinion & Order, April 1, 2016, ECF 220. Plaintiff's additional allegations, however, are not "new claims." Instead, they expand the existing claims to encompass a wider range of behavior and, thus, potential damages.

Finally, Defendants assert that Plaintiff brings claims related to Vodafone. See Defs.' Mot. 6, ECF 236 ("Vesta's claims related to Sprint, T-Mobile, and Vodafone are subject to arbitration."). Vodafone is mentioned only once in the TAC as part of an allegation that "[a] substantial portion of the confidential information provided to Amdocs by Vesta was provided in connection with joint projects for specific MNO customers shared by Amdocs and Vesta, such as MetroPCS (as discussed further below), Vodafone, T-Mobile, and Boost Mobile." TAC ¶ 21. The TAC does not allege any damages suffered in connection with a Vodafone account. The Court does not find any plausible reading of the TAC under which it would conclude that Plaintiff brings independent claims as to Vodafone.

## I.    Rule 10(b)

Defendants ask the Court to dismiss the TAC pursuant to Federal Rule of Civil Procedure 10(b), which requires that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count," if doing so would promote clarity. Defendants contend that Plaintiff's TAC adds two additional transactions—Defendants' development of a payment solution for Sprint and Defendants' pitch to T-Mobile—without stating each transaction in a separate count within the TAC's claims. Defendants contend that the allegations "just appear out of nowhere in the middle of the Third Amended Complaint, thereby failing to provide Amdocs with fair notice as to what it allegedly did wrong in connection with Sprint and T-Mobile." Defs.' Mot. 12.

The Court agrees with Plaintiff that Defendants "invent[] confusion where there is none." Pl.'s Opp. 18, ECF 241. The TAC sets out two claims—breach of contract and theft of trade secrets. The essential allegations in the TAC remain the same as in all of the previous iterations of the complaint—Plaintiff alleges that Defendants misappropriated its confidential and proprietary information, in "direct breach of the 2009 NDA and/or the 2012 NDA." TAC ¶ 73(a), 80(a). As a result of Defendants' alleged breach and theft of trade secrets, Plaintiff suffered lost profits and royalties on various accounts, including MetroPCS, Sprint, and T-Mobile. Id. at ¶¶ 75, 82, 92, 104.

The Court finds the TAC sufficiently clear to frame the issue and put Defendants on notice as to the claims being brought against them. There is no need for Plaintiff to further separate the claims.

## II.    Rule 12(b)(6)

Defendants argue that Plaintiff fails to state a claim for breach of contract related to Sprint or T-Mobile. Defendants contend that Plaintiff fails to identify the governing contract or contractual provisions. Furthermore, Defendants contend that Plaintiff cannot rely on its allegations regarding MetroPCS (which this Court already found sufficient to withstand a motion to dismiss) to state a claim regarding Sprint and T-Mobile. Finally, Defendants argue that Plaintiff fails to plead a cognizable damages claim with respect to Sprint or T-Mobile.

Defendants also argue that Plaintiff fails to state a claim for theft of trade secrets as to Sprint or T-Mobile. Defendants contend that Plaintiff alleges only legal conclusions and that Plaintiff has not pled any facts supporting a theory that Defendants had access to Plaintiff's Solution Methods or Risk Information relating to Sprint or T-Mobile.

As explained at the beginning of this Opinion, the Court rejects Defendants' proposed interpretation of Plaintiff's TAC. The Court reads the TAC to allege that Defendants breached the 2009 and/or 2012 NDAs and stole trade secrets from Plaintiff. As a result, Plaintiff suffered damages on various accounts, including MetroPCS, Sprint, and T-Mobile. Taking the facts as alleged by Plaintiff, Plaintiff sufficiently states a claim for all of the reasons this Court already explained in declining to dismiss Plaintiff's breach of contract and theft of trade secrets claims over a year ago. See Opinion & Order, January 13, 2015, ECF 42.

III.    **Arbitration agreement**

Defendants argue that the Court should dismiss or strike Plaintiff's allegations related to Sprint, T-Mobile, and Vodafone for lack of subject matter jurisdiction due to the parties' agreement to arbitrate.

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), removes the court's subject matter jurisdiction to hear a claim when there is a valid, enforceable arbitration clause. Therefore, Defendants' motion to dismiss is "one means to raise its arbitration defense. In effect, [Defendants'] motion is a petition to this court within the meaning of § 4 of the FAA." Rogue v. Applied Materials, Inc., No. 03:03–cv–1564–ST, 2004 WL 1212110, at *4 (D. Or. Feb. 20, 2004).

The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). Written agreements to arbitrate arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If the issue is referable to arbitration under the agreement, then the court

must direct the issue to arbitration and stay the trial. 9 U.S.C. § 3. An agreement to arbitrate is to be "rigorously enforce[d.]" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

Courts strongly favor arbitration and broadly construe arbitration clauses. E.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626 (1985) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (internal quotation marks omitted); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high.").

While public policy favors arbitration, such a presumption does not apply if the contractual language is clear that arbitration of a particular controversy is not within the scope of the arbitration provision. Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1044-45 (9th Cir. 2009); see also United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") In other words, the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate. Id.

a.  Scope of the arbitration provision

Defendants contend that the entire TAC is subject to dismissal pursuant to the arbitration provision contained in a Memorandum of Understanding ("MOU") the parties signed on September 30, 2010. Rosenzweig Decl. Ex. A ("MOU"), ECF 238. However, Defendants move only to dismiss Plaintiff's "new claims" as to Sprint, T-Mobile, and Vodafone. Defendants explain: "Amdocs is only moving to dismiss with respect to the non-MetroPCS claims in light of the Court's extensive experience and understanding of that claim." Defs.' Mot. 9, n.3; see also Defs.' Reply 7, ECF 250 (reiterating that Defendants do not invoke the arbitration provision with respect to the claims involving MetroPCS).

13 – OPINION & ORDER

The parties entered into the MOU "to provide the Parties with a commercial framework for marketing and reselling [Plaintiff's] and its Affiliates' services . . . by [Defendants] and its Affiliates to their respective customers and prospective customers." MOU at 3. Thirty-nine customers and prospective customers, including Vodafone, MetroPCS, Sprint, and T-Mobile, were listed in an attachment to the MOU. Id. at 12-13; see also TAC ¶ 60 (noting that Boost Mobile is a Sprint brand). The attached document stated: "[Plaintiff] retains the right to determine if [Defendants] will be involved in any sales opportunity. Parties will agree in writing via an Opportunity Registration before joint selling activity is undertaken." Id.

The MOU provided a framework by which the parties could opt-in, on a customer-by-customer basis, to have Defendants sell or recommend Plaintiff's services in exchange for a percentage of Plaintiff's profits from that customer, also referred to as an "end-user." MOU § 1.1. The MOU detailed "two contracting models": resale and referral. MOU § 3.1.1. In a resale, Plaintiff's services would be provided to the end-user pursuant to a written service agreement between Defendants and the end-user. In a referral, Defendants would refer the end-user to Plaintiff for services and the written agreement would be executed between Plaintiff and the end-user. MOU § 1.2. In either case, the written agreement would include the services' terms and provisions as approved by Plaintiff "in its sole reasonable discretion." Id. The MOU also provided for the amount of the service fees that Defendants would receive, depending on whether the transaction was a resale or referral. Id. at Sched. B.

By the terms of the MOU, prior to engaging an end-user in a sales process, the parties would execute an "Opportunity Registration Form." Id. at § 3.2.1. A sample form was attached to the MOU. Id. at § 3.2.2. The form provided for the terms jointly offered to the end-user, including services, roles, and services fees. Id. at Sched. C.

14 – OPINION & ORDER

The MOU contained a "Confidentiality" provision, which stated "that exchange and treatment of confidential information shall be treated in accordance with the Non-Disclosure Agreement between [the parties] dated June 24, 2009." Id. at § 10.1.

The MOU also provided a "dispute resolution" process for "any dispute under this MOU." MOU § 10.9. The dispute resolution process provided that:

> § 10.9.1. Either party may apply ex part[e] to courts having jurisdiction in the matter to obtain an injunction to prevent disclosure of its confidential information.

> § 10.9.2. Notwithstanding Section 10.9.3, intellectual property indemnification claims for court proceedings initiated by a third party against either Party (or its Affiliate) may be brought in the court in which such Party (or its Affiliate) is being sued.

> § 10.9.3. For all other disputes arising under or in connection with this MOU, these disputes shall be exclusively referred to and finally resolved by binding arbitration conducted in accordance with the rules of the American Arbitration Association ("AAA"). . . .The arbitration award and/or determination shall be final and binding and judgment may be entered thereon in any court of competent jurisdiction.

MOU at 8-9 (emphasis added).

Defendants contend that Plaintiff's allegations in the TAC regarding Sprint, T-Mobile, and Vodafone "arise under" or are "in connection with" the MOU and, thus, are subject to arbitration. According to Defendants, the MOU establishes a framework to address the parties' rights before, during, and after a joint pitch to customers such as Sprint, T-Mobile, and Vodafone. Furthermore, the MOU incorporates confidentiality duties from the 2009 NDA, which is the "umbrella confidentiality agreement governing all of the parties' communications," as referenced in the TAC. TAC ¶ 17.

The Court recognizes that the parties chose broad language in the MOU to describe the kinds of disputes the arbitration provision would encompass. The use of "arising under or in connection with this MOU" requires the Court interpret the language broadly and apply the arbitration provision to "every dispute between the parties having a significant relationship to the

contract and all disputes having their origin or genesis in the contract." <u>Simula</u>, 175 F.3d at 721

("Every court that has construed the phrase 'arising in connection with' in an arbitration clause

has interpreted that language broadly.") To require arbitration, Plaintiff's factual allegations need

only "touch matters" covered by the MOU and all doubts are to be resolved in favor of

arbitrability. <u>Id.</u>

      However, no matter how broad the parties framed the language in the MOU's arbitration

provision and no matter how "emphatic [the] federal policy [is] in favor of arbitral dispute

resolution," <u>Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.</u>, 609 F.3d 975, 980

(9th Cir. 2010), nothing changes the basic principle that an arbitration provision does not apply

to a dispute not within the scope of the provision. <u>See</u> <u>Mundi</u>, 555 F.3d at 1044-45. Here, the

parties' MOU established a commercial framework for how the parties would work together to

pitch Plaintiff's services to potential clients. The parties did not, and could not, actually engage a

client, however, without executing an Opportunity Registration Form. MOU § 3.2.1. The fact

that the parties include an attachment which listed potential clients does not mean that every

client listed in that attachment was automatically subject to the terms of the MOU.

      The dispute that has arisen between the parties as to Sprint and T-Mobile relates to

conduct allegedly taken by Defendants that had nothing to do with this MOU. The parties never

executed an Opportunity Registration Form regarding Sprint or T-Mobile. Fieldhouse Decl. ¶ 2,

ECF 242. Plaintiff's allegation is that Defendants took actions to secure or attempt to secure

Sprint and T-Mobile's business, not as a resale or referral in partnership with Plaintiff, but as a

replacement of Plaintiff. Such conduct cannot be said to have any connection to the MOU, nor

did it arise under the MOU. Accordingly, the dispute regarding Sprint and T-Mobile is not

subject to the arbitration provision.

As to Vodafone, it appears based on the parties' arguments that the parties may have executed an Opportunity Registration Form. However, as discussed at the beginning of this Opinion, the Court fails to see how the TAC can be construed to state an independent claim regarding Vodafone, such that there would be any dispute to refer to arbitration. Most importantly, nowhere does Plaintiff allege that it suffered any damages due to Defendants' behavior in relation to Vodafone.

b.  Waiver of arbitration

Plaintiff contends that, even if the allegations regarding Sprint and T-Mobile are arbitrable, Defendants waived their right to compel arbitration. Because the Court finds that the allegations regarding Sprint and T-Mobile are not subject to the arbitration provision, there is no need to reach the waiver argument.

## CONCLUSION

The Court denies Defendants' Motion to Dismiss [236]

IT IS SO ORDERED.

Dated this _____ day of _____, 2016.


_____
MARCO A. HERNÁNDEZ
United States District Judge

17 – OPINION & ORDER