**Robert A. Shlachter**, OSB No. 911718
Email: rshlachter@stollberne.com
**Joshua L. Ross**, OSB No. 034387
Email: jross@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Bruce G. Vanyo** (admitted *Pro Hac Vice*)
Email: bruce@kattenlaw.com
**Andrew G. Klevorn** (admitted *Pro Hac Vice*)
Email: andrew.klevorn@kattenlaw.com
**Richard H. Zelichov** (admitted *Pro Hac Vice*)
Email: richard.zelichov@kattenlaw.com
**Christina L. Costley** (admitted *Pro Hac Vice*)
Email: christina.costley@kattenlaw.com
**Yonaton M. Rosenzweig** (admitted *Pro Hac Vice*)
Email: yoni.rosenzweig@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East
Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

**Attorneys for Defendants Amdocs Management Limited; Amdocs, Inc.,**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VESTA CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**AMDOCS MANAGEMENT LIMITED; AMDOCS, INC.,**<br><br>Defendants. | Case No.: 3:14-cv-01142-HZ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STAY THE PROCEEDINGS AS TO THE NON-METROPCS ALLEGATIONS PENDING APPEAL, OR FOR A PROTECTIVE ORDER STAYING DISCOVERY** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....... 1

II. THE NON-METROPCS ALLEGATIONS SHOULD BE STAYED PENDING APPEAL ....... 3

A. Amdocs Established That Its Appeal Raises A Substantial Case For Relief On The Merits ....... 3

1. Amdocs's Appeal Raises "Serious Legal Questions" ....... 4

2. Amdocs Demonstrated That Its Appeal Has A Strong Likelihood Of Success On The Merits ....... 7

B. Amdocs Has Shown That It Will Be Irreparably Harmed Absent A Stay ....... 10

C. Vesta Does Not Demonstrate That It Would Be Injured By A Stay ....... 14

D. The Strong Public Policy In Favor Of Arbitration Weighs In Amdocs's Favor ....... 16

III. AMDOCS'S MOTION FOR A PROTECTIVE ORDER SHOULD BE GRANTED AS VESTA SHOULD NOT BE PERMITTED TO RENEGE ON ITS DISCOVERY AGREEMENTS AT LEAST UNTIL NINTH CIRCUIT RULES ....... 17

IV. CONCLUSION ....... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alascom, Inc. v. ITT N. Elec. Co.*,
727 F.2d 1419 (9th Cir. 1984) ....................10

*Baker v. S. Pac. Transp.*,
542 F.2d 1123 (9th Cir. 1976) ....................9

*Cortez v. Rep. Mortg. LLC*,
No. 2:14-CV-1235-KJD-VCF, 2014 WL 6634890 (D. Nev. Nov. 24, 2014) ....................9

*Ferguson v. Corinthian Colls.*,
No. SACV 11-0127 DOC (AJWx), 2012 WL 27622 (C.D. Cal. Jan. 5, 2012) ....................11

*Filimex, L.L.C. v. Novoa Inv., L.L.C.*,
No. CV 05-3792-PHX-SMM, 2006 WL 2091661 (D. Ariz. July 17, 2006) ....................9

*Global Live Events v. Ja-Tail Enters., LLC*,
No. CV 13-8293 SVW, 2014 WL 1830998 (C.D. Cal. May 8, 2014) ....................11, 12

*Golden State Bank v. First-Citizens Bank & Trust Co.*,
No. EDCV 10-526-GW(OPx), 2011 WL 13047425 (C.D. Cal. July 7, 2011) ....................14

*Guifu Li v. A Perfect Franchise, Inc.*,
No. 5:10-cv-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ....................5, 12

*Hieb v. Labor Ready*,
172 F.3d 56 (Table) (9th Cir. 1999) ....................9

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ....................14

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ....................7

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*,
549 F.3d 210 (2d Cir. 2008) ....................14

*Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*,
586 F.2d 143 (9th Cir. 1978) ....................14

*Mohamed v. Uber Techs.*,
115 F. Supp. 3d 1024 (N.D. Cal. 2015) ....................4, 5, 7, 12

*Moule v. United Parcel Serv. Co.*,
No. 1:16-CV-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ..................................14

*O'Connor v. Uber Techs. Inc.*,
No. 13-CV-03826-EMC, 2015 WL 9303979 (N.D. Cal. Dec. 22, 2015)..............................4, 5

*Pliska v. Rent-A-Center W., Inc.*,
No. CV 05-1155-AS, 2006 WL 1030177 (D. Or. Mar. 31, 2006)..........................................10

*Pokorny v. Quixtar, Inc.*,
No. 07-00201 SC, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008)........................................5, 7

*Portland Gen. Elec. Co. v Liberty Mut. Ins. Co.*,
No. 3:16-cv-00495-HZ, slip op. (D. Or. Oct 5, 2016) ................................................10, 11, 12

*Roe v. SFBSC Mgmt., LLC*,
No. 14-CV-03616-LB, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015)...................................17

*Sample v. Brookdale Senior Living Cmtys., Inc.*,
No. C11-5844 RJB, 2012 WL 195175 (W.D. Wash. Jan. 23, 2012)................................10, 12

*Simon v. Pfizer Inc.*,
398 F.3d 765 (6th Cir. 2005) ..........................................................................................4

*Ward v. Estate of Goossen*,
No. 14-cv-03510-TEH, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ......................... *passim*

*Winig v. Cingular Wireless LLC*,
No. C-06-4297 MMC, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) .....................................17

*Zaborowski v. MHN Gov't Servs., Inc.*,
No. C 12-05109 SI, 2013 WL 1832638 (N.D. Cal. May 1, 2013)..........................................16

**Statutes**

9 U.S.C. § 4........................................................................................................4, 9

28 U.S.C. § 1291......................................................................................................9

**Rules**

AAA Rule L-3.......................................................................................................14

AAA Rule R-22 .....................................................................................................14

Fed. R. Civ. P. 12(b)(1)........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(3)..........................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................................4

Fed. R. Civ. P. 26(b)(1)....................................................................................................14

Fed. R. Civ. P. 30(b)(6)....................................................................................................13, 17

Fed. R. Civ. P. 60(b) ....................................................................................................9

## I. INTRODUCTION

Unable to refute the fundamental merit of Amdocs's Motion to Stay, Vesta instead relies on rhetoric and half-truths to obscure what it cannot deny: it is Vesta, and not Amdocs, that is seeking to alter the ordinary course of litigation by using allegations that Vesta previously claimed were only part of a "damages theory" (*see* Mot. to File TAC, Dkt. No. 171, at 11) as a pretense for delaying this lawsuit as it continues its search for a viable claim.

Vesta's Opposition focuses primarily on an argument that Amdocs, by asking this Court to send the Sprint and T-Mobile allegations to arbitration, waived the right to arbitrate those claims. As a result, Vesta argues, Amdocs cannot establish the first factor relevant to a stay, a substantial case for relief on the merits. Vesta, however, either concedes or ignores the other three grounds Amdocs identified that satisfy the first factor: (1) the existence of an intra-circuit split regarding whether an arbitration clause is a Rule 12(b)(1) defense that "cannot be waived;" (2) the broad language in the arbitration agreement that makes the agreement applicable to any claims "arising under" or in any way related to matters covered by the MOU, and the applicability of the arbitration agreement to the Sprint and T-Mobile allegations because those allegations arise from information that Amdocs purportedly learned during joint pitches covered by the MOU; and (3) this Court's prior holding that questions of waiver are for the arbitrator, and not the court, to decide. Vesta's non-opposition to even one of these arguments is enough for Amdocs to satisfy the first stay factor.

Vesta also fails to refute Amdocs's showing that proceeding with further discovery regarding the Sprint and T-Mobile allegations would subject Amdocs to undue expense and delay. In its Opposition, Vesta argues that a party cannot establish undue burden as a result of discovery, but the cases on which Vesta relies actually hold that a party **can** establish undue burden if the discovery sought exceeds that to which the opposing party would be entitled in arbitration. Here, Amdocs has already provided more Sprint and T-Mobile discovery than Vesta could reasonably have hoped to

have obtained through arbitration, including documents responsive to Vesta's Sprint and T-Mobile search terms and targeted search requests. Vesta, however, has continued to demand more, notifying Amdocs on September 24, 2016 that it was deferring the remaining Amdocs depositions, and seeking another delay of discovery and trial in order to conduct further discovery regarding Sprint and T-Mobile. As a result, the MetroPCS claims – which have been pending for more than two years and as to which all discovery was set to close by October 28, 2016 – are further than ever from resolution. Because this far exceeds the discovery to which Vesta would be entitled in arbitration, the second stay factor also favors a stay.

The third and fourth factors (prejudice to the plaintiff and public interest), though less important than the first two, also favor a stay. The only prejudice Vesta identifies is delay, which is not an injury Vesta can credibly claim after its repeated efforts to extend resolution of this case and when a stay would, in fact, expedite resolution of Vesta's primary claim. Vesta also argues that dual trials are not in the public interest, but there is absolutely no reason to believe that a stay pending an expedited appeal (which will likely take less than a year) would require two trials. Amdocs, therefore, satisfies all four factors relevant to the stay analysis.

Amdocs also establishes the need for a protective order with respect to Vesta's insatiable and untimely discovery demands. The only opposition Vesta offers to this is a series of misstatements in which it attempts to blame Amdocs for Vesta's continued inability to identify factual support for its claim. The contemporaneous emails provided in support of Amdocs's Motion, however, show that:

(1) Vesta, not Amdocs, insisted on limiting the number of custodians;

(2) Although Vesta has represented that it understood that Sprint and T-Mobile were part of the case at the time, Vesta did not ask Amdocs to identify custodians with Sprint and T-Mobile documents;

(3) The custodians Amdocs identified included two employees with significantly more information regarding Sprint and T-Mobile than the custodians whom Vesta later chose;

(4) Vesta agreed to the date range used in Amdocs's document production on March 1, 2016; and

(5) Amdocs has produced all responsive documents using the custodians and search terms Vesta chose and the date range to which Vesta agreed.

In short, because Vesta fails to oppose the primary grounds raised by Amdocs in support of its Motion to Stay, and because Vesta's opposition to Amdocs's alternative request for a protective order is based on a series of demonstrably false statements, Amdocs respectfully asks the Court to either stay the Sprint and T-Mobile allegations, or at least stay discovery as to those allegations, pending expedited review by the Ninth Circuit.

## II. THE NON-METROPCS ALLEGATIONS SHOULD BE STAYED PENDING APPEAL

### A. Amdocs Established That Its Appeal Raises A Substantial Case For Relief On The Merits

Vesta acknowledges that a stay is warranted if Amdocs's appeal **either** raises a "substantial legal question" (*i.e.*, "a split of legal authority" or "novel legal issue") **or** has a "substantial likelihood of success on the merits." (Opp'n at 2, 6-7.) Unable to refute the Court's prior identification of a legal conflict sufficient to satisfy the first prong, Vesta instead concentrates on an argument that Amdocs cannot establish a substantial likelihood of success on the merits, asserting that Amdocs, by asking the Court to send this case to arbitration, waived the right to have the case arbitrated. This Court, however, can and should grant Amdocs's Motion without even considering this argument because Vesta's acknowledgement that a split of legal authority exists, and its failure to address the other two arguments Amdocs advances to establish that it is likely to succeed on the merits, are each sufficient, alone, to satisfy this first and most important element.

### 1. Amdocs's Appeal Raises "Serious Legal Questions"

Vesta does not seriously dispute that Amdocs's appeal presents a "serious legal question." (*See* Opp'n at 6-8; *see also* Mot. at 3.) A "serious legal question" is one that requires "close analysis," such as a matter involving a split of legal authority or an issue of first impression. *O'Connor v. Uber Techs. Inc.*, No. 13-CV-03826-EMC, 2015 WL 9303979, at *2-3 (N.D. Cal. Dec. 22, 2015), *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1029 (N.D. Cal. 2015); *see also Ward v. Estate of Goossen*, No. 14-cv-03510-TEH, 2014 WL 7273911, at *3 (N.D. Cal. Dec. 22, 2014). As this Court recognized in its Reconsideration Order, Amdocs's appeal implicates two competing principles that the Ninth Circuit has not yet resolved. On one hand, courts in the Ninth Circuit have held that a party may waive a contractual right to compel arbitration by engaging in litigation activity. (Recons. Order, Dkt. No. 268, at 7-8.) On the other hand, however, several courts in this District, including this one, "have granted motions to dismiss actions [based on arbitration clauses] pursuant to Rule 12(b)(1)" and "subject matter jurisdiction under Rule 12(b)(1) cannot be waived." (*Id*. at 7-8 & n.3.)

Vesta acknowledges in its Opposition that a conflict of law exists, admitting that "**courts [in this Circuit] are divided** as to whether the authority to dismiss a case based on an arbitration clause stems from Rule 12(b)(1), (b)(3), or (b)(6)." (Opp'n at 8 (emphasis added).) This is not, as Vesta frames it, merely a "procedural quirk" or "intellectual curiosity," but instead, a distinction with case dispositive implications because, as this Court has already noted, a defense arising under Rule 12(b)(1) relates to the Court's subject matter jurisdiction and "cannot be waived." (Recons. Order at 7.) Nor is the Ninth Circuit likely to resolve this issue merely by deciding that Rule 12(b)(1) is not a proper vehicle for raising an arbitration clause, as the FAA expressly states that "a written agreement for arbitration" divests the district court of "jurisdiction under title 8," 9 U.S.C. § 4, and other circuit courts that have reached this issue have agreed. *See, e.g.*, *Simon v.*

*Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005). Consequently, Vesta's admission that there is a conflict of law on this point is sufficient, standing alone, to establish the existence of a "serious legal issue" in this case.

To distract from its inability to prevail on the most critical prong of the stay analysis, Vesta asks the Court to adopt a hodgepodge of arguments that Vesta seemingly plucked out of thin air. First, Vesta argues that the Court should limit the definition of "serious legal issues" to those involving "constitutional issues." (Opp'n at 6-7.) Vesta stops just short of asserting that any case has ever imposed such a limitation, however, instead equivocating that "serious legal questions **often** concern the scope of constitutional rights." (*Id.* at 6 (emphasis added).) But "often" is not "always," and one of the cases that Vesta cites in support of this argument conclusively establishes that the argument is meritless, expressly recognizing that "a split in authority regarding enforceability of the arbitration agreement" **also** raises a "serious legal question." *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-cv-01189-LHK, 2011 WL 2293221, at *3 (N.D. Cal. June 8, 2011) (citing *Pokorny v. Quixtar, Inc.*, No. 07-00201 SC, 2008 WL 1787111, at *1 (N.D. Cal. Apr. 17, 2008)); *see also O'Connor*, 2015 WL 9303979 at *3 (finding, *inter alia*, that "in light of the close analysis required of the severability question" in an arbitration agreement and the possibility of an *en banc* review, a "serious legal question" existed).

Vesta further argues that a split of authority is only an "important legal issue" if it involves the "primary issue on appeal." (Opp'n at 8.) Once again, this is nonsense that Vesta has invented out of whole cloth and in spite of several cases to the contrary. *See, e.g.*, *Ward*, 2014 WL 7273911 at *2-3 (finding that while the movant's first and second arguments did not meet the definition of "substantial questions," its third, fourth, and fifth arguments did); *Mohamed*, 115 F. Supp. 3d at 1028-32 (finding that an appeal raised two "serious legal questions"). Further, even if Vesta were

right on the law (which it is not), the applicability of Rule 12(b)(1) is not a "secondary issue," but relates directly to the primary grounds on which the Court relied when deciding the Reconsideration Motion (one of the two orders on appeal) and is an argument that Vesta itself has raised both in opposition to the Reconsideration Motion and in opposition to the instant Motion. (*See* Opp'n to Recons. Mot., Dkt. No. 262, at 3-5; Opp'n at 1, 3, 4-5.)

In addition to presenting a legal conflict, Amdocs's appeal also raises a novel issue of law: whether a party can waive the right to assert a **valid** arbitration agreement in circumstances that fall short of contractual waiver. Vesta acknowledges that a "novel issue" constitutes a "serious legal question" but disagrees that this case presents one, arguing that the Ninth Circuit has already held that a party may waive its right to compel arbitration. (*See* Opp'n at 7.) But neither the law nor the issues raised by Amdocs's appeal are so straightforward. The cases on which Vesta relies all involve instances in which a court has found that a party waived its **contractual** right to arbitrate by engaging in conduct sufficient to meet the three-pronged test for contractual waiver. Amdocs's **contractual** right to compel arbitration, however, is not at issue here for several reasons, including that questions regarding waiver are for the arbitrator, not the Court, to decide (*see* Recons. Mot., Dkt. No. 257, at 1) and because a request that the Court refer the allegations to arbitration is not an act "inconsistent with" the right to arbitrate, as is necessary to establish contractual waiver. In the briefing on the Reconsideration Motion, therefore, Vesta did not argue, and the Court did not hold, that Amdocs had waived a **contractual** right to move to compel arbitration. (*See generally* Recons. Order.) Instead, the Court made a lesser finding, not of contractual waiver, but of waiver of the right to raise arbitrability as a defense. (*Id.* at 7-8.)

Among the questions presented by Amdocs's appeal, therefore, is one that has never been addressed by any other court in this Circuit: whether a party can waive arbitrability as a defense

absent conditions sufficient to support a finding of contractual waiver. The answer in Amdocs's view is plainly "no," for many reasons, including those set forth below, but regardless of how the Ninth Circuit decides this issue, it is undisputedly a matter of first impression informed by two seemingly contradictory bodies of law. *See, e.g.*, *Pokorny*, 2008 WL 1787111 at *1 (finding that an appeal raised a serious legal issue regarding enforceability of an arbitration provision where there was inconsistency among district courts with no guidance provided by the circuit); *Mohamed*, 115 F. Supp. 3d at 1031-32 (finding that an appeal involving an arbitration clause raised "serious legal questions" where only a few district courts had reached one of the issues and the Ninth Circuit had not decided the other). It is, therefore, a "serious legal question," and this prong thus favors a stay.

### 2. Amdocs Demonstrated That Its Appeal Has A Strong Likelihood Of Success On The Merits

Amdocs also has established a strong likelihood of success on the merits. Although this standard requires Amdocs to establish something more than a "mere possibility of relief," Amdocs is not required to establish that success is "more likely than not." (*See* Mot. at 4; Opp'n at 3.) Instead, Amdocs is only required to show "a probability of success on the merits," a standard that courts have held is equivalent to a "a reasonable probability" or "fair prospect" of success. *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011).

First, and most importantly, Vesta does not dispute that Amdocs has established a "reasonable probability" that the Ninth Circuit will find that the MOU extends to the Sprint and T-Mobile allegations because they arise from of Amdocs's alleged use of information obtained during the joint projects for MetroPCS and Vodafone, which the MOU undisputedly covers. (*See* Mot. at 4.) Instead, Vesta argues only that Amdocs failed to brief this issue with sufficient specificity. (Opp'n at 4.) But, when litigating a motion to stay, a party is not required "to brief the merits of the case in depth." *Leiva-Perez*, 640 F.3d at 967. Nor are further details needed to establish that if the Ninth

Circuit reaches the merits of the Court's Rule 12(b)(1) Motion, Amdocs likely will prevail on this issue.[1]

Vesta's only other response is the perplexing and erroneous contention that Amdocs both failed to adequately identify the "specific legal or factual conclusions" under appeal **and** provided too much detail by citing a section of the order in which the Court found that the MOU did not directly cover the Sprint and T-Mobile transactions because "[t]he parties never executed an Opportunity Registration From regarding Sprint or T-Mobile." (*See* Opp'n at 4 (citing 12(b)(1) Order, Dkt. No. 255, at 16).) Amdocs does not cite specific language because the Court did not reach the question Amdocs raises in connection with this Motion (whether the MOU covers the Sprint and T-Mobile allegations because they arise from of information Amdocs allegedly obtained during the joint projects for MetroPCS and Vodafone). It cites the issue the Court did reach, and which Vesta quotes in its Opposition (whether the Sprint and T-Mobile transactions are directly covered by the MOU), though it is not at issue here, to demonstrate that this section of the 12(b)(1) Order does not make a finding about whether the arbitration agreement applies to the Sprint and T-Mobile allegations because they arise from of joint pitches that the MOU covers.

Vesta also fails entirely to respond to Amdocs's second argument, that contractual waiver is a question "to be decided by the arbitrator, rather than the court," especially where, as here, the parties have agreed to delegate determinations regarding arbitrability (including decisions about contractual validity) to the arbitrator. (Mot. at 4 (citing cases).) Vesta's "failure to oppose this argument is

[1] In the Motion to Stay, Amdocs: (1) cited the Court's decision that the arbitration clause applies broadly to any matters "arising under" or "in connection with" the MOU (Mot. at 4 (citing 12(b)(1) Order, Dkt. No. 255, at 15-16)); (2) cited the Court's factual finding that the MOU encompasses information learned during the MetroPCS and Vodafone joint pitches and the declaration from Vesta's President and Chief Executive Officer on which the Court's finding was based (*id.*(citing Fieldhouse Decl. ¶ 2)); and (3) cited the Court's failure to address, and Vesta's admissions, that the Sprint and T-Mobile claims arise from information learned during the joint pitches. (*Id*.)

consent to the granting of the motion" on this basis as well. *Cortez v. Rep. Mortg. LLC*, No. 2:14-CV-1235-KJD-VCF, 2014 WL 6634890, at *3 (D. Nev. Nov. 24, 2014); *see also Hieb v. Labor Ready*, 172 F.3d 56, 56 (Table) (9th Cir. 1999).

Finally, as its sole basis for asserting that Amdocs does not have a reasonable probability of success, Vesta again falls back on the argument that Amdocs has waived its right to raise the parties' agreement to arbitrate arbitrability. But, as Amdocs has repeatedly emphasized, and as Vesta has repeatedly ignored, the cases on which Vesta relies for this point all involve **contractual** waiver, a standard that Vesta does not purport to have met and that the Court has never held that Vesta has satisfied. (*See* Mot. at 4-5.) As Amdocs explained both in its Motion to Stay and in the preceding section of this Reply, a party cannot waive the right to compel arbitration in circumstances that fall short of contractual waiver because, under the FAA, a valid arbitration agreement divests the district court of jurisdiction, and jurisdictional defenses cannot be waived. (*Id*.)[2]

In short, because even Vesta does not disagree that Amdocs is likely to succeed on at least two of the grounds raised in its appeal, and because Amdocs is only required to establish a likelihood of success on one basis, there is and can be no real dispute that Amdocs has established a strong likelihood of success on the merits.

[2] Vesta's argument that the Ninth Circuit lacks jurisdiction over Amdocs's appeal is contrary to both this Court's express finding that Amdocs's Motion to Dismiss was "a petition to this court within the meaning of § 4 of the FAA" (12(b)(1) Order at 12) and to the general rule in the Ninth Circuit that a motion to dismiss for lack of subject matter jurisdiction "is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision." *Filimex, L.L.C. v. Novoa Inv., L.L.C.*, No. CV 05-3792-PHX-SMM, 2006 WL 2091661, at *2 (D. Ariz. July 17, 2006) (citing cases). Further, a denial of a motion for reconsideration is a final appealable order pursuant to 28 U.S.C. § 1291. *See, e.g.*, *Baker v. S. Pac. Transp.*, 542 F.2d 1123, 1127 (9th Cir. 1976) ("An order denying a motion under Rule 60(b) is final and appealable.").

### B. Amdocs Has Shown That It Will Be Irreparably Harmed Absent A Stay

Vesta's Opposition also fails to counter Amdocs's showing in its Motion to Stay that it will be irreparably harmed as a result of the additional expense and delay caused by litigating the Sprint and T-Mobile claims. (*See* Mot. at 5-7 (citing cases).)

In its Opposition, Vesta argues that the monetary cost and delay of proceeding with litigation does not constitute irreparable harm. (*See* Opp'n at 8-9.) Vesta's argument, however, is contradicted by the Ninth Circuit's holding that: "If [a] party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration – speed and economy – are lost forever." *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (considering a "challenge [of] two district court orders, one granting a stay of arbitration, the other denying a stay of proceedings pending arbitration"). And, while it is true that, as this Court recently pointed out in *Portland General Electric Co. v Liberty Mutual Insurance Co.*, this language in *Alascom* was in the portion of the decision that considered appeal of a decision staying arbitration (not the portion that considered denial of a motion to stay litigation), No. 3:16-cv-00495-HZ, slip op. at 4 (D. Or. Oct 5, 2016), numerous courts in the Ninth Circuit have relied on *Alascom* to find that the loss of "speed and economy" imposed by litigating claims subject to a pending appeal constitutes irreparable harm. *See, e.g.*, *Pliska v. Rent-A-Center W., Inc.*, No. CV 05-1155-AS, 2006 WL 1030177, at *1 (D. Or. Mar. 31, 2006) ("If [defendant] is required to litigate plaintiff's . . . claims in this court, and its appeal [of an order refusing to compel arbitration] is subsequently successful, [defendant] will have lost the benefit it was intended to have under the Arbitration Agreement."); *Sample v. Brookdale Senior Living Cmtys., Inc.*, No. C11-5844 RJB, 2012 WL 195175, at *2 (W.D. Wash. Jan. 23, 2012) (applying *Alascom* to a stay motion and finding that arbitration is a "unique situation" where

expenses incurred pending appeal of an order refusing to compel arbitration are considered "irreparable").[3]

Vesta tries to distinguish the Ninth Circuit's decision in *Alascom*, and the subsequent cases applying it, by arguing that this case will proceed to trial anyway on the MetroPCS claims, but the delay to resolution of the MetroPCS claims will actually **increase** the burden Amdocs faces.[4] Document discovery has already closed on the MetroPCS claims, depositions were scheduled to conclude by the end of the month, and a trial date, which has already moved twice, is now set for less than a year away. On September 24, 2016, however, Vesta sent an e-mail notifying Amdocs that it was taking the remaining MetroPCS depositions off calendar, and would be requesting a delay to both the close of discovery and the remaining case schedule, including trial, in order to take **further** discovery on the Sprint and T-Mobile claims. (*See* Hr'g Tr. at 21:13-20 (Sept. 26, 2016); *see also* Costley Decl. Ex. F.) Thus, permitting Vesta to proceed with further litigation of the Sprint and T-Mobile claims while Amdocs's appeal is pending would doubly prejudice Amdocs, both by requiring Amdocs to incur the expense and delay of additional Sprint and T-Mobile discovery and litigation, *and* by postponing trial of the MetroPCS claims (which have now been pending for over two years) and depriving Amdocs of the "speed and economy" to which it is entitled under the arbitration agreement. (*See* Mot. at 5-7.)

---

3 *See also Global Live Events v. Ja-Tail Enters., LLC*, No. CV 13-8293 SVW, 2014 WL 1830998, at *8 (C.D. Cal. May 8, 2014); *Ferguson v. Corinthian Colls.*, No. SACV 11-0127 DOC (AJWx), 2012 WL 27622, at *3-4 (C.D. Cal. Jan. 5, 2012); *Ward*, 2014 WL 7273911 at *3.

4 This Court recognized in *Portland General Electric* that requiring a party to go to trial on claims pending review by the Ninth Circuit would constitute irreparable harm. No. 3:16-cv-00495-HZ, slip op. at 5 (finding that "[i]f the actual adjudication becomes imminent and the appeal has still not been resolved, it is highly likely that this Court would enter a limited stay"). Vesta does not assert that Amdocs would not similarly be prejudiced by "actual adjudication" but instead seemingly limits its argument to an assertion that Amdocs should be required to proceed with further discovery in the interim.

Vesta also argues that certain courts, including this one, have held that the cost of proceeding with discovery while an arbitration motion is pending does not constitute irreparable harm. *But see Global Live Events*, 2014 WL 1830998 at *8 (finding that the added expense of litigation is alone irreparable harm); *Sample*, 2012 WL 195175 at *2 (arbitration is a "unique situation" in which "monetary expenses incurred in litigation" constitute irreparable harm). The cases on which Vesta relies, however, found no irreparable harm **<u>only</u>** when "the main costs that [defendants] would likely face while the appeal is pending are discovery costs that presumably would be borne by the parties in arbitration as well." *Portland Gen. Elec. Co.*, No. 3:16-cv-00495-HZ, slip op. at 5. Accordingly, many of the cases Vesta cites for this point involved arbitration agreements that included clauses modifying the limited discovery permitted under the usual rules of arbitration. *See, e.g., Mohamed*, 115 F. Supp. 3d at 1033 (the arbitration agreement provided that "the Parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses"); *Guifu Li*, 2011 WL 2293221 at *4 (the arbitration agreement "provides the parties 'adequate opportunity to conduct discovery'"). Similarly, in its recent decision in *Portland General Electric*, this Court expressly found that defendants "do not contend" that they would incur greater discovery costs in district court than in arbitration when finding no irreparable harm. No. 3:16-cv-00495-HZ, slip op. at 5.

Here, however, Amdocs unquestionably will incur greater discovery costs if forced to proceed with further Sprint and T-Mobile discovery. Vesta does not dispute this, nor can it, because Amdocs expressly told Vesta that it would not bring this motion if Vesta would agree: (1) to limit discovery to what Vesta would be able to obtain through arbitration until the Ninth Circuit decides Amdocs's appeal; (2) that the parties could use any discovery produced in this case during arbitration; and (3) to join Amdocs's request for expedited appellate review. Vesta refused to even

**<u>discuss</u>** this proposal. (*See* Costley Decl. ¶ 6, Ex. E.) Vesta also does not dispute that Amdocs has already produced far more discovery than that to which Vesta would be entitled in arbitration. Among other things, Amdocs has produced every document encompassed by the parties' initial discovery agreement for Sprint and T-Mobile (every document responsive to the search terms Vesta proposed, in the possession of the custodians that Vesta requested, for the timeframe to which Vesta agreed).[5] (*See* Hr'g Tr. at 17:13-20 (Sept. 15, 2016).) In addition, Amdocs has performed targeted pulls and has produced documents including its contract with Sprint, statements of work, and invoices for Sprint.

The discovery that Vesta still seeks **<u>far exceeds</u>** the scope of that to which Vesta would be entitled in arbitration. Among other things, Vesta has demanded a second round of eDiscovery (more custodians, more search terms, and a longer relevant time period), discovery from third party witnesses, Rule 30(b)(6) depositions targeted solely at the Sprint and T-Mobile claims, and complete postponement of previously scheduled depositions until it obtains this discovery. The further burden – both in terms of cost and delay – that will be imposed by Vesta's demands is evidenced by the email that Vesta sent on September 24 announcing that, due to Vesta's purported need for new and expansive discovery regarding Sprint and T-Mobile, it was postponing several of the already set depositions of Amdocs's witnesses and would be seeking an extension of the close of discovery and trial. This is far from the economical and expeditious process to which Vesta agreed in the MOU, and the burden it will impose on Amdocs tips the balance of harms sharply in Amdocs's favor. *See Ward*, 2014 WL 7273911 at *3-5 (finding that the balance of harm "tips sharply" in movant's favor

---

[5] Vesta has repeatedly denied that it agreed to the timeframe used in Amdocs's existing production. For the avoidance of all doubt, Amdocs has attached the March 1, 2016 email in which Vesta expressly agreed to the June 1, 2009 to January 31, 2014 timeframe. (*See* Costley Decl. Ex. D.)

even when the delay will be minimal but the movant would be required to incur substantial discovery expenses). Consequently, it constitutes irreparable harm.[6]

Because Amdocs has satisfied the first and second factors relevant to stay analysis, this Motion should be granted. (*See* Opp'n at 2); *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (finding that the first two factors are the most critical).

### C. Vesta Does Not Demonstrate That It Would Be Injured By A Stay

Vesta also does not, and cannot, establish that it would suffer substantial injury if a stay were granted. The sole injury that Vesta identifies is the fact that the MetroPCS claims have been pending for more than two years. But it is Vesta, not Amdocs, that has repeatedly prolonged this case: first by adding antitrust claims on April 7, 2015, over 10 months after the case started; then waiting another 10 months, until January 27, 2016, to move for leave to amend its complaint to add damages allegations regarding Sprint and T-Mobile; then asking the Court to delay the close of discovery and

---

[6] *See Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 146 n.5 (9th Cir. 1978) (recognizing that the AAA rules pertaining to discovery impose severe restrictions); *Moule v. United Parcel Serv. Co.*, No. 1:16-CV-00102-JLT, 2016 WL 3648961, at *9 (E.D. Cal. July 7, 2016) (recognizing that the AAA discovery rules are more restrictive). Vesta's argument that it would be entitled to expansive discovery in arbitration relies on a misreading of the AAA rules. For example, Vesta cites AAA Rule R-22 for the contention that requests for the production of documents are permitted under the AAA rules. However, AAA Rule R-22 (b)(iii–iv) only allows discovery of documents that are "[r]elevant **and material** to the outcome of disputed issues," (emphasis added), whereas Rule 26(b)(1) permits discovery of any information that is merely "relevant to any party's claim or defense." Additionally, AAA Rule L-3 only provides the parties with authority to conduct depositions in "exceptional cases." Vesta's assumption that this is an "exceptional case" is entirely speculative, and even if the arbitrator finds that it was such a case, it would be unprecedented for Vesta to be permitted the number of depositions, and the extensive timeline that it has claimed to conduct them, in arbitration. The FAA and AAA rules also do not permit depositions from third-party witnesses, which Vesta has already requested. *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 215-18 (2d Cir. 2008) (stating that nothing in the FAA provides an arbitrator the authority to order non-parties to appear at depositions and determining that the AAA rule governing subpoenas does not bind non-parties even "under unusual circumstances" or "upon a showing of special need or hardship"), *Golden State Bank v. First-Citizens Bank & Trust Co.*, No. EDCV 10-526-GW(OPx), 2011 WL 13047425, at *5 (C.D. Cal. July 7, 2011) (citing *Live Receivables Trust,* 549 F.3d at 216-17).

trial on March 17, 2016; and, most recently, announcing via e-mail on September 24, 2016 that it was postponing already-scheduled depositions and would be seeking a **third** extension of the close of discovery and trial, this one for an indeterminate period of time, in order to allow it to take additional discovery regarding Sprint and T-Mobile.

In addition, Amdocs's requested stay would allow the MetroPCS claims to be resolved more quickly, not less. Amdocs has repeatedly asked Vesta to join it in asking the Ninth Circuit to decide its appeal on an expedited schedule, so that a ruling can be delivered within the next year, and although Vesta has refused, Amdocs intends to nonetheless move forward with such a motion if the Court grants this Motion. While waiting for the Ninth Circuit's decision, Amdocs has proposed that the parties proceed as scheduled with depositions, expert discovery, and dispositive motions on the MetroPCS claims. The Ninth Circuit will likely have resolved an expedited appeal by the time that the Court decides dispositive motions on the MetroPCS claims, and if the appeal is denied, the parties can then take further discovery (as necessary) regarding Sprint and T-Mobile. This has the advantage of avoiding the immediate delay of indeterminate length that Vesta has requested, and adding that delay back into the case only if and when the Ninth Circuit confirms that the Sprint and T-Mobile claims actually should proceed in this forum. In addition, delaying further Sprint and T-Mobile discovery presents no problem with respect to resolution of the MetroPCS claims because Vesta's allegations regarding Sprint and T-Mobile relate only to damages, not liability. (*See* Mot. to File TAC at 11 (the "proposed amendment [to include Sprint and T-Mobile] simply adds to Vesta's existing damages theory, and is not a new claim"); Order on Mot. to File TAC, Dkt. No. 220, at 9 ("Plaintiff argues that it is 'simply adding to its damages theory,' not changing its legal theory.").)[7]

[7] While Amdocs cannot rule out the need for some sort of dispositive motion on the Sprint and T-Mobile allegations, there is a very clear advantage to bifurcating dispositive motions because certain decisions by the Court on the MetroPCS claims – for example, a finding that Vesta's

Therefore, far from weighing against a stay, this factor actually favors one. And in any event, Vesta acknowledges that this factor – prejudice to Vesta – is not a "critical" factor. (Opp'n at 2.)

**D. The Strong Public Policy In Favor Of Arbitration Weighs In Amdocs's Favor**

Vesta also fails to contradict the strong public policy favoring a stay that Amdocs has established. Notably, Vesta fails to cite even a single case in support of its argument that public policy weighs against a stay. Vesta also ignores the cases cited by Amdocs that establish that the public interest strongly favors a stay when the underlying appeal involves an arbitration agreement. (*See* Mot. at 8 (citing, *inter alia*, *Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *3 (N.D. Cal. May 1, 2013) ("The policy underlying the FAA is to promote judicial efficiency and economy. Thus, contrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration.")).)

Instead, Vesta's entire argument is premised on its speculative and unsupported assertion that, if a stay is granted, it will result in "two separate trials" that will increase the strain on the Court's docket. (*See* Opp'n at 13.) This argument is flawed for several reasons, the most significant of which is that no one but Vesta has suggested that a stay would result in two separate trials, nor would there even be time for two trials if the appeal moves forward in the Ninth Circuit on an expedited schedule. (*See* Costley Decl. Ex. F (email from Vesta's counsel asking to push the remaining case schedule until some later, and as yet unspecified, date).) On the other hand,

information is not subject to trade secret protection because Vesta failed to secure an NDA from MetroPCS before disclosing it – would moot Vesta's damages claims regarding Sprint and T-Mobile. Further, even if the parties would incur some delay if expert discovery and dispositive motions regarding Sprint and T-Mobile were bifurcated from the MetroPCS claims, any such delay would be minimal. *See Ward*, 2014 WL 7273911 at *3-5 (finding that the balance of harm "tips sharply" in movant's favor specifically because the delay will be minimal, given the Ninth Circuit briefing schedule and that movant would likely incur substantial discovery expenses).

proceeding with **further** Sprint and T-Mobile discovery, and then potentially dispositive motions and trials, "only to learn at a later date from the court of appeals that [this Court] was not the proper forum to hear [these matters]" would unquestionably be contrary to the public interest. *Winig v. Cingular Wireless LLC*, No. C-06-4297 MMC, 2006 WL 3201047, at *3 (N.D. Cal. Nov. 6, 2006).

## III. AMDOCS'S MOTION FOR A PROTECTIVE ORDER SHOULD BE GRANTED AS VESTA SHOULD NOT BE PERMITTED TO RENEGE ON ITS DISCOVERY AGREEMENTS AT LEAST UNTIL NINTH CIRCUIT RULES

In its opposition to Amdocs's alternate motion for a protective order, Vesta includes a lengthy and unconvincing attempt to explain away its prior agreements with Amdocs. Many of these arguments relate to issues raised in support of Amdocs's Motion for Stay, but Vesta relegates them to the protective order motion, presumably in an attempt to avoid calling attention to them in connection with the primary motion.

As a threshold matter, Amdocs is not seeking the same relief in its motion to stay and motion for a protective order. *See Roe v. SFBSC Mgmt., LLC,* No. 14-CV-03616-LB, 2015 WL 1798926, at *3 (N.D. Cal. Apr. 17, 2015) ("Discovery is not the only consideration" when determining whether to grant a stay pending appeal, as "[l]itigation presents opportunities for ancillary practice that do not exist in arbitration."). The Motion to Stay asks that all proceedings arising out of the non-MetroPCS Allegations be stayed pending appeal of the Court's June 16, 2016 order denying Amdocs's Rule 12(b)(1) Motion and August 31, 2016 order denying Amdocs's Motion for Reconsideration. (Mot. at 1.) The motion for a protective order, on the other hand, solely seeks to stay discovery such that Amdocs is not subject to undue burden and irreparable harm by participating in discovery not previously negotiated, which far exceeds the scope of that to which Vesta would be entitled in arbitration, including discovery from third-party witnesses, Rule 30(b)(6) depositions regarding Sprint and T-Mobile, and a second round of eDiscovery. As to the motion for a protective order, Amdocs explained why there is good cause for a protective order in its opening brief and Vesta has

not actually addressed any of the law or facts set forth in the motion. For this reason alone, the motion for a protective order should be granted.

Rather than address the law and facts set forth in Amdocs's motion for a protective order, Vesta spends pages describing a hypothetical world of what it would not have agreed to in terms of discovery from Amdocs. Vesta conveniently does not address what it actually did agree to and what it should be bound to at least until the Ninth Circuit has a chance to determine the appeal.

First, Vesta agreed that both parties would only have to collect and review documents from seven custodians. Vesta initially wanted the parties to collect from only five custodians each, but Amdocs insisted that was too few. (*See, e.g.*, Costley Decl., Ex. B (e-mail dated Nov. 3, 2015 from Vesta's counsel noting that Vesta "continue[s] to believe . . . that limiting the number of custodians to five per side is appropriate").) Further, as part of the discussions concerning custodians, Vesta rejected two custodians whom Amdocs proposed (custodians who would have had significantly more documents related to Sprint and/or T-Mobile than some of the other custodians that Vesta selected). (*Compare* Costley Decl., Ex. A (e-mail dated Nov. 3, 2015 from Amdocs's counsel proposing Agte, Caro, Eldar, Givon, Shmuel, Verma, and Zepeda as Amdocs's custodians to search), *with* Costley Decl. Ex. C (e-mail dated Nov. 30, 2015 from Vesta's counsel selecting Agte, Doron, Eldar, Givon, Rozen, Shmuel, Verma as custodians to search); Markley Decl., Ex. F (e-mail dated Oct. 5, 2016 from Amdocs's counsel explaining the relevance of the rejected custodians to Sprint and T-Mobile).) Thus, Vesta's claim that it was relying on Amdocs to identify relevant custodians is belied by the factual record showing Vesta made its own decisions, contrary to Amdocs's proposals. Similarly, Vesta's suggestion that Amdocs was responsible for limiting the number of custodians such that documents from the most relevant Sprint or T-Mobile custodians would not need to be searched is also false.

Second, Vesta agreed on March 1, 2016 that Amdocs would only have to collect and review documents from June 1, 2009 to January 31, 2014. (*See, e.g.*, Costley Decl., Ex. D (e-mail dated March 1, 2016 from Vesta's counsel expressly noting that Vesta had "[n]o issue" and was in "complete agreement" with Amdocs's date range of June 1, 2009 to January 31, 2014).)[8] While Vesta now states that it never would have agreed to such a date limit with respect to Sprint or T-Mobile because Mr. Zepeda indicated in a declaration that "he engaged in negotiations with Sprint on behalf of Amdocs in June 2014," (Opp'n at 14 (citing Zepeda Decl., Dkt No. 190, at ¶ 2 (filed Feb. 16, 2016))), Vesta represented to the Court, after it saw Mr. Zepeda's declaration, that adding the Sprint and T-Mobile allegations would only require Amdocs to "add certain search terms to their review procedures" and perhaps "do additional targeted pulls of documents." (Reply ISO Mot. to File TAC, Dkt. No. 202, at 10 (filed Mar. 4, 2016).) Even after it had reviewed the Zepeda Declaration, Vesta did not state that it would need to expand the previously agreed-upon date range, nor did it represent that it would need to add additional custodians.[9]

---

8 Vesta apparently believes that the agreed-upon date range only applied to Vesta's "Confidential Risk Information" theory as to MetroPCS. Setting aside whether Vesta really believed that or is just stating that now in connection with this dispute, there was certainly an agreement on a date range for some purposes and if Vesta wanted a different date range for other purposes, it should have raised the issue during the multiple meet and confers with the parties on search terms, in which it was clear that Amdocs was proceeding with the understanding that the date range applied to all searches.

9 The July 1, 2016 email that Vesta cites to support its argument that it did not consent to the June 1, 2009 to January 31, 2014 date range makes no mention of dates at all. (*See* Opp'n at 14; Markley Decl. Ex. D.) As Costley Decl. Ex. D establishes, the parties agreed on March 1, 2016 that Amdocs's eDiscovery production range would be limited to June 1, 2009 to January 31, 2014. Vesta asserts that it "would never have agreed" to this because Mr. Zepeda represented in his declaration that Amdocs and Sprint signed a contract in June 2014, but Vesta had already received and responded to this declaration when it agreed to the June 1, 2009 to January 31, 2014 date range. In truth, the issue is not that Vesta did not mean what it said when it agreed to a specific date range and custodians, but that Vesta at that time was only pursuing a "damages theory" with respect to Sprint and T-Mobile. (*See* Reply ISO Mot. to File TAC at 10 (stating that adding the Sprint and T-Mobile allegations would require Amdocs to only "add certain search terms to their review procedures" and perhaps "do additional targeted pulls of documents").) Now that Vesta has reviewed the MetroPCS

Third, as discussed in the paragraph above, Vesta stated that the expansion of the case to encompass Sprint and T-Mobile would only require Amdocs to "add certain search terms to their review procedures" and perhaps "do additional targeted pulls of documents." (*Id.*) Amdocs has produced the documents resulting from those "certain search terms" over the agreed-upon custodians for the agreed-upon date range. Amdocs has also produced documents requested by Vesta as additional targeted pulls, including all of its payment solution contracts with Sprint and all of its invoices related to its payment solution for Sprint.[10] In addition, Vesta represented to the Court in its motion for leave to file a third amended complaint that the "proposed amendment [to include Sprint and T-Mobile] simply adds to Vesta's existing damages theory, and is not a new claim." (Mot. to File TAC at 11.) Vesta made similar statements throughout the briefing on its motion for leave, claiming that it was just seeking damages for conduct that was already at issue and not expanding its liability theories. (*Id.* at 3, 4, 5, 12, 13, 14, 18, 19; Reply ISO Mot. to File TAC at 1, 2, 8, 9, 10.)[11] Vesta took the same position in its opposition to Amdocs's motion to dismiss as it stated that "[w]ith permission from the Court, Vesta amended its complaint [to] add allegations regarding its damages." (Opp'n to 12(b)(1) Mot., Dkt. No. 241 at 1; *see also id.* at 9, 16, 19.)

The documents that Amdocs has already produced – including its payment solution contracts with Sprint, its invoices to Sprint for the payment solution, and spreadsheets showing the revenue

---

documents, and has realized that they do not establish liability, it has necessarily changed its approach and is now trying to undo the parties' prior agreements in order to justify a fishing expedition into liability with respect to Sprint and T-Mobile.

[10] After rejecting Amdocs's prior offer for this material, Vesta also recently asked for targeted pulls of all pitch materials to either Sprint or T-Mobile regarding the sale of a Payment Solution. Amdocs would still be willing to make a reasonable search for those documents if Vesta would agree to stay the proceedings in this Court related to non-MetroPCS Allegations until the Ninth Circuit rules on appeal.

[11] The Court relied on these statements in granting leave to amend, stating that "Plaintiff argues that it is 'simply adding to its damages theory,' not changing its legal theory." (Order on Mot. to File TAC at 9.)

and costs of its payment solution for Sprint (and MetroPCS) – satisfy its obligations in connection with Vesta's "damages-only" theory regarding Sprint and T-Mobile.[12] Vesta has no explanation for why it should no longer be bound by what it represented to the Court, let alone to what it agreed with Amdocs, at least until **after** the Ninth Circuit has a chance to decide the appeal.

In short, Amdocs has produced all of the documents that fall within the scope of its agreements with Vesta, including documents related to Sprint and T-Mobile, and has produced additional documents in the form of "targeted pulls" that Vesta indicated might be needed when it filed its request for leave to amend. Vesta should be held to those agreements at least until such time as the Ninth Circuit decides Amdocs's appeal. In the alternative, Amdocs asks that the Court issue a protective order limiting discovery to the seven custodians to which the parties originally agreed until the Ninth Circuit issues its decision.

[12] Vesta's further claim that the Court ordered Amdocs to produce Sprint and T-Mobile documents on June 16, 2016 has no merit whatsoever. Vesta cannot point to any Court order so indicating.

## IV. CONCLUSION

For each of the foregoing reasons, Amdocs respectfully asks that this Court issue an order staying proceedings as to the non-MetroPCS Allegations pending review by the Ninth Circuit or, in the alternative, issue a protective order prohibiting Vesta from seeking expanded discovery until the Ninth Circuit rules on Amdocs's pending appeal.

DATED: October 20, 2016

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.

KATTEN MUCHIN ROSENMAN LLP

By: /s/ *Christina L. Costley*
CHRISTINA L. COSTLEY (*Pro Hac Vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
christina.costley@kattenlaw.com
*Attorneys for Defendants*