**Robert A. Shlachter**, OSB No. 911718
Email: rshlachter@stollberne.com
**Joshua L. Ross**, OSB No. 034387
Email: jross@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Bruce G. Vanyo** (admitted *Pro Hac Vice*)
Email: bruce@kattenlaw.com
**Andrew G. Klevorn** (admitted *Pro Hac Vice*)
Email: andrew.klevorn@kattenlaw.com
**Richard H. Zelichov** (admitted *Pro Hac Vice*)
Email: richard.zelichov@kattenlaw.com
**Christina L. Costley** (admitted *Pro Hac Vice*)
Email: christina.costley@kattenlaw.com
**Yonaton M. Rosenzweig** (admitted *Pro Hac Vice*)
Email: yoni.rosenzweig@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

**Attorneys for Defendants Amdocs Management Limited; Amdocs, Inc.,**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VESTA CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**AMDOCS MANAGEMENT LIMITED; AMDOCS, INC.,**<br><br>Defendants. | Case No.: 3:14-cv-01142-HZ<br><br>**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER** |

## NOTICE OF MOTION AND MOTION

Defendants Amdocs Management Limited and Amdocs, Inc. (collectively "Amdocs") respectfully move this Court pursuant to Federal Rule of Civil Procedure 26(c)(1) for a protective order prohibiting Vesta from taking certain discovery specified in the document requests and deposition notices as follows:

1. Taking the deposition of Amdocs' President and Chief Executive Officer, Eli Gelman;
2. Taking the deposition of a corporate representative on Topics 1-3 and 9 from the Rule 30(b)(6) Deposition Notice; and
3. Obtaining documents from all members of Amdocs' executive management concerning the decision to develop a payment solution and for documents unrelated to AT&T and Cricket.

Pursuant to Local Rule 7-1(a), counsel for Amdocs certifies that they conferred telephonically with counsel for Plaintiff Vesta Corporation regarding the substance of this motion on February 22, 2018. The parties made a good-faith effort to resolve the issues raised in this motion but were unable to do so. Amdocs subsequently made an offer to Vesta on February 24, 2018 to resolve this dispute in its entirety, but Vesta has not responded. At Vesta's request, Amdocs also responded to an IDC statement on these issues on February 26, 2018, but Vesta has not addressed that IDC statement either. Amdocs thus felt compelled to file this motion at this time in light of upcoming deadlines.

## I. INTRODUCTION

On February 6, 2018, Vesta served a deposition notice for Amdocs Management Limited's President and Chief Executive Officer, Eli Gelman. It also served a separate deposition notice for a Rule 30(b)(6) witness to testify about Amdocs' decision to enter the payment market (including every piece of information about Vesta that might have been considered in that decision) and efforts to sell its solution to any Vesta customer. *See* Ex. A at 5-6 (Topics 1-3).[1]

Vesta's requests far exceed the limited scope of this Court's February 1, 2018 Order authorizing "targeted discovery to be determined at a scheduling conference" "regarding AT&T and Cricket."[2] Dkt. 548 at 7-8. Vesta's requests even exceed the scope of what they requested in the motion that resulted in the Court's February 1, 2018 Order as the motion never asked for a deposition of Mr. Gelman and did not ask about all information Amdocs considered in its decision to develop a payment solution for MetroPCS. Dkt. 524 at viii.

No justification exists for broadening the Court's Order to include Amdocs' market entry and other customers. Vesta has known about these issues since at least April 7, 2015, when it filed its first amended complaint alleging that Amdocs used Vesta's trade secrets to target Vesta's customers and drive it out of the market. Dkt. 52. It served discovery requests substantively identical to the ones at issue here in 2016, after which Amdocs made two members of EMA, and multiple other witnesses, available to testify on the same topics. By its own admission, Vesta knew Amdocs had pitched Cricket and AT&T when it took many of these depositions and it "suspected" this when it took the others. It also knew when it took all the depositions that Amdocs had pitched Sprint and T-Mobile–which make up 75% of Vesta's paid subscribers. Despite this, Vesta asked no questions about the role of Vesta's customers in Amdocs' market entry decision, then waited until almost a year after it learned about the Cricket

---

[1] All references to Exhibits ("Ex." or "Exs.") are attached to the Declaration of Richard Zelichov In Support of Defendant's Motion for a Protective Order, filed concurrently herewith.

[2] Amdocs has no objection to a Rule 30(b)(6) deposition about, and documents regarding, the sale or potential sale of a payment solution for prepaid top-up of minutes and data to AT&T and Cricket.

and AT&T pitches, and months after discovery closed, to suggest that its prior discovery was inadequate and that it needed to depose another Rule 30(b)(6) witness and Amdocs' CEO.

Even if discovery were not closed, the requests would be improper because Vesta cannot make the showing required for an "apex" deposition of Amdocs' CEO. Recognizing the "tremendous potential for abuse or harassment" inherent in deposing a senior executive, courts require the party seeking discovery to establish that the officer has unique, first-hand knowledge of "essential" information not available from another source and that the deposition will not interfere with the executive's ability to perform his job. Vesta fails to meet any prong of this test, which is another reason to grant Amdocs' Motion.

## II. FACTUAL BACKGROUND

### A. Vesta Serves Discovery Requests Eight Months After Discovery Closed

On February 6, 2018, Vesta noticed the deposition of Eli Gelman, the President and Chief Executive Officer of Amdocs Management Limited, for March 19, 2018 in Los Angeles, California. Mr. Gelman resides in Israel. Vesta did not mention Mr. Gelman in its sanctions motion and has not explained why it now believes that he alone can give "critical" testimony.

Vesta also noticed a separate Rule 30(b)(6) deposition on nine topics, including Amdocs' "internal assessment of whether to develop a Payment Solution or to otherwise enter the payment processing market in competition with Vesta" (Topic 1); any "directives" by EMA regarding "any Vesta customer"[3] (Topic 2); and any efforts to sell Amdocs' solution "to a Vesta customer" (Topic 3). *See* Ex. A at 5-6.[4] Vesta also served nine document requests that included the same three

---

3 Vesta's inclusion of Cricket in the list of its "major customers" is inexplicable because Vesta alleged that Cricket had ceased to be a potential customer in 2015 (after AT&T acquired it and moved its payment processing to an in-house solution). See Dkt. 52, ¶ 110.

4 Vesta also seeks discovery of discussions between counsel and Amdocs employees when preparing responses to Vesta's Interrogatory No. 4. *See* Exs. A at 6-7 (Topic 9); B at 9 (No. 121). These discussions are protected under the attorney-client privilege and work-product doctrine. *See Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir. 1989) (statements to counsel by employees who were the most knowledgeable about certain company transactions were protected by attorney-client privilege); *Kelley v. Billings Clinic*, No. CV 12-74-BLG, 2013 WL 1414442, at *2-3 (D. Mont. Apr. 8, 2013) (denying a request for a response to an interrogatory that asked, "identify the information that was provided by each person" "in preparing the answers to these Interrogatories."); *McIntyre v. Main St. & Main Inc.*, No. C-99-

categories of information, specifying that the first category ("Amdocs's internal assessment of whether to develop a Payment Solution . . . .") should include "EMA emails and other EMA documents," and the second category include "directives by EMA or by or on behalf of any member of EMA" concerning "any Vesta customer." *See* Ex. B at 7 (Nos. 113-114).

As reflected in the following chart, Vesta has already deposed two members of EMA (including Amdocs' CFO), its Director of Corporate Development, and three sales executives regarding topics identical to the ones listed in Vesta's recent Rule 30(b)(6) notice.[5] *See* Ex. C.

| **Sept. 12, 2016 Topics & Designees** | | **February 6, 2018 Topics** |
|---|---|---|
| "Amdocs's business assessment(s) of adding a Payment Solution to its product and services offerings." (Topic 7).<br><br>Amdocs's consideration of "whether it could build or how it would build a Payment Solution that would compete with Vesta." (Topic 32). | Tamir Rapaport-Dagim (CFO)<br><br>Rami Schwartz (President, Products Business Group) | "Amdocs's internal assessment of whether to develop a Payment Solution or to otherwise enter the payment processing market. . . ." and "whether it could successfully sell a Payment Solution to Vesta's customers." (Topic 1). |
| "Amdocs' decision to develop . . . a Payment Solution that would compete with Vesta's Payment Solution, including . . . information relied on to make that decision, [] factors considered in that decision, and the reasons for the decision."<br><br>"The identity of the individuals who participated in and the topics discussed at any meeting in which Amdocs considered whether it could build or how it would build a Payment Solution that would compete with Vesta's Payment Solution . . ." (Topic 32). | Rami Schwartz<br><br>Roy Shmuel (Director of Corporate Development) | "The information provided to or requested by or on behalf of any member of [EMA] relating to Vesta or its customers in connection with his or her consideration of . . . whether to develop a Payment Solution or otherwise enter the payment processing market in competition with Vesta . . . including but not limited to Evaluation Material, the identity of the individuals who provided any such information or guidance to any member of EMA, and the topics discussed at any meeting . . ." (Topic 1.)<br><br>"Any directives by EMA or by or on behalf of any member of EMA" to "assess any customer's interesting in an Amdocs Payment Solution." (Topic 2). |
| "Amdocs's continued marketing and sale of a Payment Solution to | Howard Connors | "Amdocs's efforts to sell an existing or potential Payment Solution to a Vesta |

5328 MJJ, 2000 WL 33117274, at *2 (N.D. Cal. Sept. 29, 2000) ("identity of witnesses who have been interviewed by opposing counsel are also arguably protected work product.").

[5] Vesta also served substantively identical document requests on May 19, 2015 and February 5, 2016. *See, e.g.,* Ex. D at 2-4 (Nos. 29 ("decision to develop and market a Payment Solution"); 49 ("business plans"); 51 and 52 (communications with Sprint and T-Mobile)).

| Sept. 12, 2016 Topics & Designees | | February 6, 2018 Topics |
|---|---|---|
| various customers, including but not limited to Comcast and Cablevision" (Topic 51) and its "decision to market and sell a Payment Solution to Sprint" (Topic 41), and "T-Mobile" (Topic 47). | Martin Mintz<br><br>Manuel Zepeda | customer . . ." ( Topic 3). |

When Vesta took the two EMA depositions in Israel, it knew Amdocs had pitched the two Vesta customers (Sprint and T-Mobile) who made up approximately 75% of Vesta's paid subscribers (Dkt. 52, ¶ 107) as well as three other customers. It also "suspected" Amdocs had pitched Cricket and AT&T. Dkt. 524 at 1. It had also received document productions that discussed the Cricket and AT&T pitches (including every document Vesta relies on in the reply in support of its sanctions motion) and every presentation reviewed by EMA about market entry.

Despite this, when Vesta deposed members of Amdocs' senior management about Amdocs' decision to enter the payment market, it asked Mr. Schwartz just two questions about T-Mobile (whether he was there when Amdocs pitched to T-Mobile and the version of EPP pitched) and just one question about Sprint (the solution's name). Ex. E at 3-4. Vesta did not ask Mr. Schwartz about "suspected" efforts to "target" Cricket and AT&T even when it introduced as one of only three exhibits a PowerPoint presentation that stated, in large, bold type, that Amdocs had received requests for proposals from Cricket and AT&T. Vesta also did not ask Mr. Schwartz what he meant when he testified, twice, that Amdocs considered whether there were customers other than MetroPCS to whom Amdocs could sell EPP. *Id.* at 5-6, 7. And it did not ask Ms. Rapaport-Dagim or Mr. Shmuel about *any* of Vesta's customers.

Depositions of the US-based witnesses, including Connors, Mintz, and Zepeda, were initially scheduled for the month following the depositions of the senior executives, but at Vesta's request, the depositions were postponed twice, until May 2017, to allow Vesta to take further document discovery. On February 17, 2017, Vesta asked Amdocs to produce documents from an additional 28 custodians including Manuel Zepeda (whom Amdocs had told Vesta to include as a custodian one year earlier). *See* Dkt. 528 at 9. Amdocs worked diligently through the

final three months of discovery to collect, review, and produce these documents so that the remaining witnesses could be deposed before the close of discovery. *Id*.

According to Vesta, it learned about the Cricket and AT&T pitches when it prepared for the Connors deposition. Vesta deposed Mr. Mintz on April 27, 2017, Mr. Zepeda on May 11-12, 2017, and Mr. Connors on May 23, 2017. Each witness provided extensive testimony regarding Amdocs' interactions with MetroPCS, T-Mobile, and Sprint. *See, e.g.,* Exs. F at 3; G at 3-4; H at 4-5. Although Vesta's deposition notices did not specifically mention Cricket or AT&T, Mr. Connors also provided testimony regarding those pitches. Ex. H at 3, 6.

### B. Vesta Continues to Pursue Discovery After The Discovery Deadline

After two years and five extensions, discovery closed on June 6, 2017. In that time, Amdocs produced 918,362 pages of documents and 24,229 native Excel files from over 40 custodians; 3,979,213 lines of code from 12 different code stacks; and detailed financial data for every Amdocs product sold throughout the world. Dkt. 528 at 10.

After discovery closed, Vesta asked the Court to revisit its prior request for Amdocs' *external* communications with Cricket and AT&T. After Amdocs produced these documents–which Vesta does not argue differed in any material way from the documents Amdocs produced before discovery closed–Vesta asked Amdocs for its *internal* communications about Cricket and AT&T. Amdocs agreed, but Vesta still moved for an order of production and for other sanctions. The Court allowed Vesta "additional time for ***targeted*** discovery" "regarding AT&T and Cricket" "to be determined at a scheduling conference." Dkt. 548 at 7-8 (emphasis added).

## III. ANALYSIS

### A. The Court Should Issue a Protective Order Because the Requests Do Not Fall Within the Scope of the February 1 Order

This Court has discretion to enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" Fed. R. Civ. P. 26(c); *Reza v. Pearce*, 806 F.3d 497, 508 (9th Cir. 2015). Discovery sought after the court ordered deadline is presumptively improper, and therefore the proper subject of a protective order, unless

the party seeking discovery can establish good cause to modify the existing schedule. *See Boston Sci. Corp. v. Cordis Neurovascular, Inc.*, No. C 02-1474JWRS, 2009 WL 189062, at *2 (N.D. Cal. Jan. 23, 2009) (denying motion to compel as "improper because the [discovery sought] is untimely."); *see also Jones v. Holmes*, No. 3:11-CV-00047-LRH, 2014 WL 3105220, at *2 (D. Nev. July 7, 2014) (finding no good cause to reopen discovery where defendants argued that plaintiff "improper[ly sought] to conduct discovery well after the discovery cutoff deadline").

Here, Vesta has waited until eight months after discovery closed to seek further documents and depositions from Amdocs' most senior executives. This Court's February 1 Order did not authorize this–it stated only that Vesta could take "targeted discovery to be determined at a scheduling conference" "regarding Cricket and AT&T." Dkt. 548 at 7-8. Vesta did not request a scheduling conference before serving discovery requests and many of its requests are not targeted specifically at the Cricket and AT&T pitches. Instead, Vesta seeks discovery about Amdocs' market entry decision generally, "including but not limited to . . . its decision to target any Vesta customer." *See* Exs. A at 5-6 (Topics 1-3) & B at 7 (Nos. 113-115).

Vesta's requests not only exceed the scope of discovery permitted by this Court, they exceed the scope of discovery requested by Vesta in its sanctions motion. In its moving papers, Vesta argued that it would have handled the Schwartz deposition differently had it known about the Cricket and AT&T pitches. Dkt. 524 at 3. In light of the scant attention paid to T-Mobile and Sprint during the deposition, this seems unlikely. Regardless, this rationale does not justify Vesta's request to depose Amdocs' CEO and to collect documents from all eight members of EMA. In its reply brief, Vesta further argued that it would have sought documents and depositions from Brian Shepherd and Yona Ovadia (Dkt. 532 at 3), but both had already left Amdocs for executive positions at other companies by the time discovery began. Amdocs could not have compelled either of them to participate in this litigation in 2016, nor can it do so now.

The requests also vastly exceed the scope of Vesta's Interrogatory No. 4. Interrogatory No. 4 asked Amdocs to identify "each customer or potential customer that You have sold or attempted to sell Your Payment Solution[.]" Ex. I at 3. It did not ask Amdocs to identify the

basis for its market entry decision or the Vesta customers Amdocs targeted. There is, therefore, no justification for Vesta's attempt to link a sanctions order arising out of Amdocs' inadvertent omission of Cricket and AT&T from Interrogatory No. 4 to the vast discovery Vesta now seeks.

**B. Vesta Cannot Establish Good Cause To Reopen Discovery**

Vesta has the burden to show "good cause" to reopen discovery. Fed. R. Civ. P. 16(b)(4). When determining good cause, courts consider the relevance of the information, whether the party seeking discovery acted diligently, prejudice to the opposing party, and whether a trial date has been set. *See U.S. ex rel. Schumer v. Hughes Aircraft Co*., 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997). Each weighs against discovery here.

**1. The Discovery is Unlikely to Yield Relevant Evidence**

Amdocs' desire to sell EPP to the same customers as Vesta–including Cricket and AT&T–is not, and never has been, in dispute. Amdocs' witnesses uniformly testified that Amdocs wanted to sell EPP to as many customers as possible. Vesta argues that it nonetheless needs to take an additional deposition regarding Amdocs' market entry because the Cricket and AT&T pitches show an effort by Amdocs to "target" the four customers "responsible for well over 90% of Vesta's revenues." Dkt. 524 at 1. But approximately 75% of Vesta's paid subscribers came from Sprint and T-Mobile (Dkt. 52, ¶ 107), whom Vesta knew Amdocs had pitched and still ignored when deposing Amdocs' executives. Vesta, moreover, remains the payment solution for AT&T's GoPhone business and Cricket moved to an in-house solution after being acquired by AT&T in 2013. It is not clear, therefore, what relevant information Vesta would obtain from taking another deposition regarding Amdocs' market entry, especially since it is undisputed that Amdocs entered the market for MetroPCS–who was never a Vesta customer.

**2. Vesta Did Not Act Diligently**

Failure to pursue foreseeable issues during discovery, or to act promptly upon learning of new information is, alone, a sufficient basis to decline a request to reopen discovery. *Chao v. Westside Drywall, Inc*., 709 F. Supp. 2d 1037, 1072-73 (D. Or. 2010), *as amended* (May 13,

2010); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming decision not to amend case schedule based on failure to establish diligence).

Three years ago, Vesta filed an antitrust complaint that alleged Amdocs targeted Vesta's customers in an attempt to drive Vesta out of the payment market. Dkt. 52. Vesta subsequently spent two years pursuing a theory that Amdocs targeted Vesta's customers–including, Vesta "suspected," Cricket and AT&T. During that time, Vesta deposed six Amdocs witnesses, two of whom sat on EMA, about Amdocs' market entry. It subsequently deposed three Amdocs sales executives, *after it knew about the Cricket and AT&T pitches,* about Amdocs' customers including Sprint, T-Mobile, and even AT&T. Any failure by Vesta to adequately pursue Amdocs' market entry and pitches to customers other than AT&T and Cricket during those depositions reflects a lack of diligence that precludes reopening discovery. *See Gregory v. City of Vallejo*, No. 2:13-CV-00320-KJM, 2015 WL 136007, at *3-4 (E.D. Cal. Jan. 9, 2015) (denying request to reopen discovery where the information was available during discovery).

Vesta also cannot show diligence after discovery closed. *Chao*, 709 F. Supp. 2d at 1072-73. It waited until February 6, 2018–eight months after discovery closed–to suggest that it wanted to depose Mr. Gelman. *See Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 626 F. App'x 316, 318 (2d Cir. 2015) (affirming decision declining to reopen discovery eight months after it closed). It waited five months, until early November 2017, to suggest that it wanted to review the EMA emails and take another deposition regarding Amdocs' entry into the payment market. Standing alone, this establishes a lack of diligence that precludes a finding of good cause. *See Medici v. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-00959-HA, 2013 WL 6178285, at *2 (D. Or. Nov. 25, 2013) (declining to reopen discovery four months after it closed).

### 3. Amdocs Would Suffer Significant Prejudice If Discovery Were Reopened This Close to Trial

Allowing further discovery regarding Amdocs' pitches to MetroPCS, Sprint, and T-Mobile, and its internal marketing discussions regarding all potential customers, just months before summary judgment would substantially prejudice Amdocs. *See Flatow v. Islamic*

*Republic of Iran*, 308 F.3d 1065, 1074 (9th Cir. 2002). As this Court knows, discovery has been closed for nearly a year, expert reports have been completed since October 2017,[6] Amdocs is actively briefing summary judgment, and trial has been set for October. Amdocs has spent the last five months disproving claims made in over five-hundred pages of Vesta expert reports filed last July. Allowing Vesta to conduct another round of discovery, in pursuit of yet another theory of the case, would destroy months of work and substantially prejudice Amdocs' defense, particularly if the Court leaves the current trial schedule in place.

Vesta, moreover, has requested documents related to MetroPCS, Sprint, T-Mobile, Cricket, and AT&T from every member of Amdocs' eight person executive management team– none of whom are likely to have documents relevant to Amdocs' pitch to Cricket or AT&T. Such a review would likely take months, both because the documents are subject to Israeli laws governing privacy that slow the process of transferring information and because the proposed custodians are senior level officers, with access to highly confidential and commercially sensitive information that will require an attorney review instead of just search terms.

The depositions Vesta requests would likewise be burdensome and all but certain to disrupt the trial schedule. Vesta has already taken depositions from two members of EMA, and from multiple other senior members of Amdocs' sales staff, about the exact same subjects. Vesta now asks Amdocs to bring its CEO and, potentially another member of EMA, literally across the world for depositions in Los Angeles (20 hours, by air, each way) with less than one month's notice. Doing so would significantly burden Amdocs and disrupt its operations.

### C. Vesta Cannot Meet the Burden Required to Take an Apex Deposition

Because Vesta seeks to depose Amdocs' CEO, it has the additional burden of demonstrating: 1) that Mr. Gelman has "first-hand" knowledge "that cannot reasonably be obtained from other sources" or through "less burdensome means;" 2) that the testimony is "essential to the case at hand;" and 3) that "the deposition would not significantly interfere with

6 With the exception of expert reports limited to the narrow issues regarding Sprint APIs.

the ability of the official to perform his [] duties." *Conforto v. Mabus*, No. 12CV1316-W (BLM), 2014 WL 12560881, at *6 (S.D. Cal. Sept. 24, 2014); *see also City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc*., No. 12-CV-5275, 2015 WL 9434782, at *2 (E.D. Cal. Dec. 24, 2015) ("Under th[e apex] doctrine, the burden is shifted to the party seeking the deposition to show that it is warranted"). Courts apply this heightened standard because "such discovery creates a tremendous potential for abuse or harassment." *Affinity Labs of Tex. v. Apple Inc*., No. C 09-4436, 2011 WL 1753982, at *15 (N.D. Cal. Apr. 3, 2015).

Vesta does not meet any prong of this test. In fact, it is not even clear why Vesta seeks to depose Mr. Gelman. Vesta did not mention him in its briefing on the motion for sanctions and Amdocs is not aware of any evidence suggesting that he played a role in the unsuccessful pitches by Amdocs' US subsidiary to Cricket and AT&T. *See Groupion, LLC v. Groupon, Inc*., No. 11-870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) ("[w]here a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper.")

To the extent Vesta seeks testimony about Amdocs' market entry, even if this were an appropriate subject for late discovery (which it is not), Vesta has already taken depositions of other individuals who were capable of giving testimony on this issue. *See Affinity Labs*, 2011 WL 1753982, at *16 (no apex deposition even where "the executive made public statements on relevant issues" because the information could be obtained through interrogatories or depositions of lower-level employees). Finally, as noted above, Vesta cannot show that further discovery about Amdocs' market entry and Cricket and AT&T pitches are relevant, let alone, "essential."

## IV. CONCLUSION

For all of the foregoing reasons, Amdocs respectfully moves the Court to issue a protective order prohibiting Vesta from taking the deposition of Eli Gelman, from deposing a Rule 30(b)(6) witness on Topics 1-3 and 9, and from collecting documents from EMA and unrelated to the Cricket and AT&T pitches.

DATED: February 27, 2018

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

KATTEN MUCHIN ROSENMAN LLP

By: *__/s Christina L. Costley__*
CHRISTINA L. COSTLEY (*Pro Hac Vice*)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
christina.costley@kattenlaw.com

*Attorneys for Defendants*